# TAB 1

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| DEX MEDIA, INC., *et al.*,[1] | Case No. 16-11200 (KG) |
| Debtors. | (Jointly Administered) |
| | |
| DEX MEDIA, INC., | |
| Plaintiff | |
| vs. | Adversary Proceeding |
| YELLOW PAGES PHOTOS, INC., | Adv. No. |
| Defendant. | |

## ADVERSARY COMPLAINT

Debtor Dex Media, Inc. ("Dex Media"), by and through its undersigned attorneys, hereby files this Adversary Complaint pursuant to Federal Rule of Bankruptcy Procedure 7001 and states as follows:

## NATURE OF THE CASE

1.     Dex Media commences this adversary proceeding to object to Yellow Pages Photos, Inc.'s ("YPPI") latest maneuver in its serial effort to extort money from SuperMedia LLC ("SuperMedia"), and now its parent, Dex Media, Inc. over the use of fifty CDs of stock photographs that SuperMedia licensed more than fifteen years ago. After three years of

---

[1]     The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, include: Dex Media, Inc. (0040); Dex Media East, Inc. (5763); Dex Media Holdings, Inc. (9762); Dex Media Service LLC (9647); Dex Media West, Inc. (7004); Dex One Digital, Inc. (9750); Dex One Service, Inc. (0222); R.H. Donnelley APIL, Inc. (6495); R.H. Donnelley Corporation (2490); R.H. Donnelley Inc. (7635); SuperMedia LLC (6092); SuperMedia Inc. (5175); and SuperMedia Sales Inc. (4411). The location of the Debtors' service address is: 2200 West Airfield Drive, P.O. Box 619810, DFW Airport, Texas 75261.

YPPI0001

litigation, two trials, and voluminous motion practice, this Court entered its final decision on YPPI's claims against SuperMedia on April 4, 2016.  Less than a month later, YPPI simply repackaged those claims and tried again, this time suing Dex Media in the Middle District of Florida.  Now, for the first time (and in direct contradiction to its earlier representations), YPPI contends that (1) SuperMedia has no rights under its License with AdMedia Systems, Inc. to use the Licensed Images in any way, and (2) that the SuperMedia print advertisements that YPPI showed this Court at length during the November 2015 damages trial now represent infringing uses of YPPI's images by Dex Media.

2.      YPPI's "new" claims are just a repackaging of the copyright infringement claims this Court has already heard and decided.  As the Court may recall, YPPI brought claims for breach of contract and copyright infringement against SuperMedia based on SuperMedia's alleged "transfer" of YPPI's stock images to third parties, including Dex Media.  At the April 2014 trial on YPPI's administrative expense claim, YPPI argued that, by virtue of the merger that formed Dex Media, SuperMedia had transferred YPPI's images to Dex Media.  YPPI further claimed that Dex Media had purportedly used those images in "thousands of infringing videos" made by bieMedia, and tried to lay the blame for these advertisements at SuperMedia's feet.  The Court rejected YPPI's claim and held that SuperMedia did not transfer YPPI's images to Dex Media or commit any other "tortious act" with regard to Dex Media.  Months later, SuperMedia discovered that the so-called "infringing videos" produced by bieMedia were actually licensed uses of YPPI's images as YPPI itself had licensed its images to bieMedia in 2006.  On September 3, 2015, the Court concluded that YPPI, and its principal Trent Moore, had committed fraud on the Court with respect to the bieMedia videos and "forcefully testified

2

**YPPI0002**

falsely under oath" that YPPI had never licensed its images to bieMedia and ASEC. [Case No. 13-10546-KG, D.I. 366 at 4].

3.      At the November 2015 damages trial, YPPI introduced evidence of SuperMedia directories that contained print advertisements with YPPI's images. At the trial, YPPI repeatedly acknowledged that these print ads were not "infringing uses" of YPPI's images. Instead, YPPI introduced these print ads in a futile attempt to show that SuperMedia was making millions of dollars in revenue from the use of YPPI's images. In the end, the Court awarded YPPI less than one percent of the damages it sought against SuperMedia. In addition, the Court rejected YPPI's breach of contract claims altogether, finding that YPPI had "furtively" and "actively concealed" from SuperMedia and the Court that it was not a party to the License.

4.      Evidently unhappy with this Court's rulings, YPPI has now filed a copycat complaint against Dex Media, SuperMedia's ultimate parent and a non-operating holding company, in a new court before a new judge. This attempt at a do-over fails. For at least the reasons set forth herein, YPPI should be precluded from bringing any claims against Dex Media for the use of YPPI's images.

## JURISDICTION

5.      This is an adversary proceeding brought pursuant to Federal Rule of Bankruptcy Procedure 7001.

6.      This Court has jurisdiction over the claims raised in this adversary proceeding pursuant to 28 U.S.C. §§ 1334 and 157, and the *Amended Standing Order of Reference* dated February 29, 2012, from the United States District Court for the District of Delaware.

7.      Count III of this adversary proceeding is a "core proceeding" within the meaning of 28 U.S.C. § 157(b)(2), and the Court may enter a final order and judgment consistent with Article III of the United States Constitution. Counts I and II of this adversary proceeding are

YPPI0003

non-core proceedings. In the event it is determined that the Court, absent the consent of the parties, cannot enter a final order and judgment consistent with Article III of the Constitution in this adversary proceeding, Dex Media consents to the Court's entry of a final order and judgment.

## THE PARTIES

8.     Plaintiff Dex Media, Inc., debtor in the above-captioned Chapter 11 proceeding, is a Delaware limited liability company having its principal place of business at 2200 West Airfield Drive, PO Box 619810, DFW Airport, Texas 75261. Dex Media is a non-operating holding company formed as part of the merger between SuperMedia, Inc. and Dex One Corporation and their respective affiliates.

9.     Defendant Yellow Pages Photos, Inc. ("YPPI") is a Florida corporation having its principal place of business in Riverview, Florida. YPPI is a former provider of stock images.

## BACKGROUND

**A.     Verizon Directories Corp. obtains an unlimited, perpetual, royalty-free stock image license to YPPI's images "on behalf of itself and all of its affiliates."**

10.     SuperMedia LLC is a subsidiary of Dex Media and provides print, mobile, and Internet advertising to small- and medium-sized businesses. As part of its business, SuperMedia regularly enters into royalty-free license agreements to use stock images. Since 2001, SuperMedia has negotiated and entered into such licensing agreements with Getty Images, Jupiter Images, Multi Ad, Photo Valet, and Imagine.

11.     On or about November 12, 2001, SuperMedia's predecessor company, Verizon Directories Corp. ("Verizon Directories"), entered into a Service Contractor Agreement (as amended, the "License") "on behalf of itself *and all of its affiliates*" with a company originally known as Yellow Pages Photos, Inc., ("Old YPPI"). (*See* Ex. A, License at SUPER-053938.)

4

Old YPPI was a provider of stock images that was formed by Trent Moore and incorporated on or about February 24, 2000.

12.     Under the License, Old YPPI provided Verizon Directories with 100 collections of images containing 50 photographs each (the "Licensed Images"). Under the "USE" section of the License, Verizon Directories and its affiliates were free to use these images in any "print, electronic or other medium that may be used by Verizon Directories for publication of directories without limit, ROYALTY FREE." (*Id.* at SUPER053950.) In return, Verizon Directories paid Old YPPI $6,600 for each collection of images, or $660,000 in total.

13.     On November 3, 2006, Old YPPI changed its name to AdMedia Systems, Inc. ("AdMedia"). That same day, Mr. Moore incorporated a new company also named Yellow Pages Photos, Inc. That company is the Defendant, YPPI. Thereafter, AdMedia assigned its copyrights to the licensed images to YPPI. Mr. Moore never told anyone at SuperMedia (or its predecessors) that he had created a second company named "Yellow Pages Photos, Inc." or that AdMedia had assigned its copyrights to YPPI. [Adv. No. 15-50044-KG, D.I. 197 at 3]. Beginning in January 2007, YPPI registered the images licensed to Verizon Directories with the United States Copyright Office in discrete collections of 50 images each.

14.     In 2006, Verizon Directories was spun off into a new public company called Idearc Media Corp. ("Idearc"). Idearc succeeded to Verizon Directories' rights under the License.

15.     In mid-2007, Idearc sought to amend the License to expand the purposes for which the YPPI images could be used and to clarify that Idearc's contractors were authorized "users" of those images. To that end, Idearc and AdMedia executed Amendment Number One to the parties' original License in July 2007. In so doing, confirmed that Verizon Directories (now

YPPI0005

Idearc) entered into the License "*on behalf of itself and all of its affiliates*." (*See* Ex. B, Amendment One at SUPER-053952.)

**B.      Idearc files Chapter 11 bankruptcy, assumes the License, and changes its named to SuperMedia.**

16.      On March 31, 2009, Idearc filed for Chapter 11 bankruptcy relief in the United States Bankruptcy Court for the Northern District of Texas.  The License was scheduled as an executory contract in Idearc's bankruptcy schedules.  Although Idearc sent Mr. Moore notice of its Chapter 11 bankruptcy, neither AdMedia nor YPPI objected to the assumption of the License. Nor did Mr. Moore, AdMedia or YPPI assert any claims against Idearc relating to the License or the Licensed Images.

17.      On December 22, 2009, the Bankruptcy Court for the Northern District of Texas confirmed Idearc's Chapter 11 plan and issued an order assuming the License.  Idearc emerged from bankruptcy as SuperMedia LLC.   Accordingly, SuperMedia and all of its affiliates succeeded to the rights set forth in the License.

**C.      SuperMedia decreases and then discontinues its use of the YPPI images.**

18.      Finding YPPI's outdated images of little utility and poor quality, SuperMedia elected to stop using those images in new print advertisements in 2011.  As this Court has found, "[i]n June 2011, SuperMedia also discontinued the use of YPPI's images in new print advertisements and removed the YPPI image library from its systems."  [Case No. 13-10546-KG, D.I. 220 at 21]; *see also* [Adv. No. 15-50044-KG, D.I. 199 at 16].

19.      Although SuperMedia and all of its affiliates continue to hold the perpetual, unlimited right to use YPPI's images under the License to this day, since 2011, neither SuperMedia nor Dex Media has used any of YPPI's images to create new print advertising products for customers.  In fact, even though it was not required to do so under the License,

**YPPI0006**

SuperMedia undertook an extensive effort to remove YPPI's images from the libraries of certain of its contractors, including Tata, MPS, and ASEC International.

20.    SuperMedia, however, did not force its existing customers to remove YPPI's images from any pre-existing advertising products.  Thus, a number of the Licensed Images have continued to show up in SuperMedia print advertisements after 2011.

**D.    YPPI sues SuperMedia in this Court for copyright infringement due to alleged "transfers" of the Licensed Images to Dex Media and others who purportedly "used" the images without authorization.**

21.    On March 18, 2013, SuperMedia filed a pre-packaged Chapter 11 bankruptcy in this Court.  SuperMedia's Chapter 11 plan included a merger between SuperMedia's parent company and Dex One Corporation.  Under SuperMedia's Chapter 11 plan, SuperMedia would emerge from bankruptcy as an indirect, wholly owned subsidiary of Dex Media.  The Court approved the plan on April 29, 2013 and the confirmed pre-packaged plan went effective on April 30, 2013.  Notably, Dex Media is a holding company that has no operations and, thus, publishes no advertisements.

22.    On May 30, 2013, YPPI filed a proof of claim in SuperMedia's Chapter 11 proceedings for "breach of license agreement and violation of federal copyright law" (the "Proof of Claim").  (*See* Ex. C, YPPI Proof of Claim.)  That same day, YPPI filed a motion for allowance and payment of an administrative expense claim ("Admin Expense Motion").  [Case No. 13-10545-KG, D.I. 213].

23.    In its Proof of Claim and Admin Expense Motion, YPPI alleged that SuperMedia "violated the transfer restriction set forth in the [License] by transferring the Licensed Images to third parties" and that such transfers permitted those third parties, including Dex Media, to "use" the images without authorization.  (Ex. C, YPPI Proof of Claim ¶ 15; [Case No. 13-10545-KG, D.I. 213 ¶ 19].)  In terms of relief, YPPI sought damages from SuperMedia in excess of

7

$750,000,000.00 for SuperMedia's breach of the License and violation of federal copyright law, as well as attorneys' fees under the License and Section 505 of the Copyright Act. (Ex. C, YPPI Proof of Claim ¶ 20.)

24.     On April 9, 2014, the Court commenced a three-day trial on YPPI's Admin Expense Motion. In the Pre-Trial Order, YPPI stated that its "intended proof" at the April 2014 trial would show that "SuperMedia violated the user restriction in the License, as amended, by ***permitting use of the Licensed Images by parties that were neither its employees nor its contractors***." [Case 13-10546-KG, D.I. 113 at 12]. In particular, YPPI stated that it would prove at trial that "SuperMedia has transferred copies of Yellow Pages' images to a number of unlicensed third-parties without Yellow Pages' knowledge or consent, ***and there is evidence of the images being used for at least one unlicensed publisher, SuperMedia's affiliate Dex***." [Case 13-10546-KG, D.I. 107 at 10; D.I. 131 at 45 ("SuperMedia has also allowed Dex Media to become a user of Yellow Pages' images.")].

25.     At trial, YPPI argued that SuperMedia had transferred the images to Dex Media and the other Dex affiliates because "these companies are actually operating as one, at least in terms of these ad production services." (*See* April 11, 2014 PM Trial Tr. 32:23-33:17.) Critically, the only evidence that YPPI offered of Dex Media's purported unauthorized use of the Licensed Images as a result of this alleged transfer were uses in ***digital*** products, including "thousands of Dex videos [that] contain these YPPI images" produced by bieMedia and a single image that appeared on the Peacock Roofing website. (*See, e.g.*, April 9, 2016 AM Trial Tr. 15:6-10; April 11, 2016 PM Trial Tr. 34:6-35:3.) While YPPI had hundreds of samples of SuperMedia print advertisements that contained the Licensed Images, YPPI never suggested at

**YPPI0008**

any point before, during, or after the April 2014 trial that those advertisements constituted infringements of YPPI's copyrights.

26.     On December 29, 2014, the Court entered an order denying YPPI's Admin Expense Motion.  While the Court found that SuperMedia had transferred the Licensed Images to certain contractors in breach of the License prior to SuperMedia's Chapter 11 petition, the Court found that SuperMedia had not engaged in any copyright infringement during the post-petition administrative claim period.  [Case 13-10546-KG, D.I. 220].

27.     On February 11, 2016, YPPI filed a motion for reconsideration of the Court's post-trial opinion denying its Admin Expense Motion.  In its motion for reconsideration, YPPI again argued that SuperMedia had "transferred the Licensed Images to Dex Media" by virtue of the merger and, as such, had "allowed Dex to become a user of YPPI images."  [Case 13-10546-KG, D.I. 271 at 4].  YPPI further claimed that this was evidence of copyright infringement that occurred post-petition and thus its Admin Expense Motion should be granted.

28.     The Court denied YPPI's reconsideration motion.  [Case 13-10546-KG, D.I. 293]. Significantly for the present purposes, the Court held that "the merger . . . did not result in a transfer which would constitute a tortious act" that could have resulted in an infringing use by Dex Media.  (*Id.*)

**E.     The Court holds a second trial on YPPI's pre-petition copyright infringement claims against SuperMedia.**

29.     On January 12, 2015, SuperMedia filed an Adversary Complaint in this Court objecting to YPPI's Proof of Claim for SuperMedia's purported pre-petition infringement and, on January 29, 2015, SuperMedia filed an Amended Complaint.  [Adv. No. 15-50044-KH, D.I. 1, D.I. 5].

**YPPI0009**

30.     Beginning on November 16, 2015, the Court conducted a trial on YPPI's prepetition damages claims against SuperMedia.  During trial, YPPI offered the Court evidence of "hundreds" of SuperMedia print ads containing the Licensed Images.  (*See* Nov. 18, 2016 Trial Tr. 164:20-189:23.)  In particular, Mr. Moore testified that he reviewed 61 directories "out of 1700 plus [directories] this year" and located 530 SuperMedia ads containing the Licensed Images.  (*Id.* at 189:12-190:1.)  YPPI argued that these ads served as evidence of "the value of the images because . . . SuperMedia is using them a lot more than they've been telling the Court."  (*See id*. 170:12-22); *see also* [Adv. No. 15-50044-KG, D.I. 180 at 17].  According to Mr. Moore, SuperMedia was earning millions of dollars in revenue from these print advertisements.  (*See* Nov. 18, 2016 Trial Tr. 189:12-23.)

