IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE: DEX MEDIA, INC., *et al.*, | : | Chapter 11 |
| | : | Bankr. Case No. 16-11200-KG |
| Debtors. | : | (Jointly Administered) |
| | : | |
| _____ | : | |
| | : | |
| YELLOW PAGES PHOTOS, INC., | : | Adv. No. 16-51026-KG |
| | : | |
| Appellant, | : | |
| v. | : | C.A. No. 17-96-MN |
| | : | C.A. No. 17-265-MN |
| DEX MEDIA, INC., | : | C.A. No. 18-197-MN |
| | : | |
| Appellee. | : | |

## <u>MEMORANDUM OPINION</u>

Appellant, Yellow Pages Photos, Inc. ("YPPI") appeals from several decisions entered in the chapter 11 cases of Dex Media, Inc. and certain affiliated entities (together, "Dex Media"). The first is YPPI's consolidated appeal of (1) the Bankruptcy Court's January 19, 2017 Memorandum Opinion (Adv. D.I. 40)[1] and Order (Adv. D.I. 41), *In re Dex Media, Inc.*, 564 B.R. 208 (Bankr. D. Del. 2017) ("Judgment on the Pleadings"), granting Dex Media's Motion to Dismiss Yellow Pages Photos, Inc.'s Counterclaims and for Judgment on the Pleadings (Adv. D.I. 31), and (2) the subsequent March 8, 2017 Declaratory Judgment and Order (Adv. D.I. 55) ("Declaratory Judgment"), specifying the declaratory relief granted in the Judgment on the Pleadings.[2] YPPI further appeals the January 30, 2018 Memorandum Opinion (Adv. D.I. 104) and Order (Adv. D.I. 105) ("Fee Award"), awarding Dex Media reasonable attorneys' fees in the

---

[1] The docket of Dex Media's chapter 11 cases, captioned *In re Dex Media, Inc., et al.*, Case No. 16-11200-KG (Bankr. D. Del.), is cited herein as "B.D.I.___." The docket of the adversary proceeding, captioned *Yellow Pages Photos, Inc. v. Dex Media, Inc.*, Adv. No. 16-51026-KG (Bankr. D. Del.), is cited herein as "Adv. D.I. ___."

[2] In accordance with this Court's Order dated April 19. 2017, appeals C.A. No. 17-96-MN and C.A. No. 17-265-MN are consolidated and under C.A. No. 17-265-MN.

amount of $504,025.50 and costs of $2,522.45. For the reasons set forth below, the Court affirms the Judgment on the Pleadings, Declaratory Judgment, and Fee Award.

# I.    BACKGROUND[3]

The litigation history between the parties, including Dex Media's wholly owned subsidiary SuperMedia, LLC ("SuperMedia"), is significant in each of these appeals.

## A.    License

SuperMedia publishes yellow pages telephone directories and provides print, mobile, and Internet advertising to small- and medium-sized businesses. (DEX 560 ¶ 10). Years ago, SuperMedia was the yellow pages publishing arm of Verizon, operating under the name Verizon Directories Corp. ("Verizon Directories"). On November 12, 2001, Verizon Directories agreed to license a total of 5,000 stock photographs from a Florida company then known as Yellow Pages Photos, Inc. ("Old YPPI"), a company wholly owned and operated by Trent Moore ("Moore"). Verizon Directories, "on behalf of itself and all of its affiliates," entered into a Service Contractor Agreement with Old YPPI (the "License" or "License Agreement"). (DEX 577). The License granted Verizon Directories a "perpetual" right to use Old YPPI's 5,000 images (the "Licensed Images") in any "print, electronic or other medium that may be used by Verizon Directories for publication of directories without limit, ROYALTY FREE." (DEX 589). In exchange, Verizon Directories paid Old YPPI a total of $660,000, the final installment of which was paid in 2004. (DEX 658 ¶ 16).

The License contained a transfer restriction, providing that Verizon Directories "may not transfer these images to other parties or individuals unless authorized by YPPI; provided however, that Verizon Directories is authorized . . . to utilize these photographs and images in the advertising

---

3    Appendices referenced in Section I of this Memorandum Opinion are docketed in C.A. No. 17-265-MN and are cited as follows: YPPI's appendix (D.I 13-16) as "YPPI Appx. __"; Dex Media's appendix (D.I. 19-1) as "DEX __."

purchased by its customers . . . ." (DEX 590). The License also contained an anti-assignment provision, which stated that Old YPPI "shall not assign its rights nor delegate its duties under this Agreement ... to any third party[] without Verizon Directories' prior written consent in each instance." (DEX 584 § 12).

In November 2006, Moore changed the name of Old YPPI – the Florida company that had licensed the images to Verizon Directories – to AdMedia Systems, Inc. ("AdMedia"). (DEX 561 ¶ 13). At the same time, Moore created a second Florida company and named it, confusingly, "Yellow Pages Photos, Inc." ("YPPI"). (*Id.*). Thereafter, AdMedia assigned its copyrights in the Licensed Images to this new YPPI, despite the License's anti-assignment provision. Moore did not inform anyone at Verizon Directories (or its successors) that he had created a second company called "Yellow Pages Photos, Inc." or that AdMedia had assigned its copyrights to this new company. (DEX 504-506). In November 2006, Verizon Directories spun off its directory publication business into a public company, Idearc Media Corp. ("Idearc"), which succeeded to Verizon Directories' rights under the License. (DEX 561, ¶ 14). In July 2007, Idearc and Moore agreed to amend the License to clarify that Idearc's contractors were authorized "users" of those images. (YPPI Appx. 65-66).

On March 31, 2009, Idearc filed for bankruptcy in the United States Bankruptcy Court for the Northern District of Texas (the "Idearc Bankruptcy"). (YPPI Appx. 5, ¶ 14; 6, ¶ 16); *In re Idearc Inc.*, 423 B.R. 138 (Bankr. N.D. Tex. 2009). Its Chapter 11 plan of reorganization listed all contracts to which Idearc was a party under its schedule of executory contracts. Idearc assumed the License without objection from YPPI. (YPPI Appx. 6, ¶ 16). On December 31, 2009, Idearc emerged from bankruptcy as SuperMedia LLC ("SuperMedia"), which now enjoyed the right to use YPPI's images under the License. (*Id.,* ¶ 17).

Nearly four years later, on March 18, 2013, SuperMedia's parent company, SuperMedia, Inc., commenced a pre-packaged Chapter 11 bankruptcy proceeding before The Honorable Kevin Gross in the United States Bankruptcy Court for the District of Delaware. (YPPI Appx. 7, ¶ 21). The Chapter 11 plan contemplated a merger between SuperMedia, Inc. and Dex One Corporation, with the merged entity called Dex Media; SuperMedia would emerge from bankruptcy as an indirect, wholly-owned subsidiary of Dex Media. (*Id.*). The Bankruptcy Court confirmed SuperMedia's plan of reorganization on April 29, 2013, and the plan went effective the next day. (*Id.*). Since then, Dex Media has been the holding company and indirect parent to SuperMedia. (YPPI Appx. 7, ¶ 21; 12, ¶ 39).

## B.    SuperMedia Litigation

On May 30, 2013, YPPI filed two claims against SuperMedia's estate, both of which alleged that SuperMedia breached the License and, as a result, infringed YPPI's copyrights. YPPI's first claim was a motion for the allowance and payment of an administrative expense claim that alleged that the License was valid and enforceable and that SuperMedia violated its transfer restriction during the "administrative expense period" – the period between when SuperMedia filed for bankruptcy protection (March 18, 2013) and when it emerged from bankruptcy (April 29, 2013) (the "Administrative Expense Claim"). (DEX 9-14). YPPI's second claim was a Proof of Claim that likewise alleged that the License was valid and enforceable and that SuperMedia breached its transfer restriction but that covered the time period before SuperMedia filed for bankruptcy (the "Prepetition Claim"). (YPPI Appx. 41-68).

Over the next three years, YPPI litigated its claims against SuperMedia before the Bankruptcy Court, which, as the record reflects, included two phases of fact and expert discovery, dozens of discovery disputes, multiple dispositive motions, two trials, and more than 40 hours of testimony (the "SuperMedia Litigation"). The SuperMedia Litigation was premised on YPPI's

allegation that SuperMedia "violated the transfer restriction set forth in the License by transferring the Licensed Images to third parties" and the third-party transferees used the images without authorization. (DEX 601, ¶ 15; 13, ¶ 19). One of the alleged third-party transferees was Dex Media. (DEX 117-18; DEX 60; DEX 39 ("SuperMedia has transferred copies of Yellow Pages' images to a number of unlicensed third-parties . . ., and there is evidence of the images being used for at least one unlicensed publisher, SuperMedia's affiliate Dex.")). YPPI maintained that the License was a valid and enforceable contract, as both of its claims hinged on the allegation that SuperMedia breached the transfer restriction in the License. Specifically, YPPI alleged that the License passed through the Idearc Bankruptcy and that "Idearc Media's rights under the Agreement and the License . . . vested in SuperMedia." (DEX 74-75, ¶ 11; *see also* YPPI Appx. 45, ¶ 11 ("As successor to Idearc, SuperMedia, LLC[] remained bound by the Agreement and the License with YPPI under all of the terms and provisions of the License . . .")). YPPI also sought to recover attorneys' fees under the License.

### 1.     YPPI's Assumption Motion

YPPI filed a Motion to Compel Assumption or Rejection of Executory Contract (the "Assumption Motion") before the Bankruptcy Court. (DEX 1-8). In its Assumption Motion, YPPI "maintain[ed] that the License is an executory contract and, consequently, must be either assumed or rejected by the Debtors as part of their bankruptcy case." (DEX 5, ¶ 18). On October 9, 2013, the Bankruptcy Court denied the Assumption Motion, ruling that the "License is not an executory contract." *In re SuperMedia, Inc.*, 2013 WL 5567838 (Bankr. D. Del. Oct. 9, 2013). The Bankruptcy Court noted that "[f]or a contract to be executory, there must be unperformed obligations on behalf of both parties." *Id.* at *4. Here, once "delivery of the images and the payments were completed nearly ten years ago [in 2005], the parties ha[d] received the benefit of their bargain" and no unperformed obligations remained. *Id.* YPPI moved for

reconsideration of the denial of its Assumption Motion. (DEX 28-39). The Bankruptcy Court denied that motion, reiterating its holding that the License is not an executory contract. (DEX 40-42).

### 2. YPPI's Administrative Claim

On April 9, 2014, the Bankruptcy Court commenced a three-day bench trial on YPPI's Administrative Expense Claim. YPPI introduced evidence of allegedly infringing advertising videos that had been created for Dex Media by an outsourcer called bieMedia. (DEX 155 at 15:6-10; DEX 158-59 at 18:22-19:22). YPPI argued that SuperMedia was responsible for these infringing videos, arguing that bieMedia could only have obtained copies of the Licensed Images used in the videos from SuperMedia because, according to YPPI, it "never sold any images to . . . outsourcer[s]" such as bieMedia. (DEX 164 at 23:17-19). In an opinion dated December 29, 2014, the Bankruptcy Court held that SuperMedia breached the License by transferring YPPI's images to its third-party contractors, but it did so *before* SuperMedia filed for bankruptcy protection. *In re SuperMedia, Inc.*, 2014 WL 7403448, *13 (Bankr. D. Del. Dec. 29, 2014). The Bankruptcy Court found no evidence of any such transfers during the administrative expense period, (*id.*), and, therefore, denied YPPI's Administrative Expense Claim. (*Id.* at *19-*20). On February 11, 2015, YPPI moved for reconsideration of the Bankruptcy Court's denial of its Administrative Expense Claim. (DEX 218-223). In that motion, YPPI again argued that SuperMedia had "transferred the Licensed Images to Dex Media." (DEX 221, ¶¶ 10, 13). The Bankruptcy Court denied the motion for reconsideration, holding that there was no evidence of a "deliberate physical transfer" of the Licensed Images to Dex Media. Specifically, the Bankruptcy Court held: "The transfer of the Licensed Images resulted from the merger between SuperMedia, Inc. and Dex One. It was the combining of operations between SuperMedia, Inc. (SuperMedia's parent) and Dex One that created the 'transfer,' not a deliberate physical transfer. [Thus] the merger between SuperMedia's

parent and DexMedia did not result in a transfer which would constitute a tortious act." (DEX 224-25).