31.     At trial, YPPI never argued that the print ads constituted an infringing use of the Licensed Images.  To the contrary, YPPI's counsel acknowledged that "we don't dispute, of course, that they license the images and they were allowed to use them in printouts."  (*See* Nov. 16, 2016 Trial Tr. 62:21-23; *see also* Nov. 18, 2016 Trial Tr. 186:20-186:24 ("I'm not saying the uses are infringing.").)  Similarly Mr. Moore testified that "I do not think that the print ad is a violation of the license agreement."  (*Id.* at 269:7-17.)   In fact, Mr. Moore conceded that SuperMedia was permitted to use the Licensed Images in print ads.  (*Id.* at 269:12-14 ("Q. And SuperMedia was allowed to use your images in print ads, correct?  A. Yes, they were.").)

**F.     The Court holds that YPPI "actively concealed" that it is not a party to the License and awards YPPI $303,210 in damages.**

32.     On April 4, 2016, the Court handed down its opinion on YPPI's pre-petition claims against SuperMedia.  In its opinion, the Court adopted the "top" end of SuperMedia's expert's proposed damages range and awarded YPPI $303,210 in damages.  The Court further

10

**YPPI0010**

held that YPPI did not timely register its copyrights, and thus could not seek statutory damages or attorneys' fees under the Copyright Act. [Adv. No. 15-50044-KG, D.I. 199].

33. That same day, the Court also denied YPPI's motion to amend its Proof of Claim to join AdMedia as a party. In denying that motion, the Court held that YPPI and Mr. Moore "actively concealed" the nature of YPPI's relationship with AdMedia from both SuperMedia and the Court. [Adv. No. 15-50044-KG, D.I. 197 at 21]. The Court further held that YPPI was not a party to the License and thus could not enforce the remedies set forth in the License against SuperMedia, including any right to attorneys' fees.

**G.     YPPI commences a third lawsuit in Florida against Dex Media based on the exact same claims that it has already litigated against SuperMedia.**

34. On April 29, 2016, less than a month after this Court issued its opinion on YPPI's Proof of Claim, YPPI sued Dex Media in the United States District Court for the Middle District of Florida. (*See* Ex. D, Dex Media Complaint.)

35. In its Complaint, YPPI seeks to hold Dex Media liable for copyright infringement of the Licensed Images because Dex Media is allegedly "using" some of the Licensed Images in print advertisements in phone directories purportedly published by Dex Media. Once again, YPPI claims that Dex Media "possesses and is using and displaying some or all of the Licensed Images, without Plaintiff's permission or approval." (*Id.* ¶ 49.) There are at least five different, independent reasons why these copycat claims against Dex Media fail as a matter of law.

36. ***First***, YPPI has already asserted and lost these claims. In particular, this Court has already found that SuperMedia removed the Licensed Images from its systems in 2011, [Case No. 13-10546-KG, D.I. 220 at 21]; *see also* [Adv. No. 15-50044-KG, D.I. 199 at 16], and that there was no transfer of the Licensed Images from SuperMedia to Dex Media, [Case 13-

**YPPI0011**

10546-KG, D.I. 293]. YPPI's attempt to re-litigate these same issues is barred by the doctrines of res judicata and collateral estoppel.

37. **Second**, YPPI is judicially estopped from asserting that these print ads are infringements because YPPI has already conceded that the print ads YPPI has attributed to Dex Media are not infringing uses of the Licensed Images. In its latest Complaint, YPPI claims that Dex Media "began publishing directories at some point after the Effective Date of the Merger in 2013 and today publishes approximately 1,700 directories each year." (*Id.* ¶ 58.) These are the exact same "1,700" directories that YPPI offered as evidence in the November 2016 trial— directories that YPPI and its counsel repeatedly conceded were not infringing uses of the Licensed Images. (*See* November 18, 2016 Trial Tr. 186:20-24 ("I'm not saying the uses are infringing."); *see also* November 18, 2016 Trial Tr. (Timmerman) 167:9-16 ("But the point is these are not being offered to show infringement."); 170:12-22 ("I'm not trying to say these are additional infringement."); 174:3-14 ("[W]e're not offering [that] these are infringements or to quantify anything.").)

38. **Third**, even if Dex Media were using the Licensed Images, that is expressly contemplated and permitted by the License, which is on behalf of SuperMedia "and all of its affiliates." (Ex. A, License; Ex. B, Amendment One.) To the extent any advertisements in these phone directories represent a use of the Licensed Images by Dex Media (they do not), that is a fully licensed use of the Licensed Images for which SuperMedia has already paid $660,000.

39. **Fourth**, Dex Media is not "using" the Licensed Images. The print advertisements are SuperMedia products. There is no question that SuperMedia is allowed to use Licensed Images in SuperMedia advertising products. YPPI has conceded as much. (November 18, 2016 Trial Tr. (Moore) 269:7-17 ("Q. And SuperMedia was allowed to use your images in print ads,

**YPPI0012**

correct?  A.  Yes, they were.").)  And as this Court has already concluded, SuperMedia LLC survived the merger as a separate entity with distinct operations.  [Case 13-10546-KG, D.I. 293].  Dex Media is simply the global parent of SuperMedia, Inc. (SuperMedia's parent) and the Dex One entities.  [Case No. 13-10545-KG, D.I. 3 at Ex. B].  Dex Media, however, is a holding company that has no independent "operations" and produces no advertising products, so Dex Media has not "used" the Licensed Images at all, let alone engaged in any copyright infringement related to such a "use."

40.      *Fifth*, the crux of YPPI's new claim is that Dex Media could not have the right to use the Licensed Images because "neither Idearc [] nor its trustee ever took the statutory steps necessary to assume the Service Agreement in the Idearc Bankruptcy" and as a result "neither Idearc Media nor SuperMedia possess any use or other rights under the Service Agreement." (Ex. D, Dex Media Complaint ¶ 38.)  YPPI overlooks the fact that this Court has already decided on two separate occasions that the License Agreement is *not* executory and, as such, did not have to be "assumed" for SuperMedia and its affiliates to continue to use the Licensed Images.  [Case No. 13-10545-KG, D.I. 280 at 9; Case No. 13-10546-KG, D.I. 20 at 2].

## FIRST COUNT

### (Declaratory Judgment)

41.      Dex Media repeats and re-alleges paragraphs 1 through 40 above.

42.      A real and existing controversy exists between Dex Media and YPPI concerning whether YPPI is barred and precluded from bringing any claims against Dex Media regarding the use of the Licensed Images.  There is also a real and existing controversy as to whether Dex Media has engaged in copyright infringement with respect to the Licensed Images.

43.      Accordingly, Dex Media seeks an order declaring that (i) YPPI is precluded from bringing claims against Dex Media for purported unauthorized use of the Licensed Images; (ii)

YPPI0013

Dex Media is an affiliate of SuperMedia's and is authorized to use the Licensed Images per the terms of the License, and (iii) Dex Media has not infringed any of the Licensed Images for any purpose.

## SECOND COUNT

### (Attorneys' Fees and Costs)

44.  Dex Media repeats and re-alleges paragraphs 1 through 44 above.

45.  Federal copyright law states that "[i]n any civil action" relating to copyright infringement, the Court "in its discretion may allow the recovery of full costs by or against any party . . . ." and "may also award a reasonable attorney's fee to the prevailing party as part of the costs." 17 U.S.C. §505.

46.  YPPI's Complaint constitutes a civil action for copyright infringement based on Dex Media's alleged unauthorized use of YPPI's copyrighted materials.

47.  Accordingly, because Dex Media has not infringed YPPI's copyrights, Dex Media seeks an order awarding it the reasonable attorneys' fees and costs that it has incurred, or will incur, in this action.

## THIRD COUNT

### (Objection to YPPI's Claim)

48.  Dex Media repeats and re-alleges paragraphs 1 through 48 above.

49.  On June 24, 2016, YPPI filed a Motion For Relief from Automatic Stay under 11 U.S.C. § 362 in the above-captioned Chapter 11 proceeding.  [Case No. 16-11200-KG, D.I. 245 ("Lift Stay Motion")].  In its motion, YPPI acknowledges that it is "an unsecured creditor in this bankruptcy case" that possesses "general unsecured claims [against Dex Media] that need to be liquidated." (*Id.* at 1, 3.)

YPPI0014

50. By its Complaint and Lift Stay Motion, YPPI has made a claim on Dex Media's Chapter 11 estate for payment based on Dex Media's purported infringement of YPPI's copyrights.

51. Because Dex Media has not infringed YPPI's copyrights, YPPI's claim is unenforceable against Dex Media and the property of Dex Media under applicable law. Accordingly, Dex Media hereby objects to, and seeks an order denying YPPI's claim pursuant to 11 U.S.C. § 502(b)(1).

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court enter an order:

a. declaring that (i) YPPI is precluded from bringing claims against Dex Media regarding the use of the Licensed Images; (ii) Dex Media is authorized to use YPPI's Licensed Images in advertising products; and (iii) Dex Media has not infringed any of YPPI's copyrights;

b. granting Dex Media an award of the attorneys' fees and costs that it has incurred, or will incur, in this action;

c. disallowing with prejudice YPPI's claim against Dex Media's estate; and

d. granting such other and further relief as the Court deems to be just and equitable.

15

Dated: July 8, 2016                           KIRKLAND & ELLIS LLP
         Wilmington, Delaware              Eric F. Leon, P.C. (*pro hac vice* admission pending)
                                               Kuan Huang (*pro hac vice* admission pending)
                                               601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900

- and -

YOUNG CONAWAY STARGATT & TAYLOR, LLP

/s/ Patrick A. Jackson
Pauline K. Morgan (Bar No. 3650)
Patrick A. Jackson (Bar No. 4976)
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253

*Counsel to Dex Media, Inc.*

16

**YPPI0016**

# EXHIBIT A

YPPI0017

SERVICE AGREEMENT

BETWEEN

VERIZON DIRECTORIES CORP.

AND

YELLOW PAGE PHOTOS, INC

CONTRACT MANAGER: STEVEN W. GORDON

CONTRACT NUMBER: VIS2001-0045

Highly Confidential
YPPI-01263

11/16/15
TRIAL EXHIBIT
421

SUPER-053935

## TABLE OF CONTENTS

| SECTION | PAGE |
|---|---|
| 1. TERM | 1 |
| 2. SERVICES; CHANGE ORDERS | 1 |
| 3. END USER LICENSE AGREEMENT | 1 |
| 4. PAYMENT FOR SERVICES | 2 |
| 5. EXPENSES | 2 |
| 6. SPECIFICATION AND REQUIREMENTS; COMPLETION AND ACCEPTANCE | 2 |
| 7. REPRESENTATIONS AND WARRANTIES | 2 |
| 8. INDEMNIFICATION | 3 |
| 9. INDEPENDENT CONTRACTOR | 4 |
| 10. CONFIDENTIAL INFORMATION | 4 |
| 11. INSURANCE | 5 |
| 12. ASSIGNMENT | 8 |
| 13. TERMINATION | 8 |
| 14. NOTICES | 8 |
| 15. SEVERABILITY; CONFLICTING PROVISIONS | 9 |
| 16. ATTORNEYS' FEES | 9 |
| 17. GOVERNING LAW | 10 |
| 18. ENTIRE AGREEMENT | 10 |

Contract Number VIS2001 – 0045
Yellow Page Photos, Inc.

Highly Confidential
YPPI-01264

SUPER-053936

19.  WAIVER ................................................................10

EXHIBIT A:  STATEMENT OF WORK
EXHIBIT B    PAYMENT SECTION
EXHIBIT C    END USER LICENSE AGREEMENT

ii

Highly Confidential
YPPI-01265

SUPER053937

## SERVICE CONTRACTOR AGREEMENT

THIS SERVICE CONTRACTOR AGREEMENT (this "Agreement") is made and entered into effective as of November 12, 2001 (the "Effective Date"), by and between Verizon Directories Corp. ("Verizon Directories"), a Delaware corporation, whose principal offices are located at Verizon Place, West Airfield Drive, P.O. Box 619810, DFW Airport, Texas 75261m on behalf of itself and all of its affiliates, and Yellow Pages Photos, Inc. ("Contractor"), a Florida corporation, whose principal offices are located at P.O. Box 2340, Riverview, FL 33568.

In consideration of the mutual covenants and obligations set forth below, the parties agree as follows:

1.    **Term.**

The term of this Agreement shall commence on the Effective Date, and shall continue until the date upon which the Services (as defined below) are completed, or December 31, 2004, whichever occurs first, unless this Agreement is sooner terminated as provided below.

2.    **Services; Change Orders.**

Contractor shall perform the services described in the Statement of Work attached hereto as Exhibit A, and such other related services as Verizon Directories may reasonably request in writing (collectively, the "Services"). Contractor acknowledges and agrees that Verizon Directories may in it's sole discretion add, delete or change the Services at any time upon written notice (a "Change Order") to Contractor, and in such event, Contractor shall perform the Services in accordance with the Change Order; provided, however, that in the event any such Change Order increases or decreases the amount or character of, or the time necessary to perform the Services, then Contractor's compensation payable hereunder will be equitably adjusted in accordance with the rates and charges set forth herein. This is a non – exclusive agreement and Verizon Directories reserves the right to employ other contractors from time to time, as it may desire to perform similar services or use its own employees to perform such services.

3.    **End User License Agreement.**

Contractor grants and Verizon Directories' accepts the terms of the License Agreement attached hereto as Exhibit C.

Contract Number VIS2001- 0045
Yellow Pages Photos, Inc.

Highly Confidential
YPPI-01266

SUPER 053938

4.    Payment for Services.

Verizon Directories shall pay Contractor for Services specified in the Payment Section hereto as Exhibit B, which amount shall be due and payable thirty (30) days following the date of Verizon Directories' receipt of Contractor's properly submitted invoice in such amount, or thirty (30) days following the date of the completion and acceptance of the Services, whichever occurs last. Notwithstanding anything contained herein to the contrary, the terms and conditions of this Agreement shall prevail and control over any terms and conditions set forth in any invoice(s) submitted by Contractor under this Agreement.

5.    Expenses.

Unless otherwise agreed and signed by the parties in writing, Verizon Directories shall not be liable to Contractor for any expenses incurred by Contractor in performing its obligations under this Agreement.

6.    Specification and Requirements; Completion and Acceptance.

Contractor shall perform the Services in accordance with such reasonable instructions, requests, specifications and requirements as Verizon Directories may specify from time to time. Any Services not performed in accordance with the foregoing shall be corrected by Contractor at no cost to Verizon Directories. The Services shall be deemed completed and accepted only upon Verizon Directories' written certification that the Services have been performed to its satisfaction, as determined by Verizon Directories in its reasonable discretion.

7.    Representations and Warranties.

In addition to the representations and warranties set forth in any proposal or other writing previously provided by Contractor to Verizon Directories relating to the Services to be performed hereunder (which are hereby incorporated by reference for all purposes), Contractor further represents and warrants to Verizon Directories, its successors and assigns, that:

a.    It has the right and authority to enter into this Agreement, and to perform the Services, without the consent or authorization of any third party.

b.    It will not be in violation of any agreement with any third party as a result of its execution of this Agreement, or its performance of the Services hereunder.

B-2

Contract Number VIS2001-0045
Yellow Pages Photos, Inc.