### 3. Rule 60(b) Decision

On January 12, 2015, SuperMedia filed an adversary proceeding formally objecting to YPPI's Prepetition Claim (discussed below). (DEX 242-52). During discovery, it came to light that YPPI had licensed its images to several outsourcers, including bieMedia. (DEX 227-33). This was contrary to Moore's prior testimony that YPPI had never licensed its images to "outsourcers," and, therefore, if any outsourcers were in possession of YPPI's images, they must have come from SuperMedia. (DEX 164 at 23:17-19). On May 29, 2015, SuperMedia filed a Motion for Relief from Judgment under Rule 60 of the Federal Rules of Civil Procedure and sought sanctions against YPPI and its counsel for false representations to the Bankruptcy Court ("Rule 60(b) Motion"). (DEX 227). On September 3, 2015, the Bankruptcy Court granted the Rule 60(b) Motion in part ("Rule 60(b) Opinion"), finding that YPPI intentionally "hid" its license with bieMedia (and a license with another outsource, ASEC) from both SuperMedia and the Bankruptcy Court, and that YPPI and its counsel made "deliberate misrepresentations and non-disclosures" before, during, and after the April 2014 trial. (DEX 226-239). The Bankruptcy Court found "most egregious" the fact that Moore "forcefully testified under oath, testimony which profoundly affected the Court's Opinion." (DEX 230). Based on these findings, the Bankruptcy Court sanctioned YPPI and its counsel, barring recovery for any alleged transfers to bieMedia or other outsourcers whose licenses had been concealed. (DEX 238). The Bankruptcy Court further awarded $111,679 to SuperMedia for its fees and costs in bringing the Rule 60(b) Motion. (DEX 240-41).

### 4. AdMedia Decision

The Bankruptcy Court scheduled a trial on YPPI's Prepetition Claim for November 2015. In July 2015, SuperMedia deposed Moore and learned that the "Yellow Pages Photos, Inc." that

had filed claims in the Bankruptcy Court was *not* the same entity that signed the License. (DEX 271-72). The counterparty to the License was Old YPPI, which had since changed its name to AdMedia. (*Id.*). SuperMedia was granted leave to amend its complaint in the adversary proceeding to assert that YPPI did not have standing to enforce the License. Just before trial began, YPPI filed a motion to join AdMedia as an "alternatively pled creditor." (DEX 342-50). In a separate post-trial opinion ("AdMedia Decision"), the Bankruptcy Court denied that motion, holding that YPPI acted with undue delay and in "bad faith," had "deceived" the Court and SuperMedia by "omitting from its filings facts essential for adjudication of this case," and "actively concealed" the fact that the YPPI before the Bankruptcy Court was a different entity than the YPPI that had entered into the License. (DEX 504; DEX 520; DEX 524).

### 5. Prepetition Claim

On October 23, 2015, shortly before the trial on YPPI's Prepetition Claim began, YPPI filed an amended Proof of Claim, raising a new theory of liability – the "failure to assume" theory. (DEX 306-336) ("Amended Proof of Claim"). As in the original Proof of Claim, the Amended Proof of Claim continued to allege that the License was valid and enforceable and that SuperMedia breached the transfer restriction in the License. (DEX 316, ¶¶ 23-25). In the alternative, however, YPPI now alleged that the License was invalid and unenforceable because SuperMedia's predecessor, Idearc, failed properly to assume the License during its 2009 bankruptcy. (DEX 314, ¶¶ 17-18). Specifically, YPPI alleged that Idearc breached the License before the Idearc Bankruptcy, "failed to cure" these breaches during its 2009 bankruptcy, and thus could not assume the License when it exited bankruptcy. (*Id.*). YPPI maintained, if Idearc did not properly assume the License, then "*any use* or transfer of the Licensed Images by SuperMedia *at any point in time* has been a violation of Yellow Pages' copyrights in the Licensed Images." (DEX 316, ¶ 26). Prior to the November 2015 trial, however, YPPI abandoned its "failure to assume" theory

and, instead, pressed forward with its original claim that the License was a valid agreement that SuperMedia breached.

The November 2015 trial of YPPI's Prepetition Claim focused on the damages attributable to SuperMedia's pre-petition breach of the License's transfer restriction. In an attempt to establish the value of the YPPI images that SuperMedia transferred to its contractors, YPPI introduced evidence of "hundreds" of print advertisements containing the Licensed Images, which had been published in "Dex Media" directories. (Adv. No. 15-50044-KG, D.I. 153, 11/15/15 Hr'g Tr. at 164:17-190:1). The evidence that YPPI introduced included a yellow pages directory published by Dex Media in 2015, which contained print advertisements using YPPI images. (DEX 487 at 72:11-15). While YPPI cited the use of its images in print advertisements as evidence of the images' value, YPPI conceded that the use of its images in print advertisement – including in the 2015 directory-was *not* an infringing use. YPPI's counsel stated: "[W]e don't dispute, of course, that they license[d] the images and they were allowed to use them in printouts." (DEX 381 at 62:21-23; *see also* DEX 408 at 186:22 ("I'm not saying the uses are infringing.")). YPPI's principal, Moore, admitted the same thing while testifying under oath: "I do not think that the print ad is a violation of the license agreement." (DEX 415 at 269:7-17). Moore's testimony on this point was clear: Q. "And SuperMedia was allowed to use your images in print ads, correct?" A. "Yes, they were." (*Id.* at 269:12-14).

On April 4, 2016, the Bankruptcy Court handed down its "final decision on the merits" of the SuperMedia Litigation. *In re SuperMedia LLC*, 2016 WL 1367070 (Bankr D. Del. April 4, 2016) ("April 2016 Opinion"). The Bankruptcy Court held that YPPI could not recover statutory damages or attorneys' fees under the Copyright Act because it had failed to timely register its copyrights. *Id.* at *4. The Bankruptcy Court further held that YPPI could not recover attorneys' fees under the License because AdMedia, not YPPI, was the real party to the License.

*Id.* YPPI was left with a claim for actual damages based upon SuperMedia's unauthorized transfers to its contractors. The Bankruptcy Court awarded YPPI $303,210 in actual damages. *Id.* at *9. SuperMedia has paid that judgment in full.

### C. Dex Media Litigation

#### 1. Florida Action

On April 29, 2016, less than a month after the Bankruptcy Court's April 2016 Opinion, YPPI sued SuperMedia's parent, Dex Media, in the United States District Court for the Middle District of Florida, alleging that Dex Media infringed YPPI's copyrights on the same 5,000 images at issue in the SuperMedia Litigation. On July 8, 2016, Dex Media responded to that complaint by filing the instant Adversary Proceeding in its pending Chapter 11 case before Judge Gross (the "Dex Media Litigation"). (YPPI Appx. 1-86). In its adversary complaint, Dex Media objected to YPPI's claims against its estate and sought a declaratory judgment that Dex Media "has not infringed any of the Licensed Images . . . ." (YPPI Appx. 13-14, ¶ 43). Given the extensive overlap with the SuperMedia Litigation, the Bankruptcy Court agreed to exercise jurisdiction over the Adversary Complaint.

#### 2. Motion for Judgment on the Pleadings

On September 30, 2016, YPPI filed its Answer and Counterclaims in the Dex Media Litigation, asserting copyright infringement against Dex Media ("Counterclaims"). (YPPI Appx. 87-117). YPPI's Counterclaims were premised on the same "failure to assume" theory that YPPI previously raised, and abandoned, in the SuperMedia Litigation. Specifically, in the Dex Media Litigation, YPPI alleged that the License was "never effectively assumed in the Idearc Bankruptcy Case" due to Idearc's failure to cure existing breaches and, as a result, "no rights under the [License] remained or otherwise inured to the benefit of SuperMedia following the Idearc Bankruptcy confirmation hearing." (YPPI Appx. 107-09, ¶¶ 36-45).

YPPI's Counterclaims against Dex Media also relied on two propositions that contradicted YPPI's representations during the SuperMedia Litigation. First, whereas in the SuperMedia Litigation, YPPI alleged that the License was a valid agreement that had fully "vested in SuperMedia," (DEX 74-75, ¶ 11); in the Dex Media Litigation, YPPI asserted that SuperMedia had "no rights" under the License as of December 30, 2009. (YPPI Appx. 107-09, ¶¶ 36-45). Second, whereas in the SuperMedia Litigation, YPPI represented that the use of YPPI's images in print advertisements published in Dex Media directories was not an infringing use; in the Dex Media Litigation, YPPI alleged that those same print advertisements infringed YPPI's copyrights. (YPPI Appx. 110, ¶ 51). YPPI's Counterclaims in the Dex Media Litigation also alleged that the License was an executory contract (YPPI Appx. 105-06, ¶¶ 30-32), even though the Bankruptcy Court twice held it was no longer executory as of 2005 in ruling on the Assumption Motion.

On November 3, 2016, Dex Media filed a Motion to Dismiss YPPI's Counterclaims and for Judgment on the Pleadings (the "Motion for Judgment"). (YPPI Appx. 406-510). Dex Media advanced four grounds in support of its Motion for Judgment: (1) YPPI's claims were barred by claim preclusion or *res judicata*; (2) YPPI's claims were barred by judicial estoppel; (3) YPPI's claims were barred by collateral estoppel; and (4) YPPI failed to state a claim upon which relief could be granted. (YPPI Appx. 412-15).

On January 19, 2017, the Bankruptcy Court entered the Judgment on the Pleadings on three of the four grounds: claim preclusion (*res judicata*), judicial estoppel, and collateral estoppel. *See Dex Media*, 564 B.R. at 214-16. First, the Bankruptcy Court held that *res judicata* applied because "the claims in both actions are similar if not identical" such that "[t]rying the Dex Media case would be a retrial of the SuperMedia Litigation." *Id.* at 214. Second, the Bankruptcy Court held that judicial estoppel barred YPPI's claims in the Dex Media Litigation because they were an "improper" attempt to "flip-flop" on its positions on the validity of the License and the non-

infringing nature of print ads. *Id.* at 215. Lastly, the Bankruptcy Court held that collateral estoppel barred YPPI's claims in the Dex Media Litigation because they depended on two elements essential to its Counterclaims: the executory nature of the License, and a transfer of the Licensed Images to Dex Media. The Bankruptcy Court stated, "[i]t is abundantly clear that the Court adjudicated both of these issues, and that the determination was necessary to the court's decision." *Id.* at 216. Based on the foregoing, the Bankruptcy Court entered its Memorandum Opinion and Order granting Judgment on the Pleadings in favor of Dex Media. On January 30, 2017, YPPI filed its notice of appeal of the Judgment on the Pleadings. (Adv. D.I. 42).