Highly Confidential
YPPI-01267

SUPER053939

c.  It will comply with any and all applicable federal, state and local statutes, regulations, ordinances or laws of any kind, in its performance of the Services.

d.  It will perform the Services in a good, professional and workmanlike manner, and in accordance with the highest applicable professional standards, and will not employ, assign or otherwise use any person in its performance of the Services, who is not fully trained, knowledgeable and experienced in the performance of such Services.

e.  It will not take any action, or engage in any conduct, if the intended or probable effect of its doing so will be to deprive Verizon Directories of any of the material benefits which it may reasonably expect to receive or obtain as a result of this Agreement.

f.  It will not infringe upon the intellectual property rights of any third party in the performance of the Services hereunder, and will not incorporate any modules, code, or materials of any kind into the Works (as defined below) produced hereunder from pre-existing commercial off-the-shelf computer programs, proprietary computer programs, audio programs, visual programs, audiovisual programs, proprietary materials, photographs, images or any other intellectual property owned or copyrighted by Contractor or any third party. In the event that Contractor incorporates any modules, code or materials owned or copyrighted by Contractor into the Works produced for Verizon Directories hereunder, then Contractor shall and does hereby grant Verizon Directories the perpetual, irrevocable and royalty-free right and license to utilize any such modules, code, photographs, images or materials in such fashion, and for any and all purposes which Verizon Directories may desire, from time to time.

g.  Except as otherwise disclosed herein, the representations and warranties made by Contractor in any proposals or other writings previously delivered by Contractor to Verizon Directories were true and correct when made, and remain true and correct as of the date of this Agreement.

h.  It has not failed to disclose any facts or information, the existence of which would be of material relevance to a reasonable business person in its consideration of the matters which are the subject of this Agreement.

B.  Indemnification.

The parties shall indemnify, defend and hold each other, and their respective successors, assigns, and affiliates harmless from and against any losses, liabilities, claims, actions, and expenses, including reasonable attorneys' fees, arising out of:

B-3

Contract Number VIS2001-0045
Yellow Pages Photos, Inc.

**Highly Confidential**
YPPI-01268

SUPER2053940

a.  A breach by the indemnifying party of any of its material obligations under this Agreement, or of any of the warranties set forth above;

b.  A determination by either party that any of the other party's representations set forth above (or otherwise incorporated herein by reference), were false or materially misleading when made, or as of the Effective Date; or

c.  Negligence, gross negligence or willful misconduct by the indemnifying party in or arising from the performance of its obligations under this Agreement.

9.  <u>Independent Contractor.</u>

a.  Contractor is an independent contractor, and not an agent of Verizon Directories. As such, Contractor acknowledges and agrees that it is not authorized to waive any right or to incur, assume or create any debt, obligation or contract of any kind in the name of or on behalf of Verizon Directories. Nothing herein shall be construed to create between the parties any partnership, joint venture, employment relationship, franchise, or agency.

b.  As an independent contractor, Contractor acknowledges that it is solely responsible for complying with applicable federal and state laws and, specifically, for payment of all taxes or contributions which may be payable based upon Contractor's fee including, but not limited to, federal and state income taxes, social security taxes, unemployment compensation taxes, and any other applicable taxes or business license fees. Contractor further agrees to provide Verizon Directories with evidence of payment of any and all such taxes and fees upon Verizon Directories' written request made in connection with any state or federal audit in which Contractor's status as an independent contractor is questioned or disputed. Contractor specifically acknowledges that it is not entitled to participate in Verizon Directories' benefit plans.

10. <u>Confidential Information.</u>

a.  Contractor acknowledges that Verizon Directories owns or has a proprietary interest in certain information which is of a special, unique or non-public nature, including, but not limited to, trade secrets, information relating to its customers, business plans, operations and affiliations, marketing information, personnel matters, computer software and other proprietary materials (collectively "Confidential Information"). Contractor agrees that Verizon Directories has disclosed or may disclose to Contractor Confidential Information necessary for its performance of the Services under this Agreement.

B-4

Contract Number VIS2001- 0045
Yellow Pages Photos, Inc.

Highly Confidential
YPPI-01269

SUPER053941

b.   Contractor shall maintain in confidence all Confidential Information, and shall not disclose Confidential Information to persons not authorized in writing by Verizon Directories to receive Confidential Information, except pursuant to a valid court order or as required by law, and shall not use Confidential Information except for the purposes of performance under this Agreement.

c.   Contractor shall further take reasonable steps to prevent unauthorized parties from obtaining Confidential Information in Contractor's possession. In case of an inadvertent disclosure of Confidential Information, Contractor shall immediately notify Verizon Directories, and shall take such further necessary steps as Verizon Directories may reasonably request to prevent further inadvertent disclosure.

d.   Contractor shall not make or permit to be made copies, abstracts, or summaries of Verizon Directories' reports, papers or documents, except in compliance with Contractor's obligations under this Agreement, and for the sole use of Verizon Directories. Contractor shall disclose Confidential Information only to those of its employees who need to know such information in order to aid in the performance of the Services hereunder. Such employees shall be notified of the proprietary nature of Confidential Information and their duty to maintain its confidentiality. Contractor may not disclose Confidential Information to any party other than those of its employees mentioned above, without Verizon Directories' prior written consent.

e.   Notwithstanding anything to the contrary set forth above, "Confidential Information" shall not include any information which:

     i.   Is or becomes available to the public through no action on the part of Contractor;

     ii.   Is received from a third party without restriction as to disclosure, and without breach of this Agreement; or

     iii.   Was lawfully in Contractor's possession, without restriction as to disclosure, prior to Verizon Directories' disclosure of the same.

11.  **Insurance.**

a.   Contractor agrees to maintain in full force and effect during the term hereof the following minimum insurance coverage with insurance companies approved by Verizon Directories:

B-5

Contract Number VIS2001-0045
Yellow Pages Photos, Inc.

**Highly Confidential**
**YPPI-01270**

SUPER 053942

i. Workers' Compensation and Occupational Disease covering Contractor's full liability under the Statutory Workers' Compensation Laws for the state in which the services are performed.

ii. Employer's Liability Insurance in the minimum amount of $100,000 per occurrence and $200,000 in the aggregate.

iii. General Liability Insurance – Broad Form, including, but not limited to, Owner's Protective Liability, Blanket Contractual Liability, and Products Liability/Completed Operations, in the minimum amounts of $1,000,000 per occurrence and $1,000,000 general aggregate for property damage and any accident resulting in bodily injury or the death of one or more persons, and the consequential damages arising therefrom.

iv. If the use of any motor vehicle is required, comprehensive Motor Vehicle Liability Insurance including, but not limited to, owned, non-owned, leased, and hired vehicles in the minimum amounts of $1,000,000 combined single limit per occurrence for Property Damage and any accident resulting in bodily injury or the death of one or more persons, and the consequential damages arising therefrom.

b. Any deductibles, self-insured retentions (SIR), loss limits, retentions, etc. (collectively, "Retentions") must be disclosed on a certificate of insurance provided to Verizon Directories, and are subject to acceptance by Verizon Directories, such acceptance not to be unreasonably withheld. All Retentions shall be the responsibility of the Contractor.

c. Verizon Directories (including any affiliated and/or managed entity), its directors, officers and employees shall be named as additional insureds under all General Liability, Automobile Liability and Umbrella/Excess Liability Policies obtained by Contractor. Such additional insured endorsement shall cover Verizon Directories for all claims arising out of work or operations performed by or on behalf of Contractor, shall provide coverage regardless of whether a claim arises out of alleged negligence of Verizon Directories, shall not exclude liability for negligence of Verizon Directories, and shall provide that such additional insurance is primary insurance and shall not contribute with any insurance or self-insurance that Verizon Directories has procured to protect itself. All of the insurance afforded by the Contractor shall be exhausted before Verizon Directories becomes involved, including Verizon Directories' coverage as an additional insured under the Contractor's Umbrella/Excess Liability Insurance policy(ies). Verizon Directories' insurance coverages shall be excess over any insurance afforded by the Contractor.

B-6

Contract Number VIS2001- 0045
Yellow Pages Photos, Inc.

Highly Confidential
YPPI-01271

d.    Contractor waives and will require all of its insurers to waive all rights of recovery against Verizon Directories (including any affiliated and/or managed entity), its directors, officers and employees, agents or assigns, whether in contract, tort (including negligence and strict liability) or otherwise.

e.    Before the commencement of any service provided under this Agreement, Contractor agrees to submit to Verizon Directories a certificate of insurance ACORD Form 25-S (1/95), or latest edition, such certificate to be signed by a duly authorized officer or agent of the insurer, certifying that the minimum insurance coverages and conditions set forth in (a) and (b) above are in effect, and that Verizon Directories will receive at least thirty (30) days notice of policy cancellation or non-renewal. At least thirty (30) days prior to the expiration of the policy, Verizon Directories must be furnished satisfactory evidence that such policy has been renewed or replaced by another policy with like coverages.

f.    At Verizon Directories' request, Contractor shall provide copies of the insurance provisions or endorsements as evidence that the required insurance has been procured, and that Verizon Directories has been named as an additional insured, prior to commencement of any service. In no event shall permitting Contractor to begin or complete work, or payment to Contractor for work performed, or acceptance of any work, be construed as a waiver of the right of Verizon Directories to assert a claim against Contractor for breach of the obligations established in this Section 11, Insurance.

g.    Contractor shall require its subcontractors to comply with each of the provisions of this insurance section. This includes, but is not limited to, maintaining the minimum insurance coverages and limits, naming Verizon Directories (including any affiliated and/or managed entity) as an additional insured under all liability insurance policies, and waiving all rights of recovery against Verizon Directories (including any affiliated and/or managed entity), its directors, officers and employees, agents or assigns, whether in contract, tort (including negligence and strict liability) or otherwise.    Prior to commencement of any work on the project, Contractor shall require and maintain certificates of insurance from each subcontractor evidencing the required coverages. At Verizon Directories' request, Contractor shall supply to Verizon Directories copies of such certificates of insurance or require the subcontractors to provide insurance provisions or endorsements as evidence that the required insurance has been procured.

B-7

Contract Number VIS2001-0045
Yellow Pages Photos, Inc.

Highly Confidential
YPPI-01273

SUPER-0753944

12. <u>Assignment.</u>

Contractor shall not assign its rights nor delegate its duties under this Agreement or otherwise contract, subcontract, or delegate the performance of its obligations hereunder to any third party, without Verizon Directories' prior written consent in each instance. Any attempted assignment without such prior consent shall be voidable at the sole and absolute discretion of Verizon Directories.

13. <u>Termination.</u>

a.   Verizon Directories may terminate this Agreement immediately upon written notice to Contractor, and in such event, Contractor shall be entitled to an additional six thousand dollars ($6,000) for each CD that has already been delivered to Verizon.

b.   Either party may terminate this Agreement immediately and without further notice:

i.   If the other party makes an assignment for the benefit of creditors;

ii.   If the other party files a voluntary petition for relief under Chapter 7, Chapter 11 or Chapter 13 of the United States Bankruptcy Code or any analogous statute of any country; or

iii.   If the other party is adjudged as bankrupt, and such condition is not remedied within twenty (20) days after notice of bankruptcy has been given to the remaining party.

c.   Immediately upon the termination of this Agreement for any reason, Contractor shall and does hereby agree to provide and deliver to Verizon Directories all information, materials and Works of any kind produced or generated by Contractor, its employees, and subcontractors, if any, in the performance of Services under this Agreement.

14. <u>Notices.</u>

All notices, requests, demands and other communications relating to this Agreement shall be in writing and deemed to be given when delivered personally or three (3) days after being mailed by certified mail, postage prepaid, return receipt requested, to the parties, their successors in interest or their assigns to the addresses set forth below (or at such other addresses as shall be given in writing by either party to the other).

**Highly Confidential**
**YPPI-01272**

SUPER 053945

If to Verizon Directories:

Verizon Directories Corporation
Verizon Place, West Airfield Drive
P.O. Box 619810
DFW Airport, Texas 75261-9810
Attn: Contract Management, Steven Gordon

with a copy to:

Vice President – General Counsel
Verizon Directories Corporation
Verizon Place, West Airfield Drive
P.O. Box 619810
DFW Airport, Texas 75261-9810

If to Contractor:

Yellow Page Photos, Inc.
P.O. Box 2340
Riverview, FL 33568
Attention: Trent Moore

15.    Severability.

If any provision of this Agreement is held by a court or regulatory agency of competent jurisdiction to be unenforceable, the rest of the Agreement shall remain in full force and effect and shall not be affected unless removal of that provision results, in the good faith opinion of either party, in a material change to this Agreement. If a material change as described in this paragraph occurs as a result of a action by a court or regulatory agency, the Parties shall negotiate, in good faith, replacement language. If replacement language cannot be agreed upon within a reasonable period, either Party may terminate this Agreement without penalty or liability for such termination upon written notice to the other Party.

16.    Attorneys' Fees.

Should either party commence an action against the other for failure to abide by any of the terms of this Agreement, the prevailing party in such action shall be entitled to recover all costs, including reasonable attorneys' fees associated with the action. Such relief is in addition to any other relief which may be awarded to the prevailing party.

B-9

Highly Confidential
YPPI-01274

SUPER053946

17.  Governing Law.

All questions concerning the validity, interpretation or performance of any of the terms or provisions of this Agreement, or of any rights or obligations of the parties hereof, shall be governed by and resolved in accordance with the laws of the State of Texas. Exclusive venue for any such suit, action, or proceeding shall be in Dallas, Texas.

18.  Entire Agreement.

This Agreement constitutes the entire agreement between the parties with respect to the subject matter hereof and supersedes any and all prior agreements with respect thereto. This Agreement may not be modified by any prior or contemporaneous agreement. No amendment to this Agreement shall be binding, unless in writing and signed by authorized representatives of the parties to this Agreement.

19.  Waiver.

No waiver of any breach of any agreement or provision herein contained shall be deemed a waiver of any preceding or succeeding breach of the same or any other agreement or provision contained herein. No extension of time for performance of any obligations or acts shall be deemed a preceding or succeding extension of the time for performance of the same or any other obligation or act.

IN WITNESS WHEREOF, the parties have executed this Agreement effective as of the date first written above.

VERIZON DIRECTORIES CORP.:        YELLOW PAGE PHOTOS, INC.

By: _George A. Keefe_             By: _William T. Moore_

Printed Name: _George A. Keefe_   Printed Name: _William T. Moore_

Title: _Group Vice President_     Title: _General Manager_
       _Publishing_
Date: _11/16/01_                  Date: _____

Contract Number VIS2001-0045        B-10
Yellow Pages Photos, Inc.

Highly Confidential
YPPI-01275

EXHIBIT A

STATEMENT OF WORK

This Statement of Work outlines the tasks required for Yellow Page
Photo's, Inc. (Contractor) to provide product for Verizon Directories
Corporation (Customer). This Statement of Work is incorporated in the
Agreement dated November 8, 2001 (the "Agreement").