### 3. Declaratory Judgment

Thereafter, Dex Media filed a "Certification of Counsel" and proposed form of Declaratory Judgment on the basis that the Bankruptcy Court failed to enter a judgment "in a separate document" as required by Rule 58(a) of the Federal Rules of Civil Procedure. (Adv. D.I. 49). YPPI opposed entry of judgment, arguing that the deadline for filing a motion for an award of attorneys' fees expired on February 2, 2017, that Dex Media had missed the deadline, and that the request for entry of the separate Declaratory Judgment was a ploy to "reset the clock" so that Dex Media could timely file a motion for attorneys' fees. *See* Fed. R. Civ. P. 54(d)(2)(B)(i) (a motion for attorneys' fees "must . . . be filed no later than 14 days after the entry of judgment."). On March 8, 2017, the Bankruptcy Court entered the Declaratory Judgment. (Adv. D.I. 55). On March 13, 2017, YPPI filed its notice of appeal of the Declaratory Judgment. (Adv. D.I. 57).

### 4. The Fee Award

On March 23, 2017, Dex Media submitted its Amended Motion for Attorneys' Fees and Costs under Section 505 of the Copyright Act. (Adv. D.I. 64). Prior to responding, YPPI was permitted to take the deposition of not only the lead partner representing Dex Media, but also one of the associates on the Dex Media team. (Adv. D.I. 76 at ¶ 15; Adv. D.I. 81). Following those

depositions, YPPI submitted its opposition to Dex Media's fee application. (Adv. D.I. 91). Dex Media submitted its reply brief on June 26, 2017. (Adv. D.I. 94). The Bankruptcy Court heard oral argument on Dex Media's fee application on January 11, 2018. (Adv. D.I. 115).

On January 30, 2018, the Bankruptcy Court issued its Memorandum Opinion granting the Fee Award. (Adv. D.I. 104 & 105). The Bankruptcy Court agreed with YPPI that "a court may not award attorneys' fees as a matter of course but only after making a 'particularized case-by-case assessment.'" (Adv. D.I. 104 at 4 (quoting *Kirtsaeng v. John Wiley & Sons, Inc.*, 136 S. Ct. 1979, 1985 (2016))). Given the facts of this case, however, the Bankruptcy Court was "convinced beyond near certainty that YPPI's lawsuit against Dex Media was a situation of 'objective unreasonableness.'" (*Id.* (quoting *Kirtsaeng*, 136 S. Ct. at 1985)). In reaching this conclusion, the Bankruptcy Court found:

> In its lawsuit YPPI is making claims contrary to its previous representations to the Court in the SuperMedia action. For instance, in the prior SuperMedia action, YPPI claimed that the license was valid, enforceable and that print advertisements were not infringement. In its new action, YPPI instead claims that the License was not valid and therefore SuperMedia and its affiliates and customers had no right to use the License. There are other inconsistencies.

(*Id.*). The Bankruptcy Court further held that fee shifting was warranted based upon considerations of deterrence, finding that it is "very important for SuperMedia to end YPPI's harassment." (*Id.*). As the Bankruptcy Court found: "YPPI filed the Dex Media lawsuit [in Florida] mere weeks after the Court's ruling in the SuperMedia case. YPPI waited months to serve Dex Media with the Complaint in the Florida Action. The Complaint in the Florida Action also asserts positions contrary to YPPI's claims in previous litigation. Deterrence is therefore an important consideration." (*Id.* at 4-5). To determine a reasonable fee award, the Bankruptcy Court "reviewed the Dex Media attorneys' time records – line by line." (*Id.* at 9). "For each and every time record, the [Bankruptcy] Court used its independent judgment to approximate the time necessary for the dispute." (*Id.*). Based on this analysis, the Bankruptcy Court awarded Dex Media fees of

$504,025.50 and expenses of $2,522.45 – a reduction of roughly 33% of the fees and expenses Dex Media incurred, and paid, in defending against YPPI's claims. (*Id.* at 11).

In rendering its Fee Award, the Bankruptcy Court rejected YPPI's contention that Dex Media could only recover fees based upon the prevailing rates in the forum of the litigation (Delaware), and not the forum in which its attorneys practice (New York). (*Id.* at 5-6). In rejecting this argument, the Bankruptcy Court found that "the knowledge and expertise of [Dex Media's] Non-Local Counsel was critical to Dex Media's success in the litigation." (*Id.* at 7). The Bankruptcy Court also rejected YPPI's contention that a fee award would result in the "financial ruination" of YPPI's business, finding that "YPPI has not presented a clear record of its financial circumstances." (*Id.* at 10). On February 1, 2018, YPPI appealed the Fee Award. (Adv. D.I. 107).

These appeals are fully briefed. The Court did not hear oral argument because the facts and legal arguments are adequately presented in the briefs and the record, and the decisional process would not be significantly aided by oral argument.

## II.    JURISDICTION AND STANDARDS OF REVIEW

The Court has jurisdiction to hear an appeal from a final judgment of the Bankruptcy Court pursuant to 28 U.S.C. § 158(a)(1). On appeal from an order issued by the Bankruptcy Court, a district court "review[s] the Bankruptcy Court's factual findings under a clearly erroneous standard and exercise[s] plenary review over legal issues." *In re Trans World Airlines, Inc.*, 145 F.3d 124, 130 (3d Cir. 1998).

## III.   DISCUSSION

### A.   Judgment on the Pleadings[4]

#### 1.   Claim Preclusion (*Res Judicata*)

The Bankruptcy Court determined that YPPI's Counterclaims were barred under the doctrine of claim preclusion or *res judicata* because those claims are based on events that predate the filing of the SuperMedia Litigation:  Idearc's alleged failure to assume the License in 2009, years before the filing of the SuperMedia Litigation in 2013.  Specifically, YPPI's Counterclaims allege that Idearc "failed to assume" the License Agreement during its Chapter 11 bankruptcy in 2009, rendering the License unenforceable on December 30, 2009, such that SuperMedia therefore had "no rights" according to YPPI to use the Licensed Images.  (DEX 663 ¶ 35; DEX 665 ¶ 45).  YPPI admits that it raised this same "failure to assume" theory of liability in the SuperMedia Litigation (YPPI Br. at 15): indeed, in its Amended Proof of Claim, YPPI alleged in the SuperMedia Litigation that, "as successor to Idearc," SuperMedia "did not effectively assume the Agreement" and, as a result, "any use or transfer of the Licensed Images by SuperMedia at any point in time has been a violation of Yellow Pages' copyrights in the Licensed Images." (YPPI Appx. 421).  The Bankruptcy Court determined that YPPI is barred from relitigating the theory, because YPPI could have but did not pursue the abandoned claim.  *Dex Media*, 564 B.R. at 215 (citing *Rouse v. II-VI, Inc.*, 2008 WL 2914796 (W.D. Pa. July 24, 2008)), *aff'd* 2009 WL 1337144 (3d Cir. May 14, 2009)).

Under the doctrine of claim preclusion, "[a] final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in

---

[4]      Pleadings appearing referenced in Sections III (A) and III (B) of this Memorandum Opinion are docketed at Civ. No. 17-265-MN and are cited herein as follows: YPPI's Opening Brief (D.I. 12) as "YPPI Br. at __"; YPPI's appendix (D.I. 13-16) as "YPPI Appx. __"; Dex Media's brief (D.I. 19) as "Dex Br. at __"; Dex Media's appendix (D.I. 19-1) as "DEX __"; and YPPI's reply brief (D.I. 20) as "YPPI Reply at __."

that action." *Churchill v. Star Enters.*, 183 F.3d 184, 194 (3d Cir. 1999). The purpose is to "relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudication." *Davis v. Wells Fargo*, 824 F.3d 333, 341-42 (3d Cir. 2006). Claim preclusion "bars not only claims that were brought in the previous action, but also claims that could have been brought." *Elkadrawy v. Vanguard Grp., Inc.*, 584 F.3d 169, 173 (3d Cir. 2009). Claim preclusion requires three elements: "(1) a final judgment on the merits in a prior suit involving (2) the same parties or their privies, and (3) a subsequent suit based on the same cause of action." *Sims v. Viacom, Inc.*, 544 F. App'x 99, 101 (3d Cir. 2013). The Bankruptcy Court held that each of these elements was met and that the doctrine of claim preclusion barred YPPI's Counterclaims. *See Dex Media*, 564 B.R. at 214. The Bankruptcy Court concluded that "the claims in both actions are similar if not identical" and that both actions involved "the same parties, the same Licensed Images, the same copyrights, the same chain of events, and the same course of dealing" such that "trying the Dex Media case would be a retrial of the SuperMedia Litigation." *Id.*

YPPI's focus on appeal is that the Bankruptcy Court erred in declining to apply the "bright-line rule" identified by the Third Circuit that "*res judicata* does not bar claims that are predicated on events that postdate the filing of the initial lawsuit." *Morgan v. Covington Township*, 648 F.3d 172, 177-78 (3d Cir. 2011). According to YPPI, the Counterclaims assert instances of copyright infringement that post-date the complaint filed in the SuperMedia Litigation: that Dex Media published ads containing YPPI copyrighted images in telephone directories "since May 1, 2013" – after SuperMedia's April 30, 2013 plan confirmation date. (YPPI Br. at 23-24). Because these instances of infringement occurred after the filing of the SuperMedia Litigation, YPPI argues that its Counterclaims are not barred by the doctrine of claim preclusion. YPPI argues that the

Bankruptcy Court "expressly declined" to apply the Third Circuit decision in *Morgan*, and its holding must be reversed. (*Id.* at 24).

The Court does not agree. The Bankruptcy Court distinguished the claims in *Morgan* from the Counterclaims in this case, which are based on events that pre-date the filing of the SuperMedia Litigation. *See Dex Media*, 564 B.R. at 213-14. As YPPI admits, to prevail on its Counterclaims against Dex Media, "YPPI needs to prove that Dex Media published YPPI's copyrighted images without having a license." (YPPI Br. at 31). According to YPPI, the reason that Dex Media did not have a license is Idearc's breach and failure to assume the License in 2009, which would have occurred years before the filing of either the SuperMedia Litigation or the Dex Media Litigation, and which YPPI knew had occurred before the conclusion of the SuperMedia Litigation. *Dex Media*, 564 B.R. at 215. Because the Counterclaims are premised on an event that already occurred at the time of the prior suit, *res judicata* may apply even if plaintiffs alleged new facts that occurred after the first suit. *See Foster v. Denenberg*, 616 F. App'x 472, 474 (3d Cir. 2015) (barring second action despite "new facts occurring after final judgment" where, "in both the first and second actions, Foster alleged fraud in connection with a 2007 real estate transaction). That the Counterclaims allege new infringement claims post-dating the SuperMedia Litigation is inconsequential where, as here, they are based on the same "failure to assume" theory that YPPI raised and abandoned in the SuperMedia Litigation in favor of its theory that the License was effectively assumed but later breached. Recognizing that it could not pursue such inconsistent theories of liability at trial, YPPI chose to abandon its "failure to assume" argument in the SuperMedia Litigation and cannot resurrect it now. The Bankruptcy Court correctly determined that "abandoning a claim does not negate claim preclusion which is based on what was or could have been asserted." *See Dex Media*, 564 B.R. at 214 (citing *SupplyOne, Inc. v. Triad Packaging, Inc.*, 2014 WL 3676524, at *5 (E.D. Pa. July 24, 2014)).

YPPI further argues on appeal that the Bankruptcy Court erred in finding that YPPI's Counterclaims are based on the same cause of action as asserted in the SuperMedia Litigation. (*See* YPPI Br. at 28-32). A determination of whether two cases have "the same cause of action" for purposes of claim preclusion "[t]urns on the essential similarity of the underlying events giving rise to the various legal claims" in both actions. *Churchill v. Starr Enterprises*, F.3d 184, 194 (3d Cir. 1999). Dex Media argues that no such analysis is needed because YPPI admits that its Counterclaims are the same claims YPPI asserted in the SuperMedia Litigation.