A. Contractor shall deliver to Verizon a total of 100 usable title CD's with photo's
   agreed upon

B. Each CD shall consist of 50 professional photographic images

C. Contractor shall provide between 24 and 30 CD's per year.

D. Contractor shall provide unlimited additional copies of CD's at no additional
   cost to Verizon Directories

E. Customer shall have influence of which future title will be created on CD's

Highly Confidential
YPPI-01276

CONFIDENTIAL

Case 1:17-cv-... Case 13-10545-KG Doc 209-1 ... Doc 311 Filed 05/29/13 ... Filed 05/05/16 Page 16 of 20 ... Page 33 of 87 PageID #: 138

# EXHIBIT B

## YPPI DELIVERY / FEE SCHEDULE

### BILLINGS WILL OCCUR ON A QUARTERLY BASIS

**2002**

| DELIVERY | # CD's | COST |
|---|---|---|
| JAN | 27 | 178,200 |
| FEB | 2 | 13,200 |
| MAR | 2 | 13,200 |
| QTR BILLING | | 204,600 |
| APR | 2 | 13,200 |
| MAY | 2 | 13,200 |
| JUN | 2 | 13,200 |
| QTR BILLING | | 39,600 |
| JUL | 2 | 13,200 |
| AUG | 2 | 13,200 |
| SEP | 2 | 13,200 |
| QTR BILLING | | 39,600 |
| OCT | 2 | 13,200 |
| NOV | 6 | 39,600 |
| DEC | 4 | 26,400 |
| QTR BILLING | | 79,200 |
| **TOTAL COST** | | **$363,000** |

**2003**

| DELIVERY | # CD's | COST |
|---|---|---|
| JAN | 5 | 33,000 |
| FEB | 2 | 13,200 |
| MAR | 2 | 13,200 |
| QTR BILLING | | 59,400 |
| APR | 5 | 33,000 |
| MAY | 2 | 13,200 |
| JUN | 2 | 13,200 |
| QTR BILLING | | 59,400 |
| JUL | 2 | 13,200 |
| AUG | 2 | 13,200 |
| SEP | 2 | 13,200 |
| QTR BILLING | | 39,600 |
| OCT | 2 | 13,200 |
| NOV | 2 | 13,200 |
| DEC | 2 | 13,200 |
| QTR BILLING | | 39,600 |
| **TOTAL COST** | | **$198,000** |

**2004**

| DELIVERY | # CD's | COST |
|---|---|---|
| JAN | 5 | 33,000 |
| FEB | 2 | 13,200 |
| MAR | 2 | 13,200 |
| QTR BILLING | | 59,400 |
| APR | 2 | 13,200 |
| MAY | 2 | 13,200 |
| JUN | 2 | 13,200 |
| QTR BILLING | | 39,600 |
| **TOTAL COST** | | **$99,000** |

**TOTAL $660,000**

Highly Confidential
YPPI-01277

SUPER-053949

EXHIBIT C

## YELLOW PAGES PHOTOS, INC.
### END USER LICENSE AGREEMENT
### FOR VERIZON DIRECTORIES.
### UNLIMITED USER
### UNLIMITED ACCESS
### SITE LICENSE

This license agreement grants certain limited rights to the use of the photographs and images provided to Verizon Directories pursuant to this Agreement. Yellow Pages Photos, Inc retains all ownership and title rights to the photographs and images.
Any and all rights not specifically granted in this agreement are expressly reserved by Yellow Pages Photos, Inc. Yellow Pages Photos, Inc. from this point forward is referred to as YPPI.
Stock Photo Compact Disc from this point forward may also be referred to as CD.
Download is defined as either copying or saving an image to another form of media other than the CD purchased.
Photos hereafter refers to both the terms photograph and image.

Yellow Pages Photos, Inc grants to Verizon Directories, and Verizon Directories accepts, a perpetual, limited, non-exclusive, fully paid license to use the photographs and images cotained in any Compact Disc provided to Verizon Directories pursuant to this Agreement. The photographs and images contained therein and all copyrights and other propriatary rights therein are owned by Yellow Pages Photos, Inc, are protected by United States Copyright Laws and International treaty Provisions, and may not be used, reproduced, modified, distributed or transferred except as expressly provided by this Agreement. This license grants neither exclusive nor sole use of the photos, either in a specific region or to a single individual, advertiser, or publishing company. Other publishing companies, individuals or corporations (whether competing or not) within the same market may simultaneously obtain and publish these photos without regard to geographic region.

USE:
Yellow Pages Photos Inc grants license to use such photographs and images for use in print, electronic or other medium that may be used by Verizon Directories for publication of directories without limit, ROYALTY FREE. The photographs and images may be cropped, cut, altered or manipulated from original form as necessary to meet publishing needs.

YPPI licenses such photographs and images to Verizon Directoires for the uses permitted under this Agreement upon the condition that it accepts all of the terms and conditions contained in the Agreement, including without limitation this Customer License ("Customer License"). Please read all of the conditions set forth with great care, as once the package is opened this indicates your acceptance of the terms and conditions set forth. If you do not agree with these conditions YPPI does not grant license and you should return the unopened packages within 10 days for a full refund.

Highly Confidential
YPPI-01278

<u>**NUMBER OF USERS LICENSED:**</u>
This license is a "600 USER, VERIZON EMPLOYEE ONLY UNLIMITED ACCESS SITE
LICENSE". This license specifically grants authority to allow multiple user access. The
licensee may load these images on whatever system is deemed appropriate to allow unfettered
access to as many licensed users as necessary. This license further allows "VERIZON
DIRECTORIES" authority to upload all information on a network server of its own design to
allow multiple site access as well. VERIZON DIRECTORIES may not transfer these images to
other parties or individuals unless authorized by YPPI; provided however, that Verizon
Directories is authorized by the Customer License herein granted to utilize these photographs and
images in the advertising purchased by its customers for inclusion in Verizon Directories' print
and electronic directory products and any other medium which Verizon Directories may utilize to
publish directories during the term of this Agreement. All users must be Employees of
VERIZON DIRECTORIES

<u>**GEOGRAPHIC BOUNDARY:**</u>
As this is an unlimited user, unlimited access license, Geographic boundary with respect to
transfer of information or server location is not limited.

<u>**LIMITS OF LIABILITY:**</u>
Because YPPI is directly involved in neither the printing nor publishing of the photos, and each
printer or publisher utilizes its own specifications and technologies for print, YPPI is not
responsible or liable for print errors during or after publication. YPPI is not responsible or liable
for damages or costs incurred as a result of loss of time, loss of data, loss of anticipated profits or
benefits resulting from the use of this product, nor for damages or costs incurred in obtaining
substitute products. In connection with the use of this product YPPI's liability to the purchaser
arising out of the use or in connection with the use of this product whether in contract, tort or
otherwise shall not exceed the purchase price or license fee paid for the photo in question, except
as provided in the following Sections of the Agreement: (i) Section 7 Infringement and (ii)
Section 10 Confidential Information. YPPI shall be responsible for identified damaged
photographs on CD's and shall replace each CD at no addition cost to Verizon Directories.

Highly Confidential
YPPI-01279

## AMENDMENT NUMBER ONE
### TO
### AGREEMENT NUMBER VIS-2001-0045

This Amendment Number One ("Amendment") is made and entered into as of July 16, 2007 (the "Amendment Effective Date"), by and between Idearc Media Corp., f/k/a Verizon Directories Corp. ("Idearc"), a Delaware corporation, whose principal offices are located at 2200 West Airfield Drive, P.O. Box 619810, DFW Airport, Texas 75261, on behalf of itself and all of its affiliates, and Yellow Pages Photos, Inc. ("YPPI"), a Florida corporation, whose principal offices are located at 8907 Alafia Way Riverview, Florida 33578.

WHEREAS, Idearc and YPPI entered into that certain Service Contractor Agreement effective as of November 12, 2001 (together with any prior amendments hereinafter referred to as the "Agreement"); and

WHEREAS, Idearc and YPPI now desire to amend the terms of the Agreement in the manner prescribed below.

NOW, THEREFORE, Idearc and YPPI agree as follows:

1.   All references to "Verizon Directories" in the Agreement are hereby replaced with "Idearc".

2.   All references to "Contractor" in the Agreement are hereby replaced with "YPPI".

3.   The first sentence of the USE Section Exhibit C is hereby deleted in its entirety and replaced by the following:

> "YPPI grants Idearc a license to use such photographs and images in print, electronic, or any other media, without limit, for use in print and CD-ROM directories, Internet-based information services owned and operated by Idearc or which are otherwise powered by or obtain their content from any such Idearc-based information services, magazines and other publications, direct mail and other advertising-based products, and advertising and promotional materials, royalty free."

4.   The fourth and fifth sentences of the NUMBER OF USERS LICENSED Section of Exhibit C are hereby deleted in its entirety and replaced with the following:

> "Idearc may not transfer these images to other parties or individual unless authorized by YPPI; provided however, that Idearc is authorized by this Agreement to use the photographs and images in advertising purchased by its customers for inclusion in Idearc's products. All users must be employees or contractors of Idearc."

5.   Except as otherwise amended herein, the parties ratify and affirm their respective obligations under the Agreement.

1

Contract Number: VIS-2001-0045
Contract Name: Ad Media

Confidential

SUPER-053952

IN WITNESS WHEREOF the parties have executed this Amendment on the date set forth below, but effective as of the Amendment Effective Date.

YELLOW PAGES PHOTOS, INC.

By: _____

Title:
_President_____

Date: _July 18, 2007_____

IDEARC MEDIA CORP.

By: _____

Title: _DIRECTOR - INTERNET OpS_

Date: _7/26/07_____

2

# EXHIBIT B

YPPI0037

AMENDMENT NUMBER ONE
TO
AGREEMENT NUMBER VIS-2001-0045

This Amendment Number One ("Amendment") is made and entered into as of July 16, 2007 (the "Amendment Effective Date"), by and between Idearc Media Corp., f/k/a Verizon Directories Corp. ("Idearc"), a Delaware corporation, whose principal offices are located at 2200 West Airfield Drive, P.O. Box 619810, DFW Airport, Texas 75261, on behalf of itself and all of its affiliates, and Yellow Pages Photos, Inc. ("YPPI"), a Florida corporation, whose principal offices are located at 8907 Alafia Way Riverview, Florida 33578.

WHEREAS, Idearc and YPPI entered into that certain Service Contractor Agreement effective as of November 12, 2001 (together with any prior amendments hereinafter referred to as the "Agreement"); and

WHEREAS, Idearc and YPPI now desire to amend the terms of the Agreement in the manner prescribed below.

NOW, THEREFORE, Idearc and YPPI agree as follows:

1.    All references to "Verizon Directories" in the Agreement are hereby replaced with "Idearc".

2.    All references to "Contractor" in the Agreement are hereby replaced with "YPPI".

3.    The first sentence of the USE Section Exhibit C is hereby deleted in its entirety and replaced by the following:

"YPPI grants Idearc a license to use such photographs and images in print, electronic, or any other media, without limit, for use in print and CD-ROM directories, Internet-based information services owned and operated by Idearc or which are otherwise powered by or obtain their content from any such Idearc-based information services, magazines and other publications, direct mail and other advertising-based products, and advertising and promotional materials, royalty free."

4.    The fourth and fifth sentences of the NUMBER OF USERS LICENSED Section of Exhibit C are hereby deleted in its entirety and replaced with the following:

"Idearc may not transfer these images to other parties or individual unless authorized by YPPI; provided however, that Idearc is authorized by this Agreement to use the photographs and images in advertising purchased by its customers for inclusion in Idearc's products. All users must be employees or contractors of Idearc."

5.    Except as otherwise amended herein, the parties ratify and affirm their respective obligations under the Agreement.

1

Contract Number: VIS-2001-0045
Contract Name: Ad Media

Confidential

11/16/15
TRIAL EXHIBIT
420

**IN WITNESS WHEREOF** the parties have executed this Amendment on the date set forth below, but effective as of the Amendment Effective Date.

YELLOW PAGES PHOTOS, INC.

By: _____

Title:
_President_____

Date: _July 18, 2007_____

IDEARC MEDIA CORP.

By: _____

Title: _DIRECTOR - INTRANET OPS___

Date: _7/26/07_____

Contract Number: VIS-2001-0045
Contract Name: Ad Media

Confidential

SUPER-053953

# EXHIBIT C

YPPI0040

FORM B10 (Official Form 10) (12/11)

| UNITED STATES BANKRUPTCY COURT DISTRICT OF DELAWARE | PROOF OF CLAIM |
|---|---|

| Name of Debtor:<br>**SuperMedia, LLC**<br>Jointly administered with SuperMedia, Inc., *et al* | Case Number:<br>**13-10545 (KG)**<br>Jointly administered | **FILED / RECEIVED**<br><br>MAY 3 0 2013<br><br>**EPIQ BANKRUPTCY SOLUTIONS, LLC**<br>COURT USE ONLY |
|---|---|---|

NOTE: *Do not use this form to make a claim for an administrative expense that arises after the bankruptcy filing. You may file a request for payment of an administrative expense according to 11 U.S.C. § 503.*

| Name of Creditor (The person or other entity to whom the debtor owes money or property):<br>**Yellow Pages Photos, Inc.** | |
|---|---|
| Name and address where notices should be sent:<br>Hugo S. deBeaubien, Esq.<br>101 E. Kennedy Blvd, Suite 2800<br>Tampa, FL 33602<br><br>Telephone number: 813-229-7600           email: bdebeaubien@slk-law.com | ☐ Check this box if this claim amends a previously filed claim.<br><br>**Court Claim Number:**_____<br>        *(if known)*<br><br>Filed on:_____ |
| Name and address where payment should be sent (if different from above):<br><br><br>Telephone number:                email: | ☐ Check this box if you are aware that anyone else has filed a proof of claim relating to this claim. Attach copy of statement giving particulars. |

**1. Amount of Claim as of Date Case Filed:**        At least $3,750,000.00 (see attached detail at Exhibit A)

If all or part of the claim is secured, complete item 4.

If all or part of the claim is entitled to priority, complete item 5.

☐ Check this box if claim includes interest or other charges in addition to the principal amount of claim. Attach a statement that itemizes interest or charges.

**2. Basis for Claim:**   Breach of license agreement and violation of federal copyright law
(see instruction #2)

| **3. Last four digits of any number by which creditor identifies debtor:**<br>__ __ __ __ | **3a. Debtor may have scheduled account as:**<br>(See instruction #3a) | **3b. Uniform Claim Identifier** (optional)<br>_ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _<br>(See instruction #3b) |
|---|---|---|

| **4. Secured Claim (See instruction #4)**<br>Check the appropriate box if the claim is secured by a lien on property or a right of setoff, attach required redacted documents, and provide the requested information.<br><br>Nature of property or right of setoff: ☐ Real Estate ☐ Motor Vehicle ☐ Other<br>Describe:<br><br>Value of Property: $_____<br><br>Annual Interest Rate:_____% ☐ Fixed or ☐ Variable<br>(when case was filed) | **Amount of arrearage and other charges, as of the time case filed, included in secured claim, if any:**<br>$_____<br>Basis for perfection:_____<br><br>**Amount of Secured Claim:** $_____<br><br>**Amount Unsecured:** $_____ |
|---|---|

**5. Amount of Claim Entitled to Priority under 11 U.S.C. §507(a).** If any part of the claim falls into one of the following categories, check the box specifying the priority and state the amount.

☐ Domestic support obligations under 11 U.S.C. §507(a)(1)(A) or (a)(1)(B).

☐ Wages, salaries, or commissions (up to $11,725*) earned within 180 days before the case was filed or the debtor's business ceased, whichever is earlier– 11 U.S.C. § 507(a)(4).

☐ Contributions to an employee benefit plan – 11 U.S.C. § 507(a)(5)

☐ Up to $2,600* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. § 507(a)(7).

☐ Taxes or penalties owed to governmental units – U.S.C. § 507(a)(8)

☐ Other – Specify applicable paragraph of 11 U.S.C. § 507 (a)(___)

**Amount entitled to priority:**

$_____

*Amounts are subject to adjustment on 4/1/13 and every 3 years thereafter with respect to cases commenced on or after the date of adj

**6. Credits.** The amount of all payments on this claim has been credited for the purpose of making this proof of claim. (See instruction

Filed: USBC - District of Delaware
SuperMedia Inc., Et Al.
13-10545 (KG)        0000000067



**YPPI0041**

7. Attached are **redacted** copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. If the claim is secured, box 4 has been completed, and **redacted** copies of documents providing evidence of perfection of a security interest are attached. *(See instruction 7, and the definition of "redacted".)*

DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain:

**8. Signature:** (See instruction #8)

Check the appropriate box.

☒ I am the creditor. ☐ I am the creditor's authorized agent. ☐ I am the trustee, or the debtor, or ☐ I am a guarantor, surety, endorser, or other codebtor.
(Attach copy of power of attorney, if any.) their authorized agent. (See Bankruptcy (See Bankruptcy Rule 3005.)
Rule 3004.)

I declare under penalty of perjury that the information provided in this claim is true and correct to the best of my knowledge, information, and reasonable belief.

Print Name:   William Trent Moore
Title:   President
Company:   Yellow Pages Photos, Inc.
Address and telephone number (if different from notice address above):
 8907 Alafia Way
 Riverview, FL 33569
 813-335-8947   trent.ypphotos@verizon.net
Telephone number:   email:

(Signature)   (Date) 5/29/13

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

**YPPI0042**

## EXHIBIT A

1.      Yellow Pages Photos, Inc. ("YPPI"), is a Florida corporation that is in the business of producing and licensing copyrighted photographic images.