Here, the two cases involve the same 5,000 "Licensed Images," the same 2001 License Agreement, and the same parties. It is also undisputed that in both the SuperMedia Litigation and the Dex Media Litigation, YPPI asserted claims based on the same theory: that Idearc failed to assume the License and, therefore, the subsequent use of YPPI's images constituted copyright infringement. YPPI attempts to downplay the essential similarity of the underlying events, alleging that only "some underlying events were the same in both cases." (YPPI Br. at 35). YPPI argues that the direct copyright infringement alleged in its Counterclaims is based on Dex Media's ***post-confirmation publication*** of Licensed Images, which lacks "essential similarity" with its prior claims based on SuperMedia's ***pre-petition transfer*** of Licensed Images to third-parties alleged in the prior litigation, which also included claims for breach of contract. (YPPI Br. at 29-30). YPPI further argues that claims in the Dex Media Action and the SuperMedia Litigation "require different evidence:" proof of SuperMedia's unauthorized transfer of the Licensed Images to third-parties in violation of the parties' License, on the one hand, versus proof of Dex Media's publication of the Licensed Images without any license, on the other hand. (*Id.* at 30-31). YPPI cites the *Athlone Industries* case, where the Third Circuit reversed dismissal of an action based on claim preclusion because "the suits involved different statutes, different acts, different wrongs and necessitated different evidence to support the different material facts alleged." *See United States*

*v. Athlone Indus., Inc.,* 746 F.2d 977, 986 (3d Cir. 1989). According to YPPI, the Dex Media Action and the SuperMedia Litigation also involve different acts and different wrongs. The Court, however, is not persuaded. YPPI's "different wrongs/different evidence" argument might appear logical if it was not predicated on YPPI's flip flop on the facts critical to the claims in the prior litigation – the assumption and validity of the License.

YPPI argues on appeal that the Bankruptcy Court erred in finding that the prior and subsequent suits involved "the same parties or their privies" because Dex Media was a close privy of SuperMedia. (*See* YPPI Br. at 26-28). The Bankruptcy Court noted that "SuperMedia is a wholly-owned subsidiary of Dex Media which justifies the finding of privity." *See Dex Media,* 564 B.R. at 214 (citing *Lubrizol Corp. v. Exxon Corp.,* 929 F.2d 96, 966 (3d Cir. 1991)). YPPI argues that the Bankruptcy Court erred in finding that SuperMedia was a privy of Dex Media based solely on a finding of a subsidiary-parent relationship. According to YPPI, the Bankruptcy Court failed to undertake the appropriate factual inquiry "requiring evidence of whether the parent controlled the earlier lawsuit and its interests were represented by the subsidiary in that earlier action." (YPPI Br. at 27 (quoting *Kaiser Group Int'l, Inc. v. Nova Hut a.s.,* 375 B.R. 120, 125 (D. Del. 2007).

The Court agrees with Dex Media that YPPI has waived this argument on appeal. In its Motion for Judgment, Dex Media argued that YPPI's claims in the Dex Media Action involved "the same parties or their privies" as the SuperMedia Litigation. (DEX 696-97). The record reflects that YPPI did not dispute this point in its opposition or raise it during oral argument. (*See* DEX 781-815; DEX 1055-1134). Having "never argued or mentioned" this issue below, YPPI has waived the right to raise it on appeal. *See C.A.C. v. United States,* 449 F. App'x 194, 197 (3d Cir. 2011). Even if the issue had been raised below, however, the element of privity is satisfied on this record. As Dex Media points out, unlike a new plaintiff, the Third Circuit has

held that "a lesser degree of privity is required for a new defendant to invoke claim preclusion" and this "lesser degree of privity" is satisfied so long as "there is a close or significant relationship between successive defendants." *Lubrizol*, 929 F.2d at 966. Here, SuperMedia is a wholly-owned affiliate of Dex Media, was the copyright defendant in the SuperMedia Litigation, and was a signatory to the License. The Court agrees that these facts support the Bankruptcy Court's finding of privity. *See Lubrizol*, 929 F.2d at 966 ("For purposes of claim preclusion in this case, there is a close and significant relationship between Exxon and Exxon Research" because "Exxon Research is a wholly owned affiliate of Exxon, was a defendant in the initial New Jersey action, and was a signatory to the Settlement Agreement.")

That YPPI abandoned its "failure to assume" claims in the SuperMedia Litigation has no effect on the applicability of claims preclusion, as is clear under the case law. *See e.g., Rouse*, 2008 WL 2914796, at *10 n.7 (a plaintiff "cannot avoid the applicability of res judicata, merely by choosing to abandon a claim that could have been pursued in [the prior action]"); *SupplyOne, Inc. v. Triad Packaging, Inc.*, 2014 WL 3676524, at *5 (E.D. Pa. July 24, 2014) ("abandonment of [a] claim" in a prior action "has no effect on whether res judicata should apply"); *Am Indus. Leasing Co. v. Law,* 458 F. Supp. 764, 769 (D. Md. 1978) ("Principles of [r]es judicata do not permit a litigant to abandon a claim in one proceeding between the parties so that it may assert the claim in another proceeding between the same parties"). The Bankruptcy Court properly held that YPPI's claims are barred by the doctrine of claim preclusion because not only could YPPI have raised those claims in the prior SuperMedia Litigation, it actually did so. YPPI raised and then abandoned its "failure to assume" theory claims on the eve of trial in the SuperMedia Litigation, and it cannot resurrect them in the separate litigation against SuperMedia's corporate parent.

Having determined that the Motion for Judgment was properly granted based on claim preclusion, the Court need not consider whether judicial estoppel and collateral estoppel provide

alternative basis for the Judgment on the Pleadings. In the interest of efficiency, however, the Court addresses the alternate bases for the Bankruptcy Court's ruling below.

## 2. Judicial Estoppel

"Judicial estoppel is a fact-specific, equitable doctrine, applied at courts' discretion." *In re Kane*, 628 F.3d 631, 638 (3d Cir. 2010). Judicial estoppel "is not intended to eliminate all inconsistencies no matter how slight or inadvertent they may be." *Id.* The basic principle of judicial estoppel, . . . is that absent any good explanation, a party should not be allowed to gain an advantage by litigation on one theory, and then seek an inconsistent advantage by pursuing an incompatible theory." *Ryan Operations G.P. v. Santiam-Midwest Lumber Co.*, 81 F.3d 355, 358 (3d Cir. 1996). The Third Circuit has identified certain criteria for determining when seemingly inconsistent litigation stances justify application of the doctrine:

> First, the party to be estopped must have taken two positions that are irreconcilably inconsistent. Second, judicial estoppel is unwarranted unless the party changed his or her position in bad faith – *i.e.*, with intent to play fast and loose with the court. Finally, a district may not employ judicial estoppel unless it is tailored to address the harm identified and no lesser sanction would adequately remedy the damage done by the litigant's misconduct.

*Montrose Med. Grp. Participating Sav. Plan v. Bulger*, 243 F.3d 773, 779-80 (3d Cir. 2001). Additionally, equity requires that the presiding court give the party to be estopped a meaningful opportunity to provide an explanation for its changed position. *Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. General Motors*, 337 F.3d 314, 319-20 (3d Cir. 2003).

The Bankruptcy Court found that, while YPPI alleged in the SuperMedia Litigation "that the License was valid and enforceable" it now asserts "that there was a failure to assume the License Agreement because Idearc breached the License Agreement in 2005 and 2006 – something YPPI knew had occurred before the conclusion of the SuperMedia Litigation." *Dex Media*, 564 B.R. at 215. Having abandoned the "failure to assume" claim, YPPI is now "reassert[ing] the claim that Dex Media has no rights under the License Agreement. YPPI cannot flip-flop its

position." *Id.* Similarly, YPPI introduced evidence of the print ads in the SuperMedia Litigation, not to show infringement but as evidence of the value of the print ads." *Id.* The Bankruptcy Court determined that YPPI's "inconsistent positions in disregard of prior statements is improper. The reversal of positions requires the Court to apply judicial estoppel and grant Dex Media judgment on the pleadings." *Id.* This Court reviews the decision whether to invoke judicial estoppel "only for abuse of discretion . . . [asking whether] its ruling is founded on an error of law or a misapplication of law to the facts." *Montrose*, 243 F.3d at 780.

YPPI argues that the Bankruptcy Court's application of judicial estoppel rests on factual and legal errors. (YPPI Br. at 35). YPPI argues that the Bankruptcy Court's application of judicial estoppel rests on erroneous findings that YPPI reversed two of its positions. Although YPPI maintained in the SuperMedia Litigation that the License was "valid and enforceable," (DEX 796 n.18), YPPI argues there is no inconsistency with its current position because it has not argued in the Dex Media Litigation that the License is "invalid" only that it was not properly assumed. (*See* YPPI Br. at 37 ("YPPI expressly alleged in the Dex Media Action that the Service Agreement, to which the License was part, was ***not assumed*** by Dex Media's predecessor in the Idearc Bankruptcy.")). According to YPPI, YPPI's Counterclaim merely alleges that: Idearc failed to take the statutory steps necessary to assume the Service Agreement; no rights under the Service Agreement remained or otherwise inured to the benefit of SuperMedia following the Idearc Bankruptcy, and no rights passed or inured to the benefit of Dex Media through the Merger or otherwise." (YPPI Br. at 38). Dex Media counters that "this is a semantic distinction without a substantive difference." (Dex Br. at 35). The Court agrees with Dex Media that, regardless of word choice, YPPI has taken conflicting positions. In the SuperMedia Litigation, YPPI stated: "Under the chapter 11 plan, Idearc Media's rights under the Agreement and License, subject to the Amendment, vested in SuperMedia." (DEX 74-75, ¶ 11). In the Dex Media Litigation, YPPI

asserts: "[N]o rights under the Service Agreement remained or otherwise inured to the benefit of SuperMedia following the Idearc Bankruptcy confirmation hearing." (DEX 665, ¶ 45).

YPPI further asserts that it did not take an "irreconcilably inconsistent position" regarding print ads. According to YPPI, its introduction of print ads in the SuperMedia Litigation was intended for the limited evidentiary purpose of establishing the value of its images and, in doing so, YPPI confirmed "that it was *not alleging in that case* that SuperMedia's print ads were an infringing use." (YPPI Br. at 38) (emphasis added). According to YPPI, such actions were not "irreconcilably inconsistent" with YPPI's position in the Dex Media Litigation that Dex Media's publication of print ads is an infringement. The Court agrees with Dex Media that YPPI did not just "fail to allege" that print ads were an infringing use in the SuperMedia Litigation; rather, YPPI represented that the print ads were not an infringing use.[5] YPPI's current position cannot be reconciled with its prior position.

YPPI further argues that the Bankruptcy Court "abused its discretion in holding that YPPI's reversal of positions requires the Bankruptcy Court to apply judicial estoppel." (YPPI Br. at 39). According to YPPI, the Third Circuit has been clear that merely reversing positions alone does not support application of judicial estoppel. *See Ryan Ops.*, 81 F.3d at 362; *EXDS, Inc. v. Ernst & Young LLP (In re EXDS, Inc.)*, 316 B.R. 817 (Bankr. D. Del. 2004) (finding application of judicial estoppel inappropriate where party to be estopped was not trying to manipulate the court or bringing claims in bad faith); *In re TWA*, 261 B.R. 103, 111 (D. Del. 2001) (judicial estoppel inapplicable where there is no bad faith). While the Court agrees, the Bankruptcy Court's decision

---

[5] At trial, YPPI's counsel stated: "[W]e don't dispute, of course, that they license[d] the images and they were allowed to use them in printouts." (DEX 331 at 62:21-23; *see also* DEX 358 at 186:22 ("I'm not saying the uses are infringing.")). YPPI's principal, Mr. Moore, testified: "I do not think that the print ad is a violation of the license agreement." (DEX 365 at 269:7-17). Moore's testimony was clear: Q. "And SuperMedia was allowed to use your images in print ads, correct?" A. "Yes, they were." (DEX 365 at 269:12-14).

did not rest *merely* on reversing position, and the record provides ample support for the conclusion that YPPI acted with an intent to play fast and loose with the Court.