2.      On November 12, 2001, YPPI entered into a Service Contractor Agreement ("Agreement") with Verizon Directories Corp. ("Verizon Directories") whereby YPPI agreed to provide photographic images to Verizon Directories for use consistent with the terms of a certain End-User License Agreement (the "License") appended to the Agreement granting Verizon Directories a non-exclusive, perpetual license to use the approximately 5,000 copyrighted photographic images provided by YPPI pursuant to the Agreement (the "Licensed Images"). A true and correct copy of the Agreement, the License, and the below-described Amendment Number One are attached hereto as **Composite Exhibit 1.**

3.      The License provides, in pertinent part, as follows:

This license agreement grants certain limited rights to the use of the photographs and images provided to Verizon Directories pursuant to this Agreement. Yellow Pages Photos, Inc. retains all ownership and title rights to the photographs and images.
Any and all rights not specifically granted in this agreement are expressly reserved by Yellow Pages Photos, Inc. Yellow Pages Photos, Inc. from this point forward is referred to as YPPI. Stock Photo Compact Disc from this point forward may also be referred to as CD. Download is defined as either copying or saving an image to another form of media other than the CD purchased. Photos hereafter refers to both the terms photograph and image.

Yellow Pages Photos, Inc. grants to Verizon Directories, and Verizon Directories accepts, a perpetual, limited, non-exclusive, fully paid license to use the photographs and images contained in any Compact Disc provided to Verizon Directories pursuant to this Agreement for the purposes contemplated by this Agreement. The photographs and images contained therein and all copyrights and other proprietary rights therein are owned by Yellow Pages Photos, Inc., are protected by United States Copyright Laws and International treaty provisions, and may not be used, reproduced, modified, distributed or transferred except as expressly provided by this Agreement. This license grants neither exclusive nor sole use of the photos, either in a specific region or to a single individual, advertiser, or publishing company. Other publishing companies, individuals or corporations (whether competing or not) within the same market may simultaneously obtain and publish these photos without regard to geographic region.

4.      The License authorized no more than six hundred (600) Verizon Directories employees to use the Licensed Images.

**YPPI0043**

5.     By its terms, the Agreement terminated not later than December 31, 2004, though both YPPI and Verizon Directories' obligations under the License remained in effect as of the Petition Date and thereafter.

6.     On July 16, 2007, YPPI and Idearc Media Corp. ("Idearc"), formerly known as Verizon Directories, entered into Amendment Number One to the Agreement, whereby, among other things, all references to Verizon Directories in the Agreement were replaced with reference to Idearc.

7.     Moreover, pursuant to Amendment One, the License was amended to include the following language: "Idearc may not transfer these images to other parties or individual[s] unless authorized by YPPI; provided however, that Idearc is authorized by this Agreement to use the photographs and images in advertising purchased by its customers for inclusion in Idearc's products. All users must be employees or contractors of Idearc."

8.     The foregoing amendment to the License permited only employees or contractors of Idearc to use the Licensed Images and precluded transfer of the Licensed Images to any third party absent express authorization by YPPI. It did not permit use of the Licensed Images by subcontractors not under Idearc's control. Similarly, Amendment One did not, in any way, modify the six hundred (600) user limitation on anyone provided access to the images. Finally, Amendment One reinforced the strict prohibition against Idearc sharing the images with anyone not an Idearc employee or subcontractor strictly under Idearc's control.

9.     On March 31, 2009, Idearc filed its voluntary petition under Chapter 11 of Title 11 of the United States Code in the United States Bankruptcy Court for the Northern District of Texas, thereby commencing Case No. 09-31836-bjh11 ("Idearc Bankruptcy").

10.     On September 22, 2009, an Order Confirming First Amended Joint Plan of Reorganization of Idearc, Inc., et al, Debtors (As Modified) was entered in the Idearc

**YPPI0044**

Bankruptcy, and thereafter Idearc began doing business as a reorganized debtor under the name SuperMedia, LLC.

11.     As successor to Idearc, SuperMedia, LLC, remained bound by the Agreement and the License with YPPI under all of the terms and provisions of the License and Amendment One, particularly with respect to restrictions on the use and/or transfer of the Licensed Images provided by YPPI.

**YPPI's Rights Preserved Through Confirmation**

12.     By agreement between SuperMedia and YPPI reached prior to entry of the Confirmation Order in resolution of YPPI's Objection to Confirmation in this case, the Confirmation Order provides that "[a]ll rights, privileges, defenses and obligations of the Debtors and YPPI with respect to the License, if any, shall be preserved and unaffected by the Confirmation of the Plan and the occurrence of the Effective Date."

**YPPI's Pre-Petition Claim**

13.     Upon information and belief, SuperMedia, LLC, utilized the Licensed Images prior to the Petition Date in a manner inconsistent with, and in clear violation of, the terms and provisions of the License and in violation of federal copyright law pursuant to 17 U.S.C. § 101 *et seq.*

14.     In particular, SuperMedia, LLC, exceeded the License's user restriction by allowing in excess of 600 users to utilize the Licensed Images.

15.     Further, without YPPI's approval, SuperMedia, LLC, violated the transfer restriction set forth in the License by transferring the Licensed Images to third parties, including but not limited to persons working for or with ASEC Group, LLC d/b/a ASEC International,

MPS Limited, Tata Consulting Services, and various entities doing business under the SuperMedia name.

16.     These transfers have resulted in further unauthorized reproductions and distributions of the Licensed Images in violation of both the License and applicable federal copyright law.

17.     In light of the above violations, YPPI is entitled to recover its actual damages and a disgorgement of profits or statutory damages provided under 17 U.S.C. § 101 *et seq.*

18.     Pursuant to 17 U.S.C. § 504, YPPI is entitled to not less than $750.00, and up to $30,000.00, for *each* copyrighted Licensed Image used, reproduced, or transferred by SuperMedia, LLC, in violation of federal copyright law, provided that such violation was not willful, in addition to any allowable attorneys' fees and costs. In the event of willful violations, YPPI is entitled to compensation in the amount of $150,000.00 for each copyrighted Licensed Image utilized, reproduced, or transferred in violation of federal copyright law.

19.     A total of approximately 5,000 Licensed Images were delivered to SuperMedia, LLC, or its predecessor under the Agreement and are thus subject to the use and transfer restrictions, among others, set forth in the License.

20.     If all of the Licensed Images were improperly transferred, reproduced, and/or utilized in violation of the License and federal copyright law just once prior to the Petition Date, YPPI's claim totals at least $3,750,000.00 (5,000 Licensed Images x $750.00 minimum statutory damage per violation = $3,750,000.00) and could even be much higher (5,000 Licensed Images x $150,000 maximum statutory damage per violation = $750,000,000.00); in the event of multiple violations, the statutory damages would be higher still. YPPI could also instead seek its actual damages and a disgorgement of profits pursuant to otherwise applicable law.

**YPPI0046**

# COMPOSITE EXHIBIT 1

YPPI0047

SERVICE AGREEMENT

BETWEEN

VERIZON DIRECTORIES CORP.

AND

YELLOW PAGE PHOTOS, INC

CONTRACT MANAGER: STEVEN W. GORDON

CONTRACT NUMBER: VIS2001-0045

Highly Confidential
YPPI-01263

YPPI0048

## TABLE OF CONTENTS

SECTION           PAGE

1. TERM ..................................................................................................1

2. SERVICES; CHANGE ORDERS ..........................................................1

3. END USER LICENSE AGREEMENT ....................................................1

4. PAYMENT FOR SERVICES .................................................................2

5. EXPENSES ..........................................................................................2

6. SPECIFICATION AND REQUIREMENTS; COMPLETION AND ACCEPTANCE ...2

7. REPRESENTATIONS AND WARRANTIES ...........................................2

8. INDEMNIFICATION ..............................................................................3

9. INDEPENDENT CONTRACTOR ..........................................................4

10. CONFIDENTIAL INFORMATION .......................................................4

11. INSURANCE ....................................................................................5

12. ASSIGNMENT ..................................................................................8

13. TERMINATION .................................................................................8

14. NOTICES .........................................................................................8

15. SEVERABILITY; CONFLICTING PROVISIONS ..................................9

16. ATTORNEYS' FEES .........................................................................9

17. GOVERNING LAW .........................................................................10

18. ENTIRE AGREEMENT ...................................................................10

i

Contract Number VIS2001 – 0045
Yellow Page Photos, Inc.

Highly Confidential
YPPI-01264

YPPI0049

19. WAIVER ......................................................................................10

EXHIBIT A: STATEMENT OF WORK
EXHIBIT B. PAYMENT SECTION
EXHIBIT C  END USER LICENSE AGREEMENT

Contract Number VIS2001 – 0045
Yellow Page Photos, Inc.

Highly Confidential
YPPI-01265

**YPPI0050**

## SERVICE CONTRACTOR AGREEMENT

THIS SERVICE CONTRACTOR AGREEMENT (this "Agreement") is made and entered into effective as of November 12, 2001 (the "Effective Date"), by and between Verizon Directories Corp. ("Verizon Directories"), a Delaware corporation, whose principal offices are located at Verizon Place, West Airfield Drive, P.O. Box 619810, DFW Airport, Texas 75261m on behalf of itself and all of its affiliates, and Yellow Pages Photos, Inc. ("Contractor"), a Florida corporation, whose principal offices are located at P.O. Box 2340, Riverview, FL 33568.

In consideration of the mutual covenants and obligations set forth below, the parties agree as follows:

1.  **Term.**

    The term of this Agreement shall commence on the Effective Date, and shall continue until the date upon which the Services (as defined below) are completed, or December 31, 2004, whichever occurs first, unless this Agreement is sooner terminated as provided below.

2.  **Services; Change Orders.**

    Contractor shall perform the services described in the Statement of Work attached hereto as <u>Exhibit A</u>, and such other related services as Verizon Directories may reasonably request in writing (collectively, the "Services"). Contractor acknowledges and agrees that Verizon Directories may in it's sole discretion add, delete or change the Services at any time upon written notice (a "Change Order") to Contractor, and in such event, Contractor shall perform the Services in accordance with the Change Order; provided, however, that in the event any such Change Order increases or decreases the amount or character of, or the time necessary to perform the Services, then Contractor's compensation payable hereunder will be equitably adjusted in accordance with the rates and charges set forth herein. This is a non – exclusive agreement and Verizon Directories reserves the right to employ other contractors from time to time, as it may desire to perform similar services or use its own employees to perform such services.

3.  **End User License Agreement.**

    Contractor grants and Verizon Directories' acccepts the terms of the License Agreement attached hereto as <u>Exhibit C.</u>

B-1

Highly Confidential
YPPI-01266

YPPI0051

4. **Payment for Services.**

Verizon Directories shall pay Contractor for Services specified in the Payment Section hereto as <u>Exhibit B</u>, which amount shall be due and payable thirty (30) days following the date of Verizon Directories' receipt of Contractor's properly submitted invoice in such amount, or thirty (30) days following the date of the completion and acceptance of the Services, whichever occurs last. Notwithstanding anything contained herein to the contrary, the terms and conditions of this Agreement shall prevail and control over any terms and conditions set forth in any invoice(s) submitted by Contractor under this Agreement.

5. **Expenses.**

Unless otherwise agreed and signed by the parties in writing, Verizon Directories shall not be liable to Contractor for any expenses incurred by Contractor in performing its obligations under this Agreement.

6. **Specification and Requirements; Completion and Acceptance.**

Contractor shall perform the Services in accordance with such reasonable instructions, requests, specifications and requirements as Verizon Directories may specify from time to time. Any Services not performed in accordance with the foregoing shall be corrected by Contractor at no cost to Verizon Directories. The Services shall be deemed completed and accepted only upon Verizon Directories' written certification that the Services have been performed to its satisfaction, as determined by Verizon Directories in its reasonable discretion.

7. **Representations and Warranties.**

In addition to the representations and warranties set forth in any proposal or other writing previously provided by Contractor to Verizon Directories relating to the Services to be performed hereunder (which are hereby incorporated by reference for all purposes), Contractor further represents and warrants to Verizon Directories, its successors and assigns, that:

a. It has the right and authority to enter into this Agreement, and to perform the Services, without the consent or authorization of any third party.

b. It will not be in violation of any agreement with any third party as a result of its execution of this Agreement, or its performance of the Services hereunder.



B-2

Contract Number VIS2001-0045
Yellow Pages Photos, Inc.

**Highly Confidential**
YPPI-01267

**YPPI0052**

c.     It will comply with any and all applicable federal, state and local statutes, regulations, ordinances or laws of any kind, in its performance of the Services.

d.     It will perform the Services in a good, professional and workmanlike manner, and in accordance with the highest applicable professional standards, and will not employ, assign or otherwise use any person in its performance of the Services, who is not fully trained, knowledgeable and experienced in the performance of such Services.

e.     It will not take any action, or engage in any conduct, if the intended or probable effect of its doing so will be to deprive Verizon Directories of any of the material benefits which it may reasonably expect to receive or obtain as a result of this Agreement.

f.     It will not infringe upon the intellectual property rights of any third party in the performance of the Services hereunder, and will not incorporate any modules, code, or materials of any kind into the Works (as defined below) produced hereunder from pre-existing commercial off-the-shelf computer programs, proprietary computer programs, audio programs, visual programs, audiovisual programs, proprietary materials, photographs, images or any other intellectual property owned or copyrighted by Contractor or any third party. In the event that Contractor incorporates any modules, code or materials owned or copyrighted by Contractor into the Works produced for Verizon Directories hereunder, then Contractor shall and does hereby grant Verizon Directories the perpetual, irrevocable and royalty-free right and license to utilize any such modules, code, photographs, images or materials in such fashion, and for any and all purposes which Verizon Directories may desire, from time to time.

g.     Except as otherwise disclosed herein, the representations and warranties made by Contractor in any proposals or other writings previously delivered by Contractor to Verizon Directories were true and correct when made, and remain true and correct as of the date of this Agreement.

h.     It has not failed to disclose any facts or information, the existence of which would be of material relevance to a reasonable business person in its consideration of the matters which are the subject of this Agreement.

8.     <u>Indemnification.</u>

The parties shall indemnify, defend and hold each other, and their respective successors, assigns, and affiliates harmless from and against any losses, liabilities, claims, actions, and expenses, including reasonable attorneys' fees, arising out of:

B-3

Highly Confidential
YPPI-01268

YPPI0053

a.   A breach by the indemnifying party of any of its material obligations under this Agreement, or of any of the warranties set forth above;

b.   A determination by either party that any of the other party's representations set forth above (or otherwise incorporated herein by reference), were false or materially misleading when made, or as of the Effective Date; or

c.   Negligence, gross negligence or willful misconduct by the indemnifying party in or arising from the performance of its obligations under this Agreement.

9.   **Independent Contractor.**

a.   Contractor is an independent contractor, and not an agent of Verizon Directories. As such, Contractor acknowledges and agrees that it is not authorized to waive any right or to incur, assume or create any debt, obligation or contract of any kind in the name of or on behalf of Verizon Directories. Nothing herein shall be construed to create between the parties any partnership, joint venture, employment relationship, franchise, or agency.

b.   As an independent contractor, Contractor acknowledges that it is solely responsible for complying with applicable federal and state laws and, specifically, for payment of all taxes or contributions which may be payable based upon Contractor's fee including, but not limited to, federal and state income taxes, social security taxes, unemployment compensation taxes, and any other applicable taxes or business license fees. Contractor further agrees to provide Verizon Directories with evidence of payment of any and all such taxes and fees upon Verizon Directories' written request made in connection with any state or federal audit in which Contractor's status as an independent contractor is questioned or disputed. Contractor specifically acknowledges that it is not entitled to participate in Verizon Directories' benefit plans.

10.  **Confidential Information.**

a.   Contractor acknowledges that Verizon Directories owns or has a proprietary interest in certain information which is of a special, unique or non-public nature, including, but not limited to, trade secrets, information relating to its customers, business plans, operations and affiliations, marketing information, personnel matters, computer software and other proprietary materials (collectively "Confidential Information"). Contractor agrees that Verizon Directories has disclosed or may disclose to Contractor Confidential Information necessary for its performance of the Services under this Agreement.

B-4

Contract Number VIS2001-0045
Yellow Pages Photos, Inc.