YPPI contends that the Bankruptcy Court abused its discretion by applying judicial estoppel based merely on inconsistent positions without finding that YPPI changed its positions in "bad faith." (YPPI Br. at 39-40). According to YPPI, "[a]pplication of judicial estoppel in the Third Circuit requires a showing of intentional wrongdoing." (*Id.* (citing *Ryan Ops.*, 81 F.3d at 362; *see also Kane*, 628 F.3d at 639 (affirming District Court's decision not to apply judicial estoppel where there was no finding of bad faith))). Conversely, Dex Media argues the magic words "bad faith" are not required. (Dex Br. at 37-38 (citing *Oneida Motor Freight, Inc. v. United Jersey Bank*, 848 F.2d 414, 419-20 (3d Cir. 1988) (applying judicial estoppel with no express finding of bad faith))). Dex Media argues that all that is required is that the trial court's "findings and conclusions" be sufficient to demonstrate bad faith. *In re Nat'l Med. Imaging, LLC*, 439 B.R. 837, 852-53 (E.D. Pa. 2009).

While YPPI has reversed positions on several critical issues, that is not enough. "Asserting inconsistent positions does not trigger the application of judicial estoppel unless 'intentional self-contradiction is . . . used as a means of obtaining unfair advantage.'" *Ryan Ops.*, 81 F.3d at 362 (citing *Scarano v. Central R. Co. of New Jersey*, 203 F.2d 510, 513 (3d Cir. 1953). The trial court must "discern" such intent and not merely "infer" it. *See Klein v. Stahl GMBH & Co. Maschinefabrik*, 185 F.3d 98, 111 n.13 (3d Cir. 1999). An evidentiary hearing is not required, and intent may be discerned upon a review of the record. *See id.* Here, Dex Media argues, Judge Gross's findings are more than sufficient to discern bad faith: specifically, intentional wrongdoing is satisfied by YPPI's tactical game of "wait and see." (Dex Br. at 38). According to Dex Media, YPPI had all the information it needed to assert its "failure to assume" theory in the SuperMedia Litigation and did indeed assert it in its Amended Proof of Claim. But YPPI chose to abandon that

theory and pursue one based on the validity of the License which contained a fee-shifting provision and the possibility of recovery of its attorneys' fees. Following the Bankruptcy Court's ruling that "YPPI cannot enforce the License Agreement, including the right to attorneys' fees," YPPI reversed course by filing the Florida Action and trying its luck in a different court. The Third Circuit has ruled that the doctrine of judicial estoppel" is "designed to prevent litigants from engaging in precisely this kind of 'tactical' decision making." *See Anjelino v. N.Y. Times Co.*, 200 F.3d 73, 100 (3d Cir. 1999).

YPPI's explanation for its change in position is unavailing. According to YPPI, the Bankruptcy Court only "determined the facts necessary to trigger" YPPI's failure to assume claim under 11 U.S.C. § 365(b)(1) in the April 2016 Opinion, without which, YPPI appears to argue, it could not have concluded that the License was not properly assumed in the Idearc Bankruptcy. Having simply adopted the Bankruptcy Court's conclusions, YPPI argues its new position "is not an affront to the Bankruptcy Court or the integrity of the judicial system, just the opposite." (*Id.*). Dex Media disputes this, arguing that YPPI had all of the facts "necessary to trigger" its failure to assume claim in June 2015, when SuperMedia admitted to the 2005 and 2006 transfers, which transfers are, according to YPPI, the uncured prepetition breaches that prevented Idearc from assuming the License. The Court agrees. YPPI's triggering argument does not hold up where YPPI asserted its "failure to assume" claim in its Amended Proof of Claim filed on October 23, 2015 – months before the April 2016 Opinion was issued.

Finally, the Court rejects YPPI's argument that the Bankruptcy Court ignored the judicial estoppel requirement that the first court must have accepted the party's earlier inconsistent position. (YPPI Br. at 41-44). *New Hampshire v. Maine*, 532 U.S. 742, 750-51 (2001). YPPI argues that, in the SuperMedia Litigation, the Bankruptcy Court rejected YPPI's argument that the License was properly assumed in the Idearc Bankruptcy. (Appx. YPPI 527; YPPI 969). The

Bankruptcy Court, however, adopted YPPI's prior position that the License was valid and enforceable when it entered a liability judgment finding that SuperMedia breached the License's transfer restriction in December 2014. *SuperMedia*, 2014 WL 7403448, at *20. As Dex Media points out, SuperMedia could not have breached a License that was never valid in the first place. The Bankruptcy Court likewise adopted YPPI's prior position that print ads were not infringements of YPPI's copyrights when it found, in its December 2014 Opinion, that "SuperMedia retains to the present the perpetual, unlimited right to use YPPI's images under the License." *Id.* at *9. It would not make sense for SuperMedia to retain the "perpetual, unlimited right to use YPPI's images under the License" and, at the same time, for SuperMedia's exercise of that right through the creation of print ads to constitute copyright infringement.

There was "ample evidence in the record from which an inference of deliberate manipulation could be drawn." *Ryan Ops.*, 81 F.3d at 363. *See* AdMedia Decision (DEX 504, 520, 524); Rule 60(b) Decision (DEX 230; 235-38). Because there is no error of law or misapplication of law to the facts, the Court finds no abuse of discretion. *Montrose*, 243 F.3d at 780.

### 3. Collateral Estoppel

Collateral estoppel "bars the relitigation of a fact or legal issue that has already been actually litigated." *Wallace v. United Parcel Serv.*, 387 F. App'x 127, 128 (3d Cir. 2010). It applies where "(1) the identical issue was previously adjudicated; (2) the issue was actually litigated; (3) the previous determination was necessary to the decision; and (4) the party being precluded from relitigating the issue was fully represented in the prior action." *Henglein v. Colt Indus. Op. Corp.*, 260 F.3d 201, 209 (3d Cir. 2001).

The Bankruptcy Court held that YPPI's claims in the Dex Media Litigation were barred by collateral estoppel because those claims hinged on two issues that had been litigated and decided

against YPPI in the SuperMedia Litigation. *Dex Media*, 564 B.R. at 216. The first issue is whether the License was an executory contract at the time of the Idearc Bankruptcy. Dex Media argues that the Bankruptcy Court found that it was not, and this finding dooms YPPI's "failure to assume" claim: as a non-executory contract, the License could be neither assumed or rejected in the Idearc Bankruptcy. (Dex Br. at 43). The second issue is whether SuperMedia transferred the Licensed Images to Dex Media. Dex Media argues that the Bankruptcy Court found that there was no transfer, and this also doomed YPPI's "failure to assume" claim: absent a transfer, there was no basis to conclude that Dex Media possessed or was using the Licensed Images. Based on the foregoing, the Bankruptcy Court concluded that "YPPI [wa]s therefore collaterally estopped from establishing two elements which are essential to its Counterclaims." (*Id.*). YPPI argues on appeal that the Bankruptcy Court's ruling that collateral estoppel barred YPPI's Counterclaim is unsupported both legally and factually. (*See* YPPI Br. at 44-49).

With respect to the nature of the License during the Idearc Bankruptcy, YPPI argues that although the Bankruptcy Court found in 2013 that the License was not an executory contract at the time of the then-pending SuperMedia Litigation, it "changed its analysis" and made later "rulings" in 2015 and 2016 that the License was executory in the Idearc Bankruptcy. The issue of whether the License is an executory contract was raised in the Assumption Motion filed on May 30, 2013. After a full round of briefing the Bankruptcy Court denied YPPI's motion. The Bankruptcy Court explained that "[f]or a contract to be executory, there must be unperformed obligations on behalf of both parties." In the case of the License, the Bankruptcy Court ruled, "once delivery of images and the payments were completed nearly ten years ago [in 2005], the parties ha[d] received the benefit of their bargain." (*Id.*). YPPI moved for reconsideration of this ruling, and, after another full round of briefing, the Bankruptcy Court confirmed its prior ruling. (DEX 40-41). Based on these prior rulings the Bankruptcy Court determined that YPPI was precluded from again claiming

that the License was an executory contract. The Bankruptcy Court considered and rejected YPPI's argument that there had been some change in its analysis or later rulings on the executory nature of the License. On appeal, the Court finds no support for YPPI's contention. The later "rulings" that YPPI cites are not rulings on the executory nature of the License at all. In ruling on cross-motions for summary judgment in 2015, the Bankruptcy Court made the statement that "in the Idearc bankruptcy YPPI was an executory contract claimant." *In re SuperMedia*, 540 B.R. 85, 93 (Bankr. D. Del. Oct. 27, 2015). In the April 2016 Opinion, the Bankruptcy Court similarly described the License as an executory contract in the Idearc Bankruptcy. *SuperMedia*, 2016 WL 1367070 at *5. These characterizations were not rulings on the executory nature of the contract. Dex Media points out that, as is common for administrative convenience, Idearc's Chapter 11 plan listed every contract to which Idearc was a party – executory or not – on a schedule. It was not until YPPI filed the Assumption Motion that the Bankruptcy Court addressed whether the License was in fact executory. The Court finds no error in the Bankruptcy Court's conclusion that the issue of whether the License was an executory contract in the Idearc Bankruptcy, filed 2009, has been adjudicated. The Bankruptcy Court has twice ruled that the License was no longer executory once delivery of the images and the payments were completed in 2005, years before the 2009 Idearc Bankruptcy was filed.

YPPI does not dispute that the issue of whether SuperMedia transferred the images to Dex Media was actually litigated and decided in the SuperMedia litigation. The Bankruptcy Court held three times that there was no evidence of a transfer. (DEX 213-14; DEX 224-25; DEX 1148). Rather, YPPI argues that the Bankruptcy Court erroneously concluded that YPPI was collaterally estopped from establishing elements essential to its Counterclaims. *Dex Media*, 564 B.R. at 216. YPPI argues that proving that a transfer of the Licensed Images to Dex Media occurred is not an "essential" element to YPPI's copyright infringement claim. According to YPPI, the fact remains

that Dex Media possessed and still possesses YPPI's copyrighted images and continues publishing them without YPPI's authorization. (YPPI Br. at 49). Dex Media disagrees, arguing that the Bankruptcy Court's prior ruling "ruptures" YPPI's copyright claims: having failed to establish that a transfer to Dex Media took place, YPPI is left to argue that Dex Media had "access to" the Licensed Images by virtue of the "overlapping operations" with SuperMedia. The Bankruptcy Court has already rejected this argument, finding that the "combin[ed] operations" of the two entities did not result in a "physical transfer" of the Licensed Images to Dex Media. (DEX 224-25). Despite having taken ample discovery on the issue, the Bankruptcy Court found no evidence that Dex Media actually possessed the Licensed Images. The Bankruptcy Court ruled that Dex Media "does not own or have legal title to its subsidiary's assets," and that "YPPI was ably represented and failed twice to establish the transfer [to Dex Media] occurred." *Dex Media*, 564 B.R. at 216. The Court finds no error in the Bankruptcy Court's conclusion. Absent a showing that Dex Media possessed the Licensed Images, YPPI's copyright claims must fail. The Bankruptcy Court held three times that there was no evidence of a transfer and correctly held that YPPI was estopped from asserting this claim yet again.