**Highly Confidential**
YPPI-01269

**YPPI0054**

b. Contractor shall maintain in confidence all Confidential Information, and shall not disclose Confidential Information to persons not authorized in writing by Verizon Directories to receive Confidential Information, except pursuant to a valid court order or as required by law, and shall not use Confidential Information except for the purposes of performance under this Agreement.

c. Contractor shall further take reasonable steps to prevent unauthorized parties from obtaining Confidential Information in Contractor's possession. In case of an inadvertent disclosure of Confidential Information, Contractor shall immediately notify Verizon Directories, and shall take such further necessary steps as Verizon Directories may reasonably request to prevent further inadvertent disclosure.

d. Contractor shall not make or permit to be made copies, abstracts, or summaries of Verizon Directories' reports, papers or documents, except in compliance with Contractor's obligations under this Agreement, and for the sole use of Verizon Directories. Contractor shall disclose Confidential Information only to those of its employees who need to know such information in order to aid in the performance of the Services hereunder. Such employees shall be notified of the proprietary nature of Confidential Information and their duty to maintain its confidentiality. Contractor may not disclose Confidential Information to any party other than those of its employees mentioned above, without Verizon Directories' prior written consent.

e. Notwithstanding anything to the contrary set forth above, "Confidential Information" shall not include any information which:

   i. Is or becomes available to the public through no action on the part of Contractor;

   ii. Is received from a third party without restriction as to disclosure, and without breach of this Agreement; or

   iii. Was lawfully in Contractor's possession, without restriction as to disclosure, prior to Verizon Directories' disclosure of the same.

11. **Insurance.**
    a. Contractor agrees to maintain in full force and affect during the term hereof the following minimum insurance coverage with insurance companies approved by Verizon Directories:

B-5

**Highly Confidential
YPPI-01270**

YPPI0055

i. Workers' Compensation and Occupational Disease covering Contractor's full liability under the Statutory Workers' Compensation Laws for the state in which the services are performed.

ii. Employer's Liability Insurance in the minimum amount of $100,000 per occurrence and $200,000 in the aggregate.

iii. General Liability Insurance – Broad Form, including, but not limited to, Owner's Protective Liability, Blanket Contractual Liability, and Products Liability/Completed Operations, in the minimum amounts of $1,000,000 per occurrence and $1,000,000 general aggregate for property damage and any accident resulting in bodily injury or the death of one or more persons, and the consequential damages arising therefrom.

iv. If the use of any motor vehicle is required, comprehensive Motor Vehicle Liability Insurance including, but not limited to, owned, non-owned, leased, and hired vehicles in the minimum amounts of $1,000,000 combined single limit per occurrence for Property Damage and any accident resulting in bodily injury or the death of one or more persons, and the consequential damages arising therefrom.

b. Any deductibles, self-insured retentions (SIR), loss limits, retentions, etc. (collectively, "Retentions") must be disclosed on a certificate of insurance provided to Verizon Directories, and are subject to acceptance by Verizon Directories, such acceptance not to be unreasonably withheld. All Retentions shall be the responsibility of the Contractor.

c. Verizon Directories (including any affiliated and/or managed entity), its directors, officers and employees shall be named as additional insureds under all General Liability, Automobile Liability and Umbrella/Excess Liability Policies obtained by Contractor. Such additional insured endorsement shall cover Verizon Directories for all claims arising out of work or operations performed by or on behalf of Contractor, shall provide coverage regardless of whether a claim arises out of alleged negligence of Verizon Directories, shall not exclude liability for negligence of Verizon Directories, and shall provide that such additional insurance is primary insurance and shall not contribute with any insurance or self-insurance that Verizon Directories has procured to protect itself. All of the insurance afforded by the Contractor shall be exhausted before Verizon Directories becomes involved, including Verizon Directories' coverage as an additional insured under the Contractor's Umbrella/Excess Liability insurance policy(ies). Verizon Directories' insurance coverages shall be excess over any insurance afforded by the Contractor.

Contract Number VIS2001- 0045
Yellow Pages Photos, Inc.

Highly Confidential
YPPI-01271

YPPI0056

d.  Contractor waives and will require all of its insurers to waive all rights of recovery against Verizon Directories (including any affiliated and/or managed entity), its directors, officers and employees, agents or assigns, whether in contract, tort (including negligence and strict liability) or otherwise.

e.  Before the commencement of any service provided under this Agreement, Contractor agrees to submit to Verizon Directories a certificate of insurance ACORD Form 25-S (1/95), or latest edition, such certificate to be signed by a duly authorized officer or agent of the Insurer, certifying that the minimum insurance coverages and conditions set forth in (a) and (b) above are in effect, and that Verizon Directories will receive at least thirty (30) days notice of policy cancellation or non-renewal. At least thirty (30) days prior to the expiration of the policy, Verizon Directories must be furnished satisfactory evidence that such policy has been renewed or replaced by another policy with like coverages.

f.  At Verizon Directories' request, Contractor shall provide copies of the insurance provisions or endorsements as evidence that the required insurance has been procured, and that Verizon Directories has been named as an additional insured, prior to commencement of any service. In no event shall permitting Contractor to begin or complete work, or payment to Contractor for work performed, or acceptance of any work, be construed as a waiver of the right of Verizon Directories to assert a claim against Contractor for breach of the obligations established in this Section 11, Insurance.

g.  Contractor shall require its subcontractors to comply with each of the provisions of this insurance section. This includes, but is not limited to, maintaining the minimum insurance coverages and limits, naming Verizon Directories (including any affiliated and/or managed entity) as an additional insured under all liability insurance policies, and waiving all rights of recovery against Verizon Directories (including any affiliated and/or managed entity), its directors, officers and employees, agents or assigns, whether in contract, tort (including negligence and strict liability) or otherwise. Prior to commencement of any work on the project, Contractor shall require and maintain certificates of insurance from each subcontractor evidencing the required coverages. At Verizon Directories' request, Contractor shall supply to Verizon Directories copies of such certificates of insurance or require the subcontractors to provide insurance provisions or endorsements as evidence that the required insurance has been procured.

B-7

Contract Number VIS2001-0045
Yellow Pages Photos, Inc.

Highly Confidential
YPPI-01273

YPPI0057

12. Assignment.

Contractor shall not assign its rights nor delegate its duties under this Agreement or otherwise contract, subcontract, or delegate the performance of its obligations hereunder to any third party, without Verizon Directories' prior written consent in each instance. Any attempted assignment without such prior consent shall be voidable at the sole and absolute discretion of Verizon Directories.

13. Termination.

a.  Verizon Directories may terminate this Agreement immediately upon written notice to Contractor, and in such event, Contractor shall be entitled to an additional six thousand dollars ($6,000) for each CD that has already been delivered to Verizon.

b.  Either party may terminate this Agreement immediately and without further notice:

   i.  If the other party makes an assignment for the benefit of creditors;

   ii.  If the other party files a voluntary petition for relief under Chapter 7, Chapter 11 or Chapter 13 of the United States Bankruptcy Code or any analogous statute of any country; or

   iii.  If the other party is adjudged as bankrupt, and such condition is not remedied within twenty (20) days after notice of bankruptcy has been given to the remaining party.

c.  Immediately upon the termination of this Agreement for any reason, Contractor shall and does hereby agree to provide and deliver to Verizon Directories all information, materials and Works of any kind produced or generated by Contractor, its employees, and subcontractors, if any, in the performance of Services under this Agreement.

14. Notices.

All notices, requests, demands and other communications relating to this Agreement shall be in writing and deemed to be given when delivered personally or three (3) days after being mailed by certified mail, postage prepaid, return receipt requested, to the parties, their successors in interest or their assigns to the addresses set forth below (or at such other addresses as shall be given in writing by either party to the other).

Highly Confidential
YPPI-01272

YPPI0058

If to Verizon Directories:

Verizon Directories Corporation
Verizon Place, West Airfield Drive
P.O. Box 619810
DFW Airport, Texas 75261-9810
Attn:  Contract Management, Steven Gordon

with a copy to:

Vice President – General Counsel
Verizon Directories Corporation
Verizon Place, West Airfield Drive
P.O. Box 619810
DFW Airport, Texas 75261-9810

If to Contractor:

Yellow Page Photos, Inc.
P.O. Box 2340
Riverview, FL 33568
Attention: Trent Moore

15.     **Severability.**

If any provision of this Agreement is held by a court or regulatory agency of competent jurisdiction to be unenforceable, the rest of the Agreement shall remain in full force and effect and shall not be affected unless removal of that provision results, in the good faith opinion of either party, in a material change to this Agreement. If a material change as described in this paragraph occurs as a result of a action by a court or regulatory agency, the Parties shall negotiate, in good faith, replacement language. If replacement language cannot be agreed upon within a reasonable period, either Party may terminate this Agreement without penalty or liability for such termination upon written notice to the other Party.

16.     **Attorneys' Fees.**

Should either party commence an action against the other for failure to abide by any of the terms of this Agreement, the prevailing party in such action shall be entitled to recover all costs, including reasonable attorneys' fees associated with the action. Such relief is in addition to any other relief which may be awarded to the prevailing party.

Highly Confidential
YPPI-01274

YPPI0059

17. <u>Governing Law</u>.

All questions concerning the validity, interpretation or performance of any of the terms or provisions of this Agreement, or of any rights or obligations of the parties hereof, shall be governed by and resolved in accordance with the laws of the State of Texas. Exclusive venue for any such suit, action, or proceeding shall be in Dallas, Texas.

18. <u>Entire Agreement</u>.

This Agreement constitutes the entire agreement between the parties with respect to the subject matter hereof and supersedes any and all prior agreements with respect thereto. This Agreement may not be modified by any prior or contemporaneous agreement. No amendment to this Agreement shall be binding, unless in writing and signed by authorized representatives of the parties to this Agreement.

19. <u>Waiver</u>.

No waiver of any breach of any agreement or provision herein contained shall be deemed a waiver of any preceding or succeeding breach of the same or any other agreement or provision contained herein. No extension of time for performance of any obligations or acts shall be deemed a preceding or succeding extension of the time for performance of the same or any other obligation or act.

IN WITNESS WHEREOF, the parties have executed this Agreement effective as of the date first written above.

| VERIZON DIRECTORIES CORP.: | YELLOW PAGE PHOTOS, INC. |
|---|---|
| By: _George A. Keefe_ | By: _William T. Moore_ |
| Printed Name: _George A. Keefe_ | Printed Name: _William T. Moore_ |
| Title: _Group Vice President Publishing_ | Title: _General Manager_ |
| Date: _11/16/01_ | Date: _____ |

B-10

Highly Confidential
YPPI-01275

YPPI0060

# EXHIBIT A

## STATEMENT OF WORK

This Statement of Work outlines the tasks required for Yellow Page Photo's, Inc. (Contractor) to provide product for Verizon Directories Corporation (Customer). This Statement of Work is incorporated in the Agreement dated November 8, 2001 (the "Agreement").

A. Contractor shall deliver to Verizon a total of 100 usable title CD's with photo's agreed upon

B. Each CD shall consist of 50 professional photographic images

C. Contractor shall provide between 24 and 30 CD's per year.

D. Contractor shall provide unlimited additional copies of CD's at no additional cost to Verizon Directories

E. Customer shall have influence of which future title will be created on CD's

Highly Confidential
YPPI-01276

# EXHIBIT B

## YPPI DELIVERY / FEE SCHEDULE

### BILLINGS WILL OCCUR ON A QUARTERLY BASIS

**2002**

| DELIVERY | # CD's | COST |
|---|---|---|
| JAN | 27 | 178,200 |
| FEB | 2 | 13,200 |
| MAR | 2 | 13,200 |
| | QTR BILLING | 204,600 |
| APR | 2 | 13,200 |
| MAY | 2 | 13,200 |
| JUN | 2 | 13,200 |
| | QTR BILLING | 39,600 |
| JUL | 2 | 13,200 |
| AUG | 2 | 13,200 |
| SEP | 2 | 13,200 |
| | QTR BILLING | 39,600 |
| OCT | 2 | 13,200 |
| NOV | 6 | 39,600 |
| DEC | 4 | 26,400 |
| | QTR BILLING | 79,200 |
| **TOTAL COST** | | **$363,000** |

**2003**

| DELIVERY | # CD's | COST |
|---|---|---|
| JAN | 5 | 33,000 |
| FEB | 2 | 13,200 |
| MAR | 2 | 13,200 |
| | QTR BILLING | 59,400 |
| APR | 5 | 33,000 |
| MAY | 2 | 13,200 |
| JUN | 2 | 13,200 |
| | QTR BILLING | 59,400 |
| JUL | 2 | 13,200 |
| AUG | 2 | 13,200 |
| SEP | 2 | 13,200 |
| | QTR BILLING | 39,600 |
| OCT | 2 | 13,200 |
| NOV | 2 | 13,200 |
| DEC | 2 | 13,200 |
| | QTR BILLING | 39,600 |
| **TOTAL COST** | | **$198,000** |

**2004**

| DELIVERY | # CD's | COST |
|---|---|---|
| JAN | 5 | 33,000 |
| FEB | 2 | 13,200 |
| MAR | 2 | 13,200 |
| | QTR BILLING | 59,400 |
| APR | 2 | 13,200 |
| MAY | 2 | 13,200 |
| JUN | 2 | 13,200 |
| | QTR BILLING | 39,600 |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| **TOTAL COST** | | **$99,000** |

| TOTAL |
|---|
| $660,000 |

**Highly Confidential**
**YPPI-01277**

EXHIBIT C


YELLOW PAGES PHOTOS, INC.
END USER LICENSE AGREEMENT
FOR VERIZON DIRECTORIES.
UNLIMITED USER
UNLIMITED ACCESS
SITE LICENSE


This license agreement grants certain limited rights to the use of the photographs and images
provided to Verizon Directories pursuant to this Agreement. Yellow Pages Photos, Inc retains all
ownership and title rights to the photographs and images.
Any and all rights not specifically granted in this agreement are expressly reserved by Yellow
Pages Photos, Inc. Yellow Pages Photos, Inc. from this point forward is referred to as YPPI.
Stock Photo Compact Disc from this point forward may also be referred to as CD.
Download is defined as either copying or saving an image to another form of media other than the
CD purchased.
Photos hereafter refers to both the terms photograph and image.

Yellow Pages Photos, Inc grants to Verizon Directories, and Verizon Directories accepts, a
perpetual, limited, non-exclusive, fully paid license to use the photographs and images cotained in
any Compact Disc provided to Verizon Directories pursuant to this Agreement for the purposes
contemplated by this Agreement. The photographs and images contained therein and all
copyrights and other proprietary rights therein are owned by Yellow Pages Photos, Inc, are
protected by United States Copyright Laws and International treaty Provisions, and may not be
used, reproduced, modified, distributed or transferred except as expressly provided by this
Agreement. This license grants neither exclusive nor sole use of the photos, either in a specific
region or to a single individual, advertiser, or publishing company. Other publishing companies,
individuals or corporations (whether competing or not) within the same market may
simultaneously obtain and publish these photos without regard to geographic region.

USE:
Yellow Pages Photos Inc grants license to use such photographs and images for use in print,
electronic or other medium that may be used by Verizon Directories for publication of directories
without limit, ROYALTY FREE. The photographs and images may be cropped, cut, altered or
manipulated from original form as necessary to meet publishing needs.

YPPI licenses such photographs and images to Verizon Directoires for the uses permitted under
this Agreement upon the condition that it accepts all of the terms and conditions contained in the
Agreement, including without limitation this Customer License ("Customer License). Please read
all of the conditions set forth with great care, as once the package is opened this indicates your
acceptance of the terms and conditions set forth. If you do not agree with these conditions YPPI
does not grant license and you should return the unopened packages within 10 days for a full
refund.

**Highly Confidential**
**YPPI-01278**

NUMBER OF USERS LICENSED:
This license is a "600 USER, VERIZON EMPLOYEE ONLY UNLIMITED ACCESS SITE LICENSE". This license specifically grants authority to allow multiple user access. The licensee may load these images on whatever system is deemed appropriate to allow unfettered access to as many licensed users as necessary. This license further allows "VERIZON DIRECTORIES" authority to upload all information on a network server of its own design to allow multiple site access as well. VERIZON DIRECTORIES may not transfer these images to other parties or individuals unless authorized by YPPI; provided however, that Verizon Directories is authorized by the Customer License herein granted to utilize these photographs and images in the advertising purchased by its customers for inclusion in Verizon Directories' print and electronic directory products and any other medium which Verizon Directories may utilize to publish directories during the term of this Agreement. All users must be Employees of VERIZON DIRECTORIES

GEOGRAPHIC BOUNDARY:
As this is an unlimited user, unlimited access license, Geographic boundary with respect to transfer of information or server location is not limited.