## B.   Declaratory Judgment

### 1.   Separate Order Requirement

Rule 58 of the Federal Rules of Civil Procedure, made applicable to the adversary proceeding by Rule 7058 of the Federal Rules of Bankruptcy Procedure, provides that, with exceptions not applicable here, "[e]very judgment . . . must be set out in a separate document." Fed. R. Civ. P. 58(a). Such a judgment is only considered "entered" when it is "set out in a separate document" that meets certain criteria. Fed. R. Civ. P. 58(c). The Third Circuit has stated that, for a decision or order to qualify as a "judgment" set out in a "separate document" under Rule 58, it "must, generally speaking, be a self-contained document, saying who has won *and what relief has*

**been awarded**, but omitting the reasons for this disposition . . ." *Local Union No. 1992 of Int'l Bhd. of Elec. Workers v. Okonite Co.*, 358 F.3d 278, 284 (3d Cir. 2004), *as amended* (Jan. 27, 2004) (emphasis added); *Lawson v. Nat'l Cont'l-Progressive Ins. Co.*, 347 F. App'x 741, 743 (3d Cir. 2009) ("A judgment is treated as a separate document if it: (1) is self contained and separate from the opinion, (2) **notes the relief granted**, and (3) omits . . . the trial court's reasons for disposing of the claims.") (emphasis added).

Dex Media argues that the Adversary Complaint sought, *inter alia*, a declaratory judgment of noninfringement and that, prior to the entry of the Declaratory Judgment, there was no document granting such relief. (*See* DEX 1152). "While the Bankruptcy Court's January 19, 2017 Order indicated that Dex Media succeeded on its Motion [for Judgment on the Pleadings], it did not set forth the specific declaratory relief to which Dex Media was entitled. Dex Media's Adversary Complaint sought a declaratory judgment of noninfringement, and the January 19, 2017 order did not specifically address this requested relief. Rule 58(a), however, requires judgments to address such relief." (*Id.* at 54-55 (citing *Transamerica Ins. Co. v. South*, 975 F.2d 321, 325 (7th Cir. 1992)). Therefore, Dex Media argues, the Bankruptcy Court properly entered the separate Declaratory Judgment. Conversely, YPPI argues that the Bankruptcy Court should not have entered the separate Declaratory Judgment because the Bankruptcy Court's Opinion and Order already fully complied with Rule 58(a). According to YPPI, the Bankruptcy Court's Order (YPPI Appx. 807) meets all three criteria because it is "self contained," "notes the relief granted" in paragraph 1, "omits . . . the trial court's reasons for disposing of the claims," and expressly notes that such reasons are "explained in the accompanying Opinion." (YPPI Br. at 53). According to YPPI, no further judgment was appropriate or needed, and no authority exists for entering a second judgment on the same motion or pleadings. YPPI argues that the Bankruptcy Court's entry of the

later Declaratory Judgment "was error and achieved the unjust result of excusing Dex Media from missing the strict deadline for filing a motion for attorneys' fees and costs." (*Id.*).

Count I of the Complaint sought declaratory relief regarding Dex Media's noninfringement of YPPI's copyrights. (Adv. D.I. 1 at ¶¶ 41-43). Contrary to YPPI's assertions, while the Court's January 19, 2017 Order granted Dex Media's Motion for Judgment on the Pleadings and, thus, specified "who has won," the Bankruptcy Court's Order did not set forth "what relief has been awarded" to Dex Media as a result of the Bankruptcy Court's ruling, including the precise declaratory relief to which Dex Media was entitled, and the formal disallowance of YPPI's purported claims. (Id. at ¶¶ 41-43; ¶¶ 48-51). The Order contained the following:

1. The portion of the Motion requesting judgment on the pleadings for *res judicata*, judicial estoppel and collateral estoppel is granted.

2. The portion of the Motion addressing the motion to dismiss for failure to state a claim is denied.

(Adv. D.I. 41; DEX 1152). The requirement that a judgment set forth the precise relief being awarded is particularly important where, as here, the Court's ruling grants declaratory relief. *See Massey Ferguson Div. of Varity Corp. v. Gurley*, 51 F.3d 102, 104 (7th Cir. 1995) (order in declaratory judgment action granting defendants summary judgment did not satisfy Rule 58; "It says that motions are being granted ('in part') but does not say who [among the defendants] is entitled to what relief, an essential ingredient of a proper judgment."). In such circumstances, the Court "must select the language of the declaratory judgment" that fits its ruling, and such language and judgment "must be set forth on a separate paper." *See Foremost Sales Promotions, Inc. v. Dir., Bureau of Alcohol, Tobacco & Firearms*, 812 F.2d 1044, 1045 (7th Cir. 1987) ("The opinion contemplated the entry of a declaratory judgment" but "[was] not itself a declaratory judgment, which must be set forth on a separate paper."); *Transamerica*, 975 F.2d at 325 ("Transamerica's complaint requested declaratory relief and, while the district court granted summary judgment in

favor of Transamerica on March 22, the court failed to provide the declaratory relief requested. This omission rendered the March 22 judgment nonfinal and unappealable [under Rule 58(a)].").

Dex Media further argues that, even assuming YPPI is correct, and the Order the Bankruptcy Court issued alongside the January 2017 Opinion, "had already fully complied with Rule 58(a)" of the Federal Rules of Civil Procedure, that is not a basis on which YPPI can seek reversal of the Declaratory Judgment. (Dex Br. at 54). The Court agrees. Where no final judgment has been set out in a "separate document" following an otherwise dispositive ruling like the one in the Bankruptcy Court's Opinion and Order, Rule 58 provides that "[a] party may request that judgment be set out in a separate document as required by Rule 58(a)." Fed. R. Civ. P. 58(d). There is nothing in Rule 58 that restricts the Bankruptcy Court's ability to enter an additional document to further clarify its ruling, and YPPI does not cite a single case suggesting that a trial court's clarification of a prior decision, or the entry of multiple judgments under Rule 58(a), constitutes reversible error. The Court finds no error in the entry of the Declaratory Judgment specifying the declaratory relief granted.

### 2. Inaccurate Infringement Ruling

YPPI argues that the Declaratory Judgment must be reversed because it "does not accurately reflect the Bankruptcy Court's rulings." (YPPI Br. at 54). YPPI argues that "paragraph 2 of the Declaratory Judgmen[t] is not accurate because it states that "Dex Media has *not infringed* any of YPPI's copyrights as alleged in YPPI's Answer and Counterclaims." The crux of YPPI's objection is that the "Bankruptcy Court never made a finding" regarding whether Dex Media infringed YPPI's copyrights but instead "found that YPPI is precluded from asserting its copyright claims." (*Id*. at 53). YPPI argues that "no such ruling was made nor could have been made" because the Bankruptcy Court found in its Opinion that YPPI was precluded from pursuing its copyright infringement counterclaim . . . based on claim preclusion, judicial estoppel, and

collateral estoppel." "No other findings were made," "no infringement analysis was conducted and no conclusion about infringement was reached." (*Id.* at 54). Conversely, Dex Media argues that, as the copyright claimant, YPPI bore the "burden to prove that acts of infringement [by Dex Media] occurred." (Dex Br. at 55-56 (citing *William A. Graham Co. v. Haughey*, 568 F.3d 425, 430 n.2 (3d Cir. 2009)). In the Opinion, the Bankruptcy Court determined that YPPI was precluded, judicially estopped, and collaterally estopped from asserting that Dex Media had infringed YPPI's copyrights, so including such a ruling is not inaccurate. The Court agrees with Dex Media. Given that YPPI is barred from even asserting that Dex Media committed any acts of infringement, let alone meeting its burden of proving such infringement, there is nothing "inaccurate" about the Bankruptcy Court's issuance of a declaration of non-infringement in the Declaratory Judgment.

### 3. Improper Extension of the 14-Day Deadline

A motion for attorneys' fees "must … be filed no later than 14 days after the entry of judgment." Fed. R. Civ. P. 54(d)(2)(B)(i). YPPI claims that Dex Media's filing of the Certification and Proposed Declaratory Judgment was a ploy "to reset the clock" on the 14-day deadline to file a motion for attorneys' fees because it "forgot" to file it. (*See* YPPI Br. at 50 ("But then, Dex Media forgot. Dex Media missed the deadline for filing a motion for award of attorneys' fees")). Dex Media calls this argument irresponsible:

> YPPI omits to mention the fact that Dex Media approached YPPI for its consent to file a Certification of Counsel containing the proposed [Declaratory] Judgment *before* the time for Dex Media's fee application purportedly expired. The only reason Dex Media did not file the Certification, or its fee application, at that time was because YPPI's counsel requested that Dex Media refrain from doing so until it had time to review the Certification. YPPI's counsel then waited nearly two weeks before advising Dex Media that YPPI would not consent to the proposed Final Judgment. If what Dex Media wanted was an extension of time to file its fee application, it could have simply requested such an extension from the Bankruptcy Court (and would have received an extension automatically by operation of Local Bankruptcy Rule 9006-2). In truth, what Dex Media wanted was to work cooperatively with YPPI to craft a Rule 58(a) form of judgment that the parties

33

> jointly could present to the Bankruptcy Court. Little did Dex Media know that
> YPPI would seize upon Dex Media's good faith efforts in a disingenuous attempt
> to challenge Dex Media's right to attorneys' fees.

(Dex Br. at 56-57) (citations omitted). YPPI does not dispute that Dex Media proposed the form

of Declaratory Judgment prior to the deadline (or that YPPI did not respond for two weeks), which

undermines YPPI's argument that Dex Media requested entry of the Declaratory Judgment as a

ploy. (*See* YPPI Reply at 29-30). In response, YPPI states only that these events do not "rebut

the analysis or case law contained in YPPI's initial brief." (*Id.* at 30). The record supports Dex

Media's version of events. (*See* DEX 1163-70; DEX 1178).

The 14-day period established by Rule 54(d)(2)(B) for the filing of a motion for attorneys'

fees was introduced in large part to avoid piecemeal appeals of merits and fee questions, and that

14-day period begins to run with the entry of a final judgment. *Weyant v. Okst*, 198 F.3d 311, 315

(2d Cir. 1999). For the reasons set forth above, the Order entered did not contain the declaratory

relief awarded and was not a final judgment triggering the 14-day period. Additionally, the 14-

day deadline may be – and in this case was – extended by order. *S.A. Healey Co. v. Milwaukee*

*Metropolitan Sewerage Dist.*, 60 F.3d 305 (7th Cir. 1995) ("When attorney fees are taxed as costs,

deadline for seeking them is 14 days, unless this time is extended by order."), *cert. denied*,

516 U.S. 1010 (1995). YPPI argues that it should have had a chance to respond to a request for

extension of the deadline. (*See* YPPI Br. at 55). The certification of counsel and proposed form

of Declaratory Judgment contained the deadline for fee application, and YPPI filed a response

addressing this very issue. (*See* Adv. D.I. 49, 50, 52, 53, 54). This argument is not a basis to

reverse the entry of the Declaratory Judgment.

## C.    Fee Award[6]

The primary objective of the Copyright Act is to encourage production of original literary, artistic, and musical expression for the good of the public. *See Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 524 (1994). Section 505 of the Copyright Act provides that "the court in its discretion may allow the recovery of full costs by or against any party other than the United States or an officer thereof." 17 U.S.C. § 505. "[T]he court may also award a reasonable attorney's fee to the prevailing party as part of the costs." *Id.* The purpose of this fee shifting rule is "to encourage parties [in copyright actions] with strong legal positions to stand on their rights" and "deter[] those with weak [legal positions] from proceeding with litigation." *Kirtsaeng*, 136 S. Ct. at 1982, 1986.