LIMITS OF LIABILITY:
Because YPPI is directly involved in neither the printing nor publishing of the photos, and each printer or publisher utilizes its own specifications and technologies for print, YPPI is not responsible or liable for print errors during or after publication. YPPI is not responsible or liable for damages or costs incurred as a result of loss of time, loss of data, loss of anticipated profits or benefits resulting from the use of this product, nor for damages or costs incurred in obtaining substitute products. In connection with the use of this product YPPI's liability to the purchaser arising out of the use or in connection with the use of this product whether in contract, tort or otherwise shall not exceed the purchase price or license fee paid for the photo in question, except as provided in the following Sections of the Agreement: (i) Section 7 Infringement and (ii) Section 10 Confidential Information. YPPI shall be responsible for identified damaged photographs on CD's and shall replace each CD at no addition cost to Verizon Directories.

Highly Confidential
YPPI-01279

**AMENDMENT NUMBER ONE**
**TO**
**AGREEMENT NUMBER VIS-2001-0045**

This Amendment Number One ("Amendment") is made and entered into as of July 16, 2007 (the "Amendment Effective Date"), by and between Idearc Media Corp., f/k/a Verizon Directories Corp. ("Idearc"), a Delaware corporation, whose principal offices are located at 2200 West Airfield Drive, P.O. Box 619810, DFW Airport, Texas 75261, on behalf of itself and all of its affiliates, and Yellow Pages Photos, Inc. ("YPPI"), a Florida corporation, whose principal offices are located at 8907 Alafia Way Riverview, Florida 33578.

WHEREAS, Idearc and YPPI entered into that certain Service Contractor Agreement effective as of November 12, 2001 (together with any prior amendments hereinafter referred to as the "Agreement"); and

WHEREAS, Idearc and YPPI now desire to amend the terms of the Agreement in the manner prescribed below.

NOW, THEREFORE, Idearc and YPPI agree as follows:

1.    All references to "Verizon Directories" in the Agreement are hereby replaced with "Idearc".

2.    All references to "Contractor" in the Agreement are hereby replaced with "YPPI".

3.    The first sentence of the USE Section Exhibit C is hereby deleted in its entirety and replaced by the following:

   "YPPI grants Idearc a license to use such photographs and images in
   print, electronic, or any other media, without limit, for use in print and CD-ROM
   directories, Internet-based information services owned and operated by Idearc or which
   are otherwise powered by or obtain their content from any such Idearc-based
   information services, magazines and other publications, direct mail and other
   advertising-based products, and advertising and promotional materials, royalty free."

4.    The fourth and fifth sentences of the NUMBER OF USERS LICENSED Section of Exhibit C are hereby deleted in its entirety and replaced with the following:

   "Idearc may not transfer these images to other parties or individual unless authorized by
   YPPI; provided however, that Idearc is authorized by this Agreement to use the
   photographs and images in advertising purchased by its customers for inclusion in
   Idearc's products. All users must be employees or contractors of Idearc."

5.    Except as otherwise amended herein, the parties ratify and affirm their respective obligations under the Agreement.

1

Contract Number: VIS-2001-0045                                             Confidential
Contract Name: Ad Media

YPPI0065

**IN WITNESS WHEREOF** the parties have executed this Amendment on the date set forth below, but effective as of the Amendment Effective Date.

YELLOW PAGES PHOTOS, INC.

By: _____

Title:
_____President_____

Date: _July 18, 2007_

IDEARC MEDIA CORP.

By: _____

Title: _DIRECTOR - INTRANET OPS_

Date: _7/26/07_

Contract Number: VIS-2001-0045
Contract Name: Ad Media

Confidential

YPPI0066

# SHUMAKER.

Shumaker, Loop & Kendrick, LLP

Hugo S. "Brad" deBeaubien
813.221.7425
bdebeaubien@slk-law.com

Bank of America Plaza          813.229.7600
101 East Kennedy Boulevard   813.229.1660 fax
Suite 2800
Tampa, Florida 33602

www.slk-law.com

May 29, 2013

*Via Fedex*

SuperMedia Inc Claims Processing Center
c/o Epiq Bankruptcy Solutions, LLC
757 Third Avenue, 3rd Floor
New York, NY 10017

Re:    *In re SuperMedia, LLC,* jointly administered with *In re SuperMedia, Inc.,* Case
       No. 13-10545-KG, United States Bankruptcy Court, District of Delaware

To whom it may concern:

    Please find enclosed Yellow Pages's Photos, Inc.'s, proof of claim in the above-referenced case.

    Very truly yours,

    Hugo S. deBeaubien

HSB/db
Enclosure

SLK_TAM:#1614641v1

**YPPI0067**

From: (813) 221-7425          Origin ID: KYOA
Brad deBeaubien, Esq.
Shumaker, Loop & Kendrick, LLP
101 E. Kennedy Boulevard
Suite 2800
Tampa, FL 33602

**FedEx**
Express

**E**

J13111302120326

Ship Date: 29MAY13
ActWgt: 1.0 LB
CAD: 101387084/INET3370

Delivery Address Bar Code

Ref # Y03590-144053
Invoice #
PO #
Dept #

SHIP TO: (646) 282-2500          BILL SENDER

**SuperMedia, Inc. Claims Processing**
**C/O Epiq Bankruptcy Solutions, LLC**
**757 Third Avenue**
**3rd Floor**
**NEW YORK, NY 10017**

RECEIVED

MAY 3 0 2013

EPIQ SYSTEMS

THU - 30 MAY 10:30A
**PRIORITY OVERNIGHT**

TRK# 7998 6691 9301
0201

**10017**
NY-US

**XA OGSA**

**EWR**

518G1D777/93AB

**After printing this label:**
1. Use the 'Print' button on this page to print your label to your laser or inkjet printer.
2. Fold the printed page along the horizontal line.
3. Place label in shipping pouch and affix it to your shipment so that the barcode portion of the label can be read and scanned.

**Warning**: Use only the printed original label for shipping. Using a photocopy of this label for shipping purposes is fraudulent and could result in additional billing charges, along with the cancellation of your FedEx account number.
Use of this system constitutes your agreement to the service conditions in the current FedEx Service Guide, available on fedex.com.FedEx will not be responsible for any claim in excess of $100 per package, whether the result of loss, damage, delay, non-delivery,misdelivery,or misinformation, unless you declare a higher value, pay an additional charge, document your actual loss and file a timely claim.Limitations found in the current FedEx Service Guide apply. Your right to recover from FedEx for any loss, including intrinsic value of the package, loss of sales, income interest, profit, attorney's fees, costs, and other forms of damage whether direct, incidental,consequential, or special is limited to the greater of $100 or the authorized declared value. Recovery cannot exceed actual documented loss.Maximum for items of extraordinary value is $1,000, e.g. jewelry, precious metals, negotiable instruments and other items listed in our ServiceGuide. Written claims must be filed within strict time limits, see current FedEx Service Guide.

**YPPI0068**

# EXHIBIT D

YPPI0069

# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

**YELLOW PAGES PHOTOS, INC.,**

     **Plaintiff,**

**vs.**                                **CASE NO.:**

**DEX MEDIA, INC.,**

     **Defendant.**

_____/

## COMPLAINT

Plaintiff, Yellow Pages Photos, Inc. ("Plaintiff"), by and through its undersigned attorneys, sues Defendant, Dex Media, Inc. ("Defendant"), and as its complaint states as follows:

### Nature of the Case

1.    This is a civil action to remedy the wrongful actions of Defendant, Dex Media, Inc. Plaintiff is the owner of a library of copyrighted photographic images that telephone directory publishers use to create, produce, and publish display and other advertisements. Plaintiff's licensees publish 50-60% of the telephone directories in the United States today. Defendant, who is not and has never been one of Plaintiff's licensees, has stolen and is profiting from the use of Plaintiff's copyrighted images. Defendant has used and is continuing to use Plaintiff's copyrighted photographic images in thousands of advertisements, resulting in millions and millions of dollars of revenue, without license or

**YPPI0070**

permission from Plaintiff, in violation of the United States Copyright Act, 17 U.S.C. § 101 *et seq.*

## Parties

2.     Plaintiff Yellow Pages Photos, Inc. is a corporation organized and existing under the laws of the State of Florida, with its principal place of business in Riverview, Florida.

3.     Defendant Dex Media, Inc. is a Delaware corporation organized and existing under the laws of the State of Delaware, with its principal place of business in Dallas, Texas.

## Personal Jurisdiction

4.     Defendant publishes print and online telephone directories, including directories featuring advertisements containing Plaintiff's images, that have been distributed in the State of Florida and online directories that are targeted to the State of Florida.

5.     Defendant has committed acts of copyright infringement, as described herein, in the State of Florida and/or outside the State of Florida, causing injury to Plaintiff within the State of Florida.

6.     By virtue of Defendant's transaction of business in the State of Florida and commission of wrongful acts and causation of damages to Plaintiff, as described herein, Defendant has subjected itself to personal jurisdiction in the State of Florida.

## Venue

7.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(1) because Defendant, having subjected itself to personal jurisdiction in this judicial district, resides in this judicial district (see 28 U.S.C. § 1391(c)), and pursuant to 28 U.S.C. § 1391(b)(2)

2

YPPI0071

because a substantial part of the events or omissions giving rise to the claims asserted in this Complaint occurred in this judicial district.

### Subject Matter Jurisdiction

8.     The claims of copyright infringement asserted in this Complaint arise under the provisions the United States Copyright Act, 17 U.S.C. § 101 *et seq.*  This Court has original jurisdiction over these claims pursuant to 28 U.S.C. § 1338(a).

9.     This Court also has diversity jurisdiction over the claims asserted in this Complaint pursuant to 28 U.S.C. § 1332(a)(1) because Plaintiff and Defendant are citizens of different states and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

### Factual Allegations

10.     AdMedia Systems, Inc. ("AdMedia") is a Florida corporation under common ownership with Plaintiff, which was formerly named and did business as "Yellow Pages Photos, Inc."  Both AdMedia and Plaintiff are owned by W. Trent Moore, who is the sole stockholder, officer, and director of both companies.

11.     AdMedia was created by Mr. Moore on March 1, 2000 to produce, own, and license to customers copyrighted stock photographic images for use in creating, producing, and publishing advertisements.  Consistent with Mr. Moore's strategy in 2000 of establishing a niche business licensing to the yellow pages industry, AdMedia was originally named "Yellow Pages Photos, Inc."

3

YPPI0072

### AdMedia's Agreement with Verizon Directories

12.    By the summer of 2000, AdMedia had begun building its library of images and Mr. Moore had begun trying to sell licenses to use the images to potential customers. One of the companies Mr. Moore targeted and was trying to sell images in the summer of 2000 was named Verizon Directories Corp. ("Verizon Directories"), then the publisher of Verizon telephone directories.

13.    Verizon Directories expressed interest at the time in AdMedia's images, which commenced a lengthy vetting process during which Mr. Moore, on numerous occasions, met with and made presentations to employees of Verizon Directories and provided Verizon Directories with images to review.

14.    Over the next year and a half, AdMedia furnished Verizon Directories with approximately 1,000 images to review and consider in the sales process.

15.    Finally, on or about November 12, 2001, AdMedia and Verizon Directories contracted with each other, whereby AdMedia agreed to, by December 31, 2004, produce and provide to Verizon Directories a total of 5,000 stock photographic images (including the approximately 1,000 already provided), in collections of 50 images on 100 CDs, at a total cost of $660,000.    The agreement between AdMedia and Verizon Directories was memorialized in a Service Agreement dated effective November 12, 2001, a true and correct copy of which is attached hereto as Exhibit "1" (the "Service Agreement").  An agreement governing the terms of use for the images, titled Yellow Pages Photos, Inc. End User License Agreement for Verizon Directories Unlimited User Unlimited Access Site License, was

4

YPPI0073

attached as an exhibit to and made a part of the Service Agreement, namely Exhibit C (the

"License").

16.     Notably, the License contained the following provision:

> NUMBER OF USERS LICENSED:
> This license is a "600 USER, VERIZON EMPLOYEE UNLIMITED ACCESS SITE LICENSE". This license specifically grants authority to allow multiple user access. The licensee may load these images on whatever system deemed appropriate to allow unfettered access to as many licensed users as necessary. This license further allows "VERIZON DIRECTORIES" authority to upload all information on a network server of its own design to allow multiple site access as well. **VERIZON DIRECTORIES may not transfer these images to other parties or individuals unless authorized by YPPI;** provided however, that Verizon Directories is authorized by the Customer License herein granted to utilize these photographs and images in the advertising purchased by its customers for inclusion in Verizon Directories' print and electronic directory products and any other medium which Verizon Directories may utilize to publish directories during the term of this Agreement. **All users must be Employees of VERIZON DIRECTORIES.**

(bolded and underlined emphasis added).

17.     From 2001 to early 2005, AdMedia delivered the 5,000 images (the "Licensed Images") to Verizon Directories as required by the Service Agreement. Over that time, AdMedia, at AdMedia's expense, worked collaboratively with Verizon Directories to produce and deliver image content that was useful to Verizon Directories, and AdMedia agreed, at Verizon Directories' request, to extend the delivery schedule for the images from December 31, 2004, as previously agreed, into 2005.

5

YPPI0074

18. By early 2005, AdMedia delivered the remainder of the Licensed Images. The Licensed Images are included in Composite Exhibit "2" attached hereto, and were delivered in the following collections:

| | | |
|---|---|---|
| A/C Contractors | Food 5 | Movers |
| Antiques | Freight & Export | Mufflers |
| Appliances | Furniture Dealers | New Cars 04-1, 2 & 3 |
| Asphalt/Paving | Garage Doors | Office Furniture |
| Auto Body Repair | Garbage | Optical Goods |
| Auto Parts | Glass Contractors | Painters |
| Auto Repair | Golf | Pest Control |
| Bail Bonds/Criminal Law | Gutters | Pizza |
| Bathrooms | Hawaii | Plumbers |
| Beauty Salons | Heating Contractors | Plumbing Fixtures |
| Bicycles | Heavy Equipment | Printers |
| Blinds/Curtains | Home Improvements | Rental Service |
| Boats | Home Interiors | Restaurant Equipment |
| Brakes | Homes 1 | Roofing |
| Carpet Cleaners/Dealers | Homes 2 | Screen Enclosures |
| Catering | Homes 3 | Septic Service |
| Cell Phones | Homes 4 | Siding Contractors |
| Communications | Hotel Motel | Sign Companies |
| Computers | Insurance | Storage |
| Concrete Contractors | Casualty Insurance | Store Fronts |
| Copier Service | Jewelry | Surveyors |
| Crash | Kitchens | Swimming Pools |
| Crash 2 | Landscape | Taxi Service |
| Dry Cleaners | Latin/Hispanic | Tile |
| Drywall Construction | Limo Service | Tire Dealers |
| Electrical Contractors | Locks/Locksmiths | Tools of the Trade |
| Everyday People | Janitorial & Maid | Towing |
| Fence |   Services | Transmission |
| Floral Arrangements | Manufactured Homes | Travel Agencies |
| Florist | Mobile Computing | Tree Service |
| Food 1 | Models and Salons 2 | Truck Rental & Leasing |
| Food 2 | Motorcycles 1 | Veterinarians |
| Food 3 | Motorcycles 2 | Windows |
| Food 4 | Motor Homes 1 | |

6

YPPI0075

19.     From 2001 through 2005, Verizon Directories never rejected a CD or an image, never declared any breach under the Service Agreement, and paid AdMedia the full contract price of $660,000.  After final delivery, Mr. Moore considered AdMedia's work under the Service Agreement to have been completed.

20.     Although Mr. Moore continued marketing his companies' products to Verizon Directories after final delivery of the Licensed Images, neither AdMedia, Plaintiff, nor any other company owned by Mr. Moore did any further business with Verizon Directories.