In *Fogerty*, the Supreme Court held that attorneys' fees are not to be awarded to the prevailing party "as a matter of course." *See Fogerty*, 510 U.S. at 533. As the statute uses the word "may," which "clearly connotes discretion," "[t]he automatic awarding of attorneys' fees to the prevailing party as a matter of course would pretermit the exercise of such discretion." *Id.* The Supreme Court noted that there is no precise rule or formula in making this determination; rather, a court's equitable discretion should be exercised. *Id.* at 534. However, the Supreme Court also noted with approval several non-exclusive factors identified by the Third Circuit in *Lieb v. Topstone Indus., Inc.,* 788 F.2d 151 (3d Cir. 1986), as appropriate to "guide the court's discretion in awarding attorney's fees, so long as such factors are faithful to the purposes of the Copyright Act and are applied to prevailing plaintiffs and defendants in an evenhanded manner." *Id.* at n.19. Those factors include "frivolousness, motivation, the objective unreasonableness (both in the

---

[6]    Pleadings referenced in Section III (C) of this Memorandum Opinion are docketed at Civ. No. 18-197-MN and are cited herein as follows: YPPI's Opening Brief (D.I. 16) as "YPPI Br. at __"; YPPI's appendix (D.I. 17, 18) as "YPPI Appx. __"; Dex Media's redacted answering brief (D.I. 21) as "Dex Br. at __"; Dex Media's appendix (D.I. 22) as "DEX __"; and YPPI's reply brief (D.I. 26) as "YPPI Reply at __."

factual and in the legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Id.; Lieb*, 788 F.2d at 156.

The Supreme Court recently reaffirmed that § 505 fee awards are discretionary. *Kirtsaeng,* 136 S. Ct. at 1983. As the Third Circuit observed, *Kirtsaeng* "placed extra, but not controlling, weight on the 'objective reasonableness' factor, and reminded courts to consider the totality of the circumstances and make a 'particularized, case-by-case assessment.'" *Leonard v. Stemtech Int'l Inc.*, 834 F.3d 376, 403 (3d Cir. 2016). However, a finding of objective unreasonableness is not a prerequisite to impose fee shifting under the Copyright Act; a court may award fees and costs "to deter repeated instances of copyright infringement or overaggressive assertions of copyright claims, again even if the losing position was reasonable in a particular case." *Kirtsaeng,* 136 S. Ct. at 1989.

The trial court "is entrusted with considerable discretion to determine whether an award should be granted to the prevailing party, and, if so, whether the amount requested is reasonable under the circumstances." *Lowe v. Loud Records*, 126 F.3d App'x 545, 547 (3d Cir. 2005) (quoting *Lieb*, 788 F.2d at 155-56). Because an award of fees under the Copyright Act is discretionary, "our standard of review is limited to determining whether that power has been abused." *Lieb*, 788 at 154. "If the ruling of the court rests on factual findings, we may reverse only if they are clearly erroneous. If the trial court decided the issue on a legal precept, our review is plenary." *Id.* A finding is "'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *U.S. v. Pelullo*, 173 F.3d 131, 135 (3d Cir. 1999) (quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 365 (1948)).

## 1.     Objective Unreasonableness

In reaching its determination that an award of attorneys' fees was appropriate under the Copyright Act, the Bankruptcy Court was "convinced beyond near certainty that YPPI's lawsuit against Dex Media was a situation of 'objective unreasonableness.'"  (Adv. D.I. 104 at 4).   In reaching this conclusion, the Bankruptcy Court found that YPPI's claims against Dex Media were premised upon assertions that were "contrary to its previous representations to the Court in the SuperMedia action."   *Id.*   On appeal, YPPI argues that the Bankruptcy Court clearly erred in concluding that its Counterclaims were objectively unreasonable.

The record reflects that YPPI changed its position on several critical issues in this case. YPPI admits to reversing its position on these issues[7] but argues that its change in position was not in bad faith; rather, its change in position regarding the License's validity was based on "an express finding made by the Bankruptcy Court in the earlier SuperMedia case" that SuperMedia transferred YPPI's images to its third-party contractors in 2005 and 2006 in breach of the License.   According to YPPI, it simply "accepted" the Bankruptcy Court's finding in the earlier litigation, that a breach had occurred and that application of 11 U.S.C. § 365(b)(1) leads to the conclusion that no assumption could have occurred.   Therefore, YPPI argues, its change in position was in reliance on a previous ruling and cannot be bad faith.  (YPPI Br. at 9, 23).   Dex Media argues that the Bankruptcy Court's finding of objective unreasonableness was compelled by the record below, and that a finding of bad faith is not required.  (Dex Br. at 25 (citing *Lieb*, 788 F.2d at 156)).   The

---

[7]     YPPI acknowledged as much in its opposition to Dex Media's Motion for Judgment on the Pleadings (YPPI Appx. 526, 528):

> Admittedly, however, YPPI did [] assert in the SuperMedia case that the License . . . was valid and enforceable;
> . . .
> It is true that, prior to this Court's SuperMedia Final Ruling, YPPI agreed that use of its copyrighted images in print ads was non-infringing.

Court rejects YPPI's argument for the same reason that the Bankruptcy Court rejected it: YPPI knew about the timing of SuperMedia's transfers "*before* the conclusion of the SuperMedia Litigation." *Dex Media*, 564 B.R. at 215. As the Bankruptcy Court found:

> YPPI first alleged that the License Agreement between SuperMedia and YPPI was valid and enforceable. Later, YPPI asserted [in the SuperMedia Litigation] that there was a failure to assume the License Agreement because Idearc breached the License Agreement in 2005 and 2006 – *something YPPI knew had occurred before the conclusion of the SuperMedia Litigation*. However, YPPI subsequently abandoned the "failure to assume" claim. Now, [in the Dex Media Litigation] YPPI is reasserting the claim that Dex Media has no rights under the License Agreement. YPPI cannot flip-flop its position now.

*Id.* (emphasis added). The reassertion of a previously abandoned claims in new litigation against the same parties is objectively unreasonable.

YPPI further argues that it was not objectively unreasonable to sue Dex Media after having sued SuperMedia because YPPI's claims are based on acts of infringement by Dex Media since May 1, 2013, which is the day after the last date covered by any claims against SuperMedia. (YPPI Br. at 23). YPPI argues, "these were new claims against a new party, which claims were not and could not have been raised in the SuperMedia litigation." (*Id.* at 24). But YPPI not only could have raised these claims in the SuperMedia litigation – it did. (DEX 316, ¶ 26). Under YPPI's "failure to assume" theory, as set forth in its Amended Proof of Claim, "*any use* or transfer of the Licensed Images by SuperMedia *at any point in time* has been a violation of Yellow Pages' copyrights in the Licensed Images." (*Id.*). As the Bankruptcy Court correctly noted in entering judgment against YPPI on its "new" claims on the basis of *res judicata*, the fact that these claims address a different or later time period does not save them, as "the claims are based on events that pre-date the filing of the SuperMedia Litigation." The Bankruptcy Court's finding of objective unreasonableness of these claims was not clearly erroneous.[8]

---

[8]     YPPI relies on *Leonard*, a case in which this Court denied a defendants' motion for attorneys' fees, concluding that the defendants' decision to file a second copyright suit

## 2.     Deterrence

Whether the need for deterrence warrants fee shifting depends on the facts and circumstances of each individual case, and the Bankruptcy Court is required to make a particularized, case-by-case assessment in awarding attorneys' fees. *Kirtsaeng*, 136 S. Ct. at 1985. The Bankruptcy Court found it "clear that YPPI is now in the business of litigation." (*Id.* at 7). YPPI "has no income from the sale of its photographs, but has brought suit against SuperMedia, Dex Media, TaTa, Inc. and others." (*Id.*). In exercising its discretion to award reasonable fees in this case, the Bankruptcy Court found that, in addition to the objective unreasonableness of YPPI's claims, deterrence was "an important consideration:"

> Here, assessing the case on a particularized basis, YPPI filed the Dex Media lawsuit mere weeks after the Court's ruling in the SuperMedia case. YPPI waited months to serve Dex Media with the Complaint in the Florida Action. The Complaint in the Florida Action also asserts positions contrary to YPPI's claims in previous litigation. Deterrence is therefore an important consideration. Fee shifting will deter the filing of weak law suits.

(Adv. D.I. 104 at 4-5 (citing *Kirtsaeng*, 136 S. Ct. at 1986; *Stemtech Int'l, Inc.*, 834 F.3d at 403)). After presiding over four years of litigation over YPPI's infringement claims, the Bankruptcy Court concluded that it is "very important for SuperMedia to end YPPI's harassment." (*Id.* at 4). YPPI argues on appeal that "[n]o evidence supports a finding that YPPI needs to be deterred from filing frivolous cases." (YPPI Br. at 26-27). According to Dex Media, YPPI misses the point: the

---

"was not an end-run around" the Court's adverse ruling in the first suit, but rather stemmed from plaintiff's belief that new infringing activity had occurred. *Leonard v. Stemtech Int'l*, 834 F.3d 376 (3d Cir. 2016). This case, however, differs from *Leonard;* there, the Third Circuit found no abuse of discretion in denying a fee request where the trial court determined there was no evidence that the suit was objectively unreasonable. *See id.* at 403. In contrast, here, the Bankruptcy Court was "convinced beyond near certainty that YPPI's lawsuit against Dex Media was a situation of objective unreasonableness" including YPPI's assertion of "claims contrary to its previous representations to the Court in the SuperMedia action." (Adv. D.I. 104 at 4).

need for deterrence is supported by this very case, which "should never have been filed." (Dex Br. at 30).

Section 505 affords courts "wide latitude to award attorneys' fees based on the totality of circumstances in a case." *Kirtsaeng*, 136 S. Ct. at 1985. Based on this record, the Court finds no error in the Bankruptcy Court's consideration of deterrence as one of the factors in awarding attorneys' fees. YPPI knowingly adopted "inconsistent positions in disregard of prior statements," and the record reflects that Dex Media was forced to expend significant fees to defend those claims. *Dex Media*, 564 B.R. at 215. In addition to the record of misrepresentations in the litigation between the parties, as detailed in the AdMedia Decision and the Rule 60(b) Decision, the Bankruptcy Court spent four years presiding over YPPI's litigation tactics, including three separate infringement actions, and was uniquely positioned to find that fee shifting was appropriate to deter YPPI from filing additional lawsuits. Because this finding is not clearly erroneous, the Court finds no abuse of discretion in the Bankruptcy Court's consideration of deterrence.

### 3. Financial Ruin

The Copyright Act's fee shifting provision provides for discretionary award of fees and costs with the intent of deterring the filing of weak law suits. *Kirtsaeng*, 136 S. Ct. at 1986. In its other cases, YPPI has argued that awarding fees to the prevailing party is the rule, not the exception. (*See* Adv. D.I. 104 at 3 (citing YPPI's motion for fees and costs filed in copyright infringement litigation against Ziplocal, LP and Yellow Pages Group, LLC in the District Court for the Middle District of Florida, Case No.8:12-CV-755-T-26EAJ)). In opposition to the award of fees here, however, YPPI submitted declarations[9] of its principal Moore indicating that, as of January 9, 2018, YPPI had only $1,016.23 in "cash on hand" and no income. The Bankruptcy Court took notice that, *inter alia*, YPPI has earned more than $4 million from copyright lawsuits

---

[9] Adv. D.I. 91-1 & Adv. D.I. 100 ("Moore Declaration").

since 2009 and concluded that Dex Media "had not presented a clear record of its financial circumstances." (Adv. D.I. 104 at 10).

On appeal, YPPI cites the Third Circuit's decision in *Lieb*, which notes that the aims of § 505 are "compensation and deterrence where appropriate, but not ruination." *Lieb*, 788 F.2d at 156. YPPI argues that the Bankruptcy Court erred in awarding fees that will result in the "financial ruination" of its business. As the Moore Declaration demonstrates, and the Bankruptcy Court found, YPPI's "business" earns "no income from the sale of its photographs." (Adv. D.I. 104 at 7). YPPI's argument would mean that regardless of how weak or objectively unreasonable its infringement claims, shifting of fees in any amount was an abuse of the Bankruptcy Court's discretion because *any* fee award (at least greater than $1,000) would result in YPPI's financial ruination. This is not the law.

YPPI further argues that the Moore Declaration was the only uncontested evidence of its financial condition, and that, in determining a reasonable fee award, the Bankruptcy Court erred in failing to consider such evidence that fee shifting would result in YPPI's financial ruin. YPPI incorrectly characterizes the Moore Declaration as uncontested – it was clearly contested. (*See* YPPI Appx. 1471). The record before the Bankruptcy Court showed that YPPI has settled actions for, or been awarded, significant sums in infringement litigation, which its counsel has conceded. (*See* DEX 490-91 at 37:12-38:13; DEX 492 at 70:5-9; DEX 515; YPPI Appx. 1376, 1543). Settlement agreements reflecting significant settlement amounts were part of the record in the SuperMedia Litigation, and the Bankruptcy Court could take judicial notice of them. *See Jones v. Lapina*, 450 F. App'x 103, 108 (3d Cir. 20011) ("A court may take judicial notice of the record from a previous court proceeding between the parties."); *United States v. Webber*, 270 F. Supp. 286, 289 (D. Del. 1967) *aff'd* 396 F.2d 381 (3d Cir. 1968) ("In this Circuit, it is clear that a District

Court may take judicial notice of the records of prior cases in its own court."). They are also part of the record under seal in the Fee Award. (*See* YPPI Appx. 1471).

YPPI argues that despite evidence of these sizeable settlements, Dex Media has provided no evidence that YPPI has actually received any proceeds from them. (*See* YPPI Reply at 8-9). At best, the Moore Declaration does not appear to paint a full picture of YPPI's financial condition. Even if YPPI's financial condition was clear from the record, YPPI cites no case holding that an award of fees under § 505 in excess of a litigant's "cash on hand" is necessarily an abuse of discretion, regardless of the facts and circumstances of the case. Based on this record, it was not clearly erroneous for the Bankruptcy Court to have found that YPPI had not presented a clear record of its financial circumstances sufficient to preclude a fee award, and the Court finds no abuse of discretion or reason to disturb the Bankruptcy Court's determination to award attorneys' fees on this basis.

### 4. Forum Rate Exceptions

Under § 505, only those fees that are "reasonable" may be awarded. *See* 17 U.S.C. § 505. Under prevailing Third Circuit law, the reasonable rate for an attorney is "the prevailing rate in the forum of the litigation." *Interfaith Comm. Org. v. Honeywell Int'l, Inc.*, 426 F. 3d 694, 705 (3d Cir. 2005). This is referred to as the "forum rate rule." *Id.* YPPI argues on appeal that the Bankruptcy Court abused its discretion in basing the Fee Award on the prevailing rates in the forum in which Dex Media's counsel practices (New York) rather than the forum in which the litigation occurred (Delaware). However, the forum rate rule contains two important exceptions: "first, when the need for the special expertise of counsel from a distant district is shown; and second, when local counsel are unwilling to handle the case." *Interfaith*, 426 F.3d at 705. "If the prevailing party can show that it required the particular expertise of counsel from another vicinage . . . then it will be entitled to compensation based on prevailing rates in the community in which

its attorneys practice." *Id.* at 699. A trial court's determination that one or both of these exceptions applies will not be disturbed unless "clearly erroneous." *See id.* at 705.

The Bankruptcy Court held that *Interfaith* was satisfied here because Dex Media required the "knowledge and expertise" of its Non-Local Counsel.[10] (*See* Adv. D.I. 104 at 7). The Bankruptcy Court therefore determined that it was appropriate to calculate the fees of Dex Media's Non-Local Counsel based upon their normal hourly rate. (*Id.*). On appeal, YPPI offers no basis to conclude that the Bankruptcy Court clearly erred in finding that the case fell within the first exception to the forum rate rule. YPPI argues that Dex Media failed to show the need for Non-Local Counsel, but the Court disagrees. Here, the Bankruptcy Court found that Dex Media required the "special expertise" of the very same Non-Local Counsel that represented SuperMedia in YPPI's prior infringement action. (*Id.* at 7 ("The SuperMedia [L]itigation was essential to the arguments which proved successful in the Dex Media proceeding. New or different counsel would not have had the knowledge of the SuperMedia action which brought about the dismissal of the Dex Media action.")). YPPI also argues on appeal that "Dex Media's Delaware counsel [Patrick Jackson] possessed knowledge equal to if not superior to that of its New York Counsel." (YPPI Br. at 34). The Court is not persuaded. As Dex Media argues, "Mr. Jackson is a bankruptcy lawyer, and this was a copyright litigation." (Dex Br. at 40).

The record supports the Bankruptcy Court's conclusion that Dex Media required the "knowledge and expertise" of its Non-Local Counsel. Because the Bankruptcy Court's finding that "[t]he expertise of Non-Local Counsel was clearly required" is not clearly erroneous, and the award of fees based on Non-Local Counsel's normal hourly rate is consistent with Third Circuit law and was not an abuse of discretion.

---

[10]    Except for Patrick Jackson who practices in Delaware ("Local Counsel"), the Bankruptcy Court referred to Dex Media's other attorneys as "Non-Local Counsel." *See* Op. at 3 n.2.

### 5. Calculation of Reasonable Hours

Having determined that fee shifting was appropriate in this case, the Bankruptcy Court was required to determine what fees are reasonably awarded under the Act. Based on the Court's independent review, as described in the Opinion, the Bankruptcy Court determined that certain reductions in the attorneys' fees incurred (and already paid) by Dex Media were appropriate, and that fees in the amount of $504,025.50 were reasonably awarded. (Adv. D.I. 104 at 7, 10). The Court finds no basis to disturb the Bankruptcy Court's careful calculation of a reasonable award.

The Bankruptcy Court was careful to identify concerns prior to its review. Specifically, while knowledge of the SuperMedia Litigation was of critical importance to success on the motion to dismiss, the Bankruptcy Court observed that Dex Media's Non-Local Counsel already knew the SuperMedia Litigation inside and out. (*Id.* at 7-8). Additionally, the Bankruptcy Court found it appropriate to deduct all of the fees incurred with the Florida Action as "separate litigation." [11] While recognizing that the litigation expenses Dex Media was required to incur in response to the Florida Action related to YPPI's copyright claims, and presented a hindrance to Dex Media, the Bankruptcy Court declined to award fees relating to the Florida Action, as that litigation was not "work product that was actually utilized in the instant litigation." (Adv. D.I. 104 at 8 (citing *Gulfstream III Assocs. Inc. v. Gulfstream Aerospace Corp.*, 995 F.2d 414, 420 (3d Cir. 1993))).

---

[11] These efforts included moving the Dex Media Litigation from Florida to the Delaware Bankruptcy Court, which had tried the SuperMedia case and understood the arguments more readily than would have another court. (Adv. D.I. 104 at 8). The Bankruptcy Court also noted that YPPI undertook the following actions in connection with the Florida Action: "(1) filed its copyright lawsuit against SuperMedia's parent company, Dex Media, in Florida using the theory that was inconsistent with what it argued in the SuperMedia action; (2) did not serve the complaint in the Florida Action for more than 100 days; (3) refused Dex Media the courtesy of an extension of time to answer, move, or otherwise plead in the Florida Action; (4) moved to dismiss the action that Dex Media had filed in Delaware; and (5) sought in the Florida Action to enjoin Dex Media from proceeding in Delaware." (*Id.*).

Based on the foregoing considerations, the Bankruptcy Court conducted an independent review of each attorney's time records. Giving consideration to Non-Local Counsel's prior knowledge of the SuperMedia Litigation, the Bankruptcy Court undertook a "line by line" review of each attorney's time records, and, "[f]or each and every entry," the Bankruptcy Court "used its independent judgment to approximate the time necessary for the dispute." (*Id.* at 9). The Opinion included a chart setting forth each attorney's billed time, the reduced time as determined by the Bankruptcy Court's independent review, and the amount by which each attorney's fees were therefore reduced. As a result of the review, the 904.7 hours billed by Dex Media's Non-Local Counsel were reduced by 218.6 hours, resulting in a $161,023.00 fee reduction. (*Id.*). The Opinion also included a separate chart setting forth the Florida Action reductions in the amount of $103,950.00. (*Id.*). Between the Florida Action and the Non-Local Counsel Fees, the Bankruptcy Court's review resulted in a total reduction of $264,973.00 – or roughly 33% of the total fees requested by Dex Media. It is difficult to conceive of a more thorough review. As Dex Media correctly argues, "the law requires nothing more." *See Interfaith*, 426 F.3d at 711 (trial court should determine the attorney hours "reasonably expended" for the dispute).

On appeal, YPPI argues that the Bankruptcy Court failed to "identify the number of hours it found to be reasonably expended on the case below." (YPPI Br. at 35). This argument is unavailing. It is unclear what additional information YPPI would need in order to make such a determination. Dex Media's fee application included detailed time entries. (*See* Adv. D.I. 64). The record reflects that YPPI deposed Dex Media's attorneys in connection with the fee application. (Adv. D.I. 83). The Bankruptcy Court excluded hours it deemed unnecessary, awarded fees based on those hours that were "reasonably expended" on the litigation, and listed the reduced hours on a chart by timekeeper. (Adv. D.I. 104 at 9). To the extent YPPI is arguing

that the Bankruptcy Court failed to include a task by task explanation for its reductions, YPPI cites no authority imposing such a requirement.

### 6. Travel Time and Costs

The Bankruptcy Court found that "[t]ravel time is appropriately billed because Non-Local Counsel worked on the case and needed to get to Wilmington from New York." (Adv. D.I. 104 at 9-10). YPPI argues that the Bankruptcy Court clearly erred in "awarding Dex Media attorneys' fees and costs for the hours its New York counsel charged for travel time." (YPPI Br. at 38). Dex Media responds that the record reflects that its counsel only charged for travel if the attorneys were working on the Dex Media Litigation during that travel time. (Dex Br. at 42). "If the attorneys were not working on the matter, they did not bill for travel time." (*Id.* at 42-43). The record supports this conclusion. (*See* DEX 493-94 at 73:9-74:13). The Bankruptcy Court's finding that hours reasonably expended by Dex Media's counsel could include work on the case undertaken during travel presents no basis to disturb the Fee Award.

## IV. CONCLUSION

After presiding over YPPI's copyright infringement claims for more than four years, the Bankruptcy Court determined that YPPI was estopped from pursuing additional infringement claims against SuperMedia's parent on its previously abandoned "failure to assume" theory and granted the Motion for Judgment on the Pleadings. The Bankruptcy Court then properly entered a separate Declaratory Judgment specifying the relief granted. As the prevailing party in the litigation, the Bankruptcy Court determined that a fee award was appropriate under § 505, based on the objective unreasonableness of YPPI's claims and the need to advance considerations of deterrence and compensation. The Bankruptcy Court undertook a line by line review of each attorney's time records, applied its independent judgment to approximate what fees were reasonably necessary for each dispute, and made significant reductions. In undertaking this careful

review, the Bankruptcy Court fulfilled its obligation to determine "whether the hours set out were reasonably expended for each of the particular purposes described and then exclude those that are 'excessive, redundant, or otherwise unnecessary.'" *Interfaith*, 426 F.3d at 711. Far from abusing its discretion in awarding fees, the Bankruptcy Court adhered to the framework set forth in controlling case law. A separate order shall be entered.

November 28, 2018

The Honorable Maryellen Noreika
United States District Judge