**Transfer of the Yellow Pages Photos Business from AdMedia to Plaintiff**

21.     Up through November 3, 2006, AdMedia owned all right, title, and interest, including copyrights, in and to the Licensed Images.

22.     In 2006, Mr. Moore wanted to expand the scope of his company's business to include more than just photographic images for yellow page directories, and so decided to rename the business.

23.     On November 3, 2006, (i) AdMedia changed its name from "Yellow Pages Photos, Inc." to "AdMedia Systems, Inc."; (ii) Plaintiff was formed as "Yellow Pages Photos, Inc." to continue the former "Yellow Pages Photos" business of AdMedia; and (iii) AdMedia assigned to Plaintiff all of its right, title, and interest in and to the Licensed Images and in all actions and causes of action for infringement of the copyrights in the Licensed Images.  A true and correct copy of the Assignment of Copyrights is attached hereto as Exhibit "3."

24.     AdMedia went on to try to market and sell publication software and related products and services to the yellow pages industry.

7

YPPI0076

25.     Plaintiff continued the former "Yellow Pages Photos" business of AdMedia using all the same assets and under the same ownership and control.  Notwithstanding this change in ownership, Verizon Directories which, by that time, had changed its name to "Idearc Media Corp.",[1] remained licensed under the terms and restrictions of the 2001 Service Agreement with AdMedia.

26.     In early 2007, Plaintiff began registering the copyrights in the Licensed Images and other images that were by then its library of images.  Plaintiff has complied, in all material respects, with the laws of the United States governing copyrights, secured the exclusive rights and privileges in and to the copyrights in the Licensed Images, and received from the Register of Copyrights Registration Nos. VA0001403480, VA0001403481, VA0001403482, VA0001410130, VA0001410131, VA0001410132, VA0001410133, VA0001410134, VA0001410135, VA0001410136, VA0001424864, VA0001426212, VA0000431678, VA0000431680, VA0001433259, VA0001433260, and VA0001631315 for the copyrights in the Licensed Images.  True and correct copies of the Certificates of Registration covering the Licensed Images are attached hereto and incorporated herein as Composite Exhibit "4".

27.     From November 3, 2006 through the present, Plaintiff has been, and continues to be, the owner of all right, title, and interest in and to the Licensed Images, the copyrights in the Licensed Images, and the registrations of the copyrights in the Licensed Images.

_____

[1] This was not an assignment of the Service Agreement by Verizon Directories Corp. to Idearc Media Corp., but rather just a corporate name change.  The corporation that was named "Verizon Directories Corp." and changed its name to "Idearc Media Corp." will also be referred to in this Complaint as "Idearc Media," but for clarity "Verizon Directories" and "Idearc Media" are the same corporate entity.

8

YPPI0077

**Verizon Directories'/Idearc Media's Violation of the Service Agreement**

28.     In or about 2006, Verizon Directories changed its name, to "Idearc Media Corp." ("<u>Idearc Media</u>").

29.     Unbeknownst to AdMedia and Mr. Moore, Verizon Directories/Idearc Media, in 2005 and early 2006, had transferred the Licensed Images overseas to several third parties in countries such as India, Israel, and the Philippines, namely large, independent outsourcers named AMDOCS, Office Tiger, and ASEC, in direct violation of the 2001 Service Agreement.  These transfers were made without consulting or advising AdMedia, without authorization from AdMedia, without compensation to AdMedia for these third parties' use of the Licensed Images, and without AdMedia's or Mr. Moore's knowledge.

30.     By exceeding the scope of its license for the Licensed Images through its violation of the transfer and use restrictions of the License, Verizon Directories also violated the copyrights in the Licensed Images.

31.     During late 2006 and 2007, Mr. Moore met in person and spoke by telephone with high-ranking officers and employees of Idearc Media on numerous occasions.  Idearc Media even approached Mr. Moore in 2007 about an amendment to the Service Agreement to add a right for contractors to use the Licensed Images.  Notwithstanding all these contacts, Idearc Media purposely and continuously concealed from Mr. Moore, and importantly would later conceal from the United States Bankruptcy Court for the Northern District of Texas, the existence of its violations of the Service Agreement in 2005 and early 2006, all the time knowing that it was in direct and material violation of the Service Agreement.

YPPI0078

32.     Mr. Moore did not discover the transfer to ASEC (and multiple subcontractors of ASEC in India and the Philippines) until late 2010 or early 2011, and did not discover the transfers to AMDOCS and Office Tiger until 2014.

### The Idearc Bankruptcy

33.     On March 31, 2009, Idearc Media's corporate parent Idearc Inc., and all of its subsidiaries and affiliates, including Idearc Media, filed voluntary bankruptcy petitions in the United States Bankruptcy Court for the Northern District of Texas (the "Texas Bankruptcy Court") for reorganization under the provisions of Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"), which were jointly administered under the lead case, *In re: Idearc Inc.*, Case No. 09-31828 (BJH) (the "Idearc Bankruptcy").[2]

34.     Idearc Media listed the Service Agreement in its executory contract schedules, and both Idearc and the Texas Bankruptcy Court treated the Service Agreement as an executory contract in the Idearc Bankruptcy.

35.     Notwithstanding Idearc Media's willful breaches of the Service Agreement, and its knowledge thereof, Idearc Media concealed the existence of these breaches from Plaintiff, AdMedia, Mr. Moore, and the Texas Bankruptcy Court by listing the Service Agreement in its executory contract schedules with a $0.00 cure amount, fraudulently suggesting to Mr. Moore and his companies and the Texas Bankruptcy Court that Idearc Media had not breached the Service Agreement or committed copyright infringement.  Idearc Media's breaches and infringement were only discovered later, after Idearc Media emerged

---

[2] The case number for Idearc Media's bankruptcy was 09-31836 (BJH).

YPPI0079

from the Idearc Bankruptcy as a new, reorganized entity named "SuperMedia LLC" ("SuperMedia").

36.     Pursuant to 11 U.S.C. § 365(b)(1):

**If there has been a default in an executory contract** or unexpired lease **of the debtor, the trustee may not assume such contract** or lease **unless, at the time of assumption of such contract or lease, the trustee—**

(A)     **cures, or provides adequate assurance that the trustee will promptly cure, such default** other than a default that is a breach of a provision relating to the satisfaction of any provision (other than a penalty rate or penalty provision) relating to a default arising from any failure to perform nonmonetary obligations under an unexpired lease of real property, if it is impossible for the trustee to cure such default by performing nonmonetary acts at and after the time of assumption, except that if such default arises from a failure to operate in accordance with a nonresidential real property lease, then such default shall be cured by performance at and after the time of assumption in accordance with such lease, and pecuniary losses resulting from such default shall be compensated in accordance with the provisions of this paragraph;

(B)     **compensates, or provides adequate assurance that the trustee will promptly compensate, a party other than the debtor to such contract** or lease, **for any actual pecuniary loss to such party resulting from such default; and**

(C)     **provides adequate assurance of future performance under such contract or lease.**

(emphasis on pertinent provisions added).

37.     Neither Idearc Media nor its trustee, at any time during the Idearc Bankruptcy:

(A)     cured, or provided adequate assurance that they would promptly cure, Idearc Media's defaults under the Service Agreement;

11

YPPI0080

(B)     compensated, or provided adequate assurance that they would promptly compensate, AdMedia or Plaintiff for their actual pecuniary loss resulting from Idearc Media's defaults; or

(C)     provide adequate assurance of future performance under the Service Agreement.

38.     Although, Idearc Media's Chapter 11 Plan and related filings indicated its desire to assume the Service Agreement, neither Idearc Media nor its trustee ever took the statutory steps necessary to assume the Service Agreement in the Idearc Bankruptcy.  As a result, and when Idearc Media emerged from the Idearc Bankruptcy on December 30, 2009 as the reorganized entity known as SuperMedia LLC, neither Idearc Media nor SuperMedia possessed any use or other rights under the Service Agreement.

### The Dex One/SuperMedia Bankruptcy

39.     In late 2012 or early 2013, Dex One Corporation ("<u>Dex One</u>") and SuperMedia's parent company SuperMedia Inc. entered into a merger agreement providing for the combination of Dex One and SuperMedia Inc. through a series of mergers with and into a new company to be called "Dex Media, Inc." (also referred to herein as "<u>Defendant</u>").

40.     The Dex One/SuperMedia Inc. merger required stockholder approval, which the companies sought.  However, they were unable to procure stockholder approval for the merger.

41.     As a result, since Dex One and SuperMedia Inc. could not get stockholder approval of the merger, on March 18, 2013, Dex One and all of its subsidiaries filed voluntary bankruptcy petitions in the United States Bankruptcy Court for the District of Delaware (the "<u>Delaware Bankruptcy Court</u>") for reorganization under the provisions of Chapter 11 of the Bankruptcy Code.  Concurrently with filing the bankruptcy petitions, Dex

YPPI0081

One and its subsidiaries filed and requested confirmation of a Joint Prepackaged Chapter 11 Plan (as modified and supplemented, the "Dex One Prepackaged Plan"), seeking to effect the merger and related transactions by and among SuperMedia Inc., Dex One, Newdex, Inc. ("Newdex"), and Spruce Acquisition Sub, Inc. ("Spruce").

42. Also on March 18, 2013, SuperMedia Inc. and all of its domestic subsidiaries filed separate voluntary bankruptcy petitions in the Delaware Bankruptcy Court, seeking approval of SuperMedia's separate prepackaged plan of reorganization (together with the Dex One Prepackaged Plan, the "Prepackaged Plans").

43. In the SuperMedia schedules, SuperMedia admitted the Service Agreement was no longer executory, presumably because it was never actually assumed in the Idearc Bankruptcy due to the failure to promptly cure arrearages on account of the pre-petition breaches.

44. Consistently, SuperMedia took the position that any remaining rights it may have had under the Service Agreement, if any at all, were assets of SuperMedia.

45. On April 29, 2013, the Delaware Bankruptcy Court conducted a hearing and entered separate orders confirming the Prepackaged Plans. On April 30, 2013 (the "Effective Date"), SuperMedia Inc. and Dex One (1) consummated the transactions contemplated by the parties' merger agreement, including (a) the amendment and restatement of SuperMedia Inc.'s senior secured credit facility, (b) the merger of Dex One with and into Newdex (the "Dex Merger"), with Newdex continuing as the surviving corporation and changing its name to "Dex Media, Inc.", (c) the merger of SuperMedia Inc. with and into Spruce (together with the Dex Merger, the "Merger"), with SuperMedia Inc. surviving as a wholly-owned

13

YPPI0082

subsidiary of Dex Media, and (d) the amendment and restatement of the credit facilities of R.H. Donnelley Inc., Dex Media West, Inc., and Dex Media East, Inc., (2) otherwise effected the transactions contemplated by the Prepackaged Plans, and (3) emerged from Chapter 11 protection. Nothing in the Prepackaged Plans acted to retroactively assume the Service Agreement which was never effectively assumed in the Idearc Bankruptcy Case.

46. Subsequent to Defendant's emergence from bankruptcy, and notwithstanding that the Defendant had no right to use the images originally licensed under the Service Agreement, the Defendant began publishing print and online telephone directories featuring advertisements containing the Licensed Images.

47. Since neither Idearc Media, nor its trustee, took the statutorily mandated steps required for an assumption of the Service Agreement in the Idearc Bankruptcy, no rights under the Service Agreement remained SuperMedia's following the Idearc Bankruptcy confirmation hearing. Accordingly, none of such rights have passed, been assumed, or inured to the benefit of Defendant through the Merger or otherwise.

48. Defendant is not otherwise a licensee of Plaintiff or AdMedia.

49. Defendant possesses and is using and displaying some or all of the Licensed Images, without Plaintiff's permission or approval.

50. Defendant does not have any right, title, or interest in or to any of the Licensed Images, nor is it licensed to reproduce, use, publish, distribute, or display any of the Licensed Images.

51. All conditions precedent to the institution and maintenance of this action have occurred or been performed by Plaintiff.

14

YPPI0083

52.     Plaintiff has engaged counsel to represent it and has obligated itself to pay its attorneys a reasonable fee for their services in this action.

### Copyright Infringement

53.     This is an action for copyright infringement arising under the United States Copyright Act, 17 U.S.C. § 101 *et seq.*

54.     Defendant has, by virtue of its above-described acts, infringed upon Plaintiff's copyrights in the Licensed Images in violation of United States Copyright Act, 17 U.S.C. § 101 *et seq.*

55.     Defendant's reproduction, use, publication, distribution, and display of the Licensed Images and advertisements including the Licensed Images is a direct infringement of Plaintiff's copyrights in the Licensed Images in violation of the United States Copyright Act, 17 U.S.C. § 101 *et seq.*

56.     Defendant's infringement of Plaintiff's copyrights in the Licensed Images is causing irreparable injury to Plaintiff and, unless the injunction sought in this Complaint is granted, will continue to cause irreparable injury to Plaintiff.  Plaintiff has suffered and will continue to suffer damage, the exact amount of the damage being unknown to Plaintiff at this time.  The damage to Plaintiff is, and will continue to be, irreparable because of, among other reasons, the continuing nature of the copyright infringement, which would necessitate a multiplicity of suits for damages if the continuance of the wrongs is not enjoined.

57.     Defendant is profiting from its unlicensed reproduction, use, publication, distribution, and display of the Licensed Images and advertisements including the Licensed Images.

15

58. Defendant began publishing directories at some point after the Effective Date of the Merger in 2013 and today publishes approximately 1,700 directories each year.

59. A review of approximately 125 of the 1,700 directories (about 7%) published by Defendant this past year alone has revealed over 1,000 uses of the Licensed Images at an estimated revenue to Defendant of over $22,000,000.00, based on Defendant's published rates for the advertisements in which the Licensed Images appear.

60. Defendant's above-described acts of infringement have been committed, and are continuing to be committed, with the knowledge that they are infringing and are continuing to infringe Plaintiff's copyrights in the Licensed Images.

61. As a result of the above-described intentional and deliberate infringement of Plaintiff's copyrights in the Works by Defendant, Plaintiff is entitled to an injunction, an award of damages suffered as a result of Defendant's infringement, an award of Defendant's profits that are attributable to Defendant's infringement and are not taken into account in computing Plaintiff's actual damages, statutory damages, attorneys' fees, and costs, all as set forth in 17 U.S.C. §§ 502, 504, and 505, subject to the discretion of this Court.

WHEREFORE, Plaintiff demands judgment against Defendant for:

(a) an injunction permanently enjoining and restraining Defendant, its officers, agents, servants, employees, and attorneys, and all other persons in active concert or participation with them, from infringing Plaintiff's copyrights in the Licensed Images through further reproduction, use, publication, distribution, and display of the Licensed Images;

(b) an order directing Defendant to file with this Court and serve upon Plaintiff a report in writing under oath setting forth in detail the manner and form in which Defendant has complied with the injunction entered by this Court within thirty (30) days after the entry of the injunction;

16

YPPI0085

(c)     an order directing Defendant to deliver up to Plaintiff for destruction all copies of infringing materials and all copies of the Licensed Images, in any media, in Defendant's possession, custody, or control;

(d)     actual damages suffered by Plaintiff as a result of Defendant's infringement of Plaintiff's copyrights in the Works;

(e)     an accounting of Defendant's profits derived from its infringement of Plaintiff's copyrights in the Licensed Images and an order that the same be disgorged and paid over to Plaintiff;

(f)     in the alternative, statutory damages up to the amount of $150,000.00 for each collection of the Licensed Images infringed by Defendants;

(g)     pre- and post-judgment interest on such damages and profits at the highest rate allowed by law;

(h)     attorneys' fees;

(i)     costs of this action; and

(j)     such other and further relief as the Court may deem just and appropriate.

### DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues so triable.

Respectfully submitted,

/s/ J. Todd Timmerman
J. Todd Timmerman, Esquire
Florida Bar No. 0956058
ttimmerman@slk-law.com
Shumaker, Loop & Kendrick, LLP
101 East Kennedy Boulevard
Suite 2800
Tampa, Florida 33602
Telephone No.: (813) 229-7600
Facsimile No.: (813) 229-1660

Attorneys for Plaintiff, Yellow Pages Photos, Inc.

17

YPPI0